**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>Pacifica of the Valley Corp.,[1]<br><br>        Debtor. | Chapter 11<br><br>Case No. 26-11060 (TMH) |

**MOTION OF THE DEBTOR PURSUANT TO 11 U.S.C. §§ 105(a) AND 366 AND FED. R. BANKR. P. 6003 AND 6004 FOR ENTRY OF INTERIM AND FINAL ORDERS (I) APPROVING DEBTOR'S PROPOSED FORM OF ADEQUATE ASSURANCE OF PAYMENT TO UTILITY COMPANIES, (II) ESTABLISHING PROCEDURES FOR RESOLVING OBJECTIONS BY UTILITY COMPANIES, (III) PROHIBITING UTILITY COMPANIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICE; AND (IV) GRANTING RELATED RELIEF**

Pacifica of the Valley Corporation d/b/a Pacifica Hospital of the Valley (the "Debtor") under chapter 11 of title 11 of the United States Code, §§ 101 *et seq.* (the "Bankruptcy Code")[2], in this chapter 11 case (the "Chapter 11 Case"), by and through its undersigned counsel, hereby moves (the "Motion")[3] this Court, pursuant to §§ 105(a) and 366 and Bankruptcy Rules 6003 and 6004, for entry of an interim order (substantially in the form attached hereto as **Exhibit A**, the "Interim Order") and a final order (substantially in the form attached hereto as **Exhibit B**, the "Final Order," and together with the Interim Order, the "Orders"): (i) approving the Debtor's proposed form of adequate assurance of payment to the Utility Companies (as defined below); (ii) establishing procedures for resolving objections by Utility Companies relating to the adequacy of

---

[1] The Debtor in this Chapter 11 Case, along with the last four digits of the Debtor's federal tax identification number, is: Pacifica of the Valley Corporation d/b/a Pacifica Hospital of the Valley [7312]. The Debtor's mailing address is 9449 San Fernando Road, Sun Valley, CA 91352.

[2] All references to 'section' or '§' herein are to sections of the Bankruptcy Code.  All references to "Bankruptcy Rules" are to provisions of the Federal Rules of Bankruptcy Procedure. All references to "Local Rules" are to provisions of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Delaware.

[3] Capitalized terms used but not defined in this motion have the meanings ascribed to them in the First Day Declaration (as defined below).

the proposed adequate assurance provided by the Debtor; (iii) prohibiting the Utility Companies from altering, refusing, or discontinuing service to, or discriminating against the Debtor on the basis of the commencement of the Chapter 11 Case and/or any outstanding prepetition debts; (iv) scheduling a hearing; and (v) granting related relief.  In further support of the Motion, the Debtor relies upon and refers this Court to the *Declaration of Precious Mayes In Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"), and respectfully states as follows:

**PRELIMINARY STATEMENT**

1. The Debtor receives essential utility services from several Utility Companies.  A list of the Utility Companies and, where available, the Debtor's account number with each Utility Company is attached hereto as **Exhibit C**.

2. By this Motion, the Debtor seeks to minimize disruption of utility services to its operations and ensure a smooth transition into chapter 11.  Specifically, the Debtor requests approval of the form of adequate assurance of payment it will provide to its utility providers, a deposit, and procedures to resolve any dispute that may arise relating to the adequate assurance. The Debtor also requests that the Court prohibit its utility providers from discontinuing or otherwise affecting the Debtor's services, subject to compliance with the proposed procedures. These measures will ensure that the Debtor maintains essential utility services to its facilities at this critical juncture in the Chapter 11 Case, prevent irreparable harm to the Debtor's estate, and, ultimately, provide the Debtor with an opportunity to reorganize or sell its business as a going concern.

3. In order to maintain ongoing business operations, it is imperative the Debtor is able to rely on a consistent supply of these services.  For these reasons, and as more fully explained below, the Debtor requests that this Court grant the relief requested herein.

## I.    JURISDICTION AND VENUE

1.    The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  The Debtor confirms its consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 9013-1(f), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.    Venue of the Chapter 11 Case and related proceedings is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The statutory bases for the relief requested herein are §§ 105(a) and 366, Bankruptcy Rules 2002, 6003, and 6004, and Local Rule 9013-1.

## II.    STATEMENT OF FACTS

A.  General Background

4.    On the date hereof (the "Petition Date"), the Debtor commenced a voluntary case for relief under chapter 11 of the Bankruptcy Code. The Debtor is authorized to continue operating its business and managing its properties as debtor in possession pursuant to §§ 1107(a) and 1108. No trustee, examiner, or statutory committee has been appointed in the Chapter 11 Case.

5.    Additional information regarding the Debtor, including its business and the events leading to the commencement of the Chapter 11 Case is set forth in First Day Declaration, filed concurrently herewith and which the Debtor incorporates herein by reference.

B. Specific Background

6.     In the ordinary course of business, the Debtor obtains various essential utility services (collectively, the "Utility Services"), including electricity, water, and network/internet, from a number of utility companies (collectively, the "Utility Companies"). A nonexclusive list of the Utility Companies is attached hereto as **Exhibit C** (the "Utility Services List").

7.     In locations with Utility Services, the Debtor relies on the Utility Companies to provide necessary support to its employees, vendors, and customers. Preserving the Utility Services on an uninterrupted basis is essential to the Debtor's ongoing operations, and even a brief alteration or discontinuation of service would likely cause severe disruption to the Debtor's business.

8.     Prior to the Petition Date, the Debtor spent an average of approximately $6,200 each month for Utility Services. Based on historical averages for Utility Services, the Debtor estimates that its cost of Utility Services for the next thirty days will be approximately $125,000. The discrepancy between the average prepetition monthly payment amount and the amount expected to come due in the next thirty days is due to the fact that the Debtor is past due on its utility accounts.

C. Proposed Adequate Assurance of Payment

9.     The Debtor intends to pay all post-petition obligations owed to the Utility Companies in a timely manner. To provide the Utility Companies with adequate assurance pursuant to § 366, the Debtor proposes to deposit cash in an amount equal to two weeks' cost of Utility Services, calculated using the historical average for such payments during the twelve (12) months prior to the Petition Date (the "Utility Deposit") into a newly created, segregated account for the benefit of the Utility Companies (the "Utility Deposit Account"). As of the Petition Date, the Debtor estimates that the total amount of the Utility Deposit will be approximately $69,000.

10.     The Debtor will transfer funds for the Utility Deposit into the Utility Deposit Account within twenty days after the Petition Date, which the Debtor will hold in the Utility Deposit Account for the benefit of the Utility Companies on the Utility Services List during the pendency of the Chapter 11 Case.

11.     The Debtor may adjust the Utility Deposit if the Debtor (i) terminates any of the Utility Services provided by a Utility Company, (ii) makes other arrangements with certain Utility Companies for adequate assurance of payment, (iii) determines that an entity listed on the Utility Services List is not a utility company as defined by § 366, or (iv) supplements the Utility Services List to include additional Utility Companies.

12.     The Debtor further requests that the Utility Deposit be automatically available to the Debtor, without further Court order, upon the earlier of the effective date of a chapter 11 plan and closure of the Chapter 11 Case.  Additionally, if the Debtor terminates any of the Utility Services provided by a Utility Company, the Debtor requests that it be permitted to reduce the Utility Deposit to reflect the termination of that Utility Company.

13.     The Debtor submits that the Utility Deposit, in conjunction with the Debtor's ability to pay for future Utility Services in the ordinary course of business (together, the "Proposed Adequate Assurance"), constitutes sufficient adequate assurance to the Utility Companies in full satisfaction of § 366.

D.  Proposed Adequate Assurance Procedures

14.     To balance the right of each Utility Company to evaluate the Proposed Adequate Assurance for itself and the harm to the Debtor's business that would result from any interruption in services provided by the Utility Companies, the Debtor proposes the following adequate assurance procedures (the "Adequate Assurance Procedures") in the event that any Utility Company is not satisfied with the Proposed Adequate Assurance:

a. The Debtor will serve a copy of this Motion and the Interim Order on the Utility Companies on the Utility Services List within three (3) business days after entry of the Interim Order.

b. Subject to entry of the Interim Order, the Debtor will deposit the Utility Deposit, in the aggregate amount of $69,000, in the Utility Deposit Account within twenty (20) days after the Petition Date.

c. The portion of the Utility Deposit attributable to each Utility Company will be returned to the Debtor on the earlier of (i) reconciliation and payment by the Debtor of the Utility Company's final invoice in accordance with applicable nonbankruptcy law following the Debtor's termination of Utility Services from such Utility Company and (ii) the earlier of (a) the effective date of any chapter 11 plan confirmed in this Chapter 11 Case and (b) the closure of this Chapter 11 Case; provided that there are no outstanding disputes related to post-petition payments due to the affected Utility Companies.

d. Any Utility Company desiring additional assurances of payment in the form of deposits, prepayments, or otherwise must serve a request for additional assurance (an "Additional Assurance Request") on the following parties: (i) proposed counsel to the Debtor, (w) Dentons US LLP, 601 South Figueroa Street, Suite 2500, Los Angeles, California 90017, Attn: Tania M. Moyron (tania.moyron@dentons.com) and Samuel R. Maizel (samuel.maizel@dentons.com); (x) Dentons US LLP, 1221 Avenue of the Americas, New York, NY 10020, Attn: John D. Beck (john.beck@dentons.com) and Geoffrey M. Miller (geoffrey.miller@dentons.com); (y) Pachulski Stang Ziehl & Jones LLP, 919 Market Street, 17th Floor, Wilmington, DE 19899, Attn: Laura Davis Jones (ljones@pszjlaw.com); and (ii) counsel for any official committee of unsecured creditors appointed in this Chapter 11 Case.

e. The Additional Assurance Request must: (i) be made in writing; (ii) set forth the location(s) for which Utility Services are provided, the account number(s) for those location(s), and the outstanding balance for each account; (iii) explain why the Utility Company believes the Utility Deposit is not adequate assurance of payment; and (iv) certify that the Utility Company does not already hold a deposit equal to or greater than two weeks of Utility Services provided by such Utility Company.

f. An Additional Assurance Request may be made at any time. If a Utility Company does not serve an Additional Assurance Request, the Utility Company will be (i) deemed to have received "satisfactory" adequate assurance of payment in compliance with § 366, and (ii) forbidden from discontinuing, altering, or refusing Utility Services to, or discriminating against, the Debtor on account of any unpaid prepetition charges or requiring additional assurance of payment other than the Proposed Adequate Assurance.

g. Upon the Debtor's receipt of an Additional Assurance Request, the Debtor will negotiate with the Utility Company to resolve the Utility Company's Additional Assurance Request.

h. The Debtor may, without further order from the Court, resolve an Additional Assurance Request by mutual agreement with a Utility Company, and the Debtor may, in connection with any such agreement, provide a Utility Company with additional adequate assurance of payment, including cash deposits, payments of any outstanding prepetition balance due to the Utility Company, prepayments, or other forms of security if the Debtor believes that such adequate assurance is reasonable.

i. If the Debtor and the Utility Company are not able to reach an alternative resolution within thirty (30) days of receipt of the Additional Assurance Request, the Debtor will request a hearing before the Court at the next regularly scheduled omnibus hearing to determine the adequacy of assurance of payment with respect to the particular Utility Company (the "Determination Hearing") pursuant to § 366(c)(3), unless the Debtor and the Utility Company agree in writing to extend the period.

j. Pending resolution of the Additional Assurance Request and Determination Hearing, the Utility Company making the Additional Assurance Request will be prohibited from altering, refusing, or discontinuing Utility Services to the Debtor on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance.

k. Notwithstanding anything in these procedures to the contrary, the Debtor will request a hearing (the "Final Adequate Assurance Hearing") to take place no later than thirty (30) days following the Petition Date to resolve outstanding objections to these procedures in the event any are timely filed.

E. Subsequent Modification of Utility Services List

15. Although the Debtor has made an extensive and good faith effort to identify all of the Utility Companies and include them on the Utility Services List, certain Utility Companies may not be listed therein. To the extent the Debtor identifies additional Utility Companies, the Debtor shall promptly file amendments to the Utility Services List and serve copies of the Interim or Final Order, as applicable, granting this Motion on any newly identified Utility Companies. In addition, the Debtor will increase the amount of the Utility Deposit to account for any newly identified Utility Companies. The Debtor requests that the Orders bind all Utility Companies, regardless of when the Utility Companies are added to the Utility Services List.

### III.    RELIEF REQUESTED

16.    Pursuant to §§ 105(a) and 366, and Bankruptcy Rules 6003 and 6004, the Debtor respectfully requests the entry of the Order:  (i) approving the Debtor's proposed form of adequate assurance of payment to the Utility Companies; (ii) establishing procedures for resolving objections by Utility Companies relating to the adequacy of the proposed adequate assurance provided by the Debtor; (iii) prohibiting the Utility Companies from altering, refusing, or discontinuing service to, or discriminating against, the Debtor on the basis of the commencement of this Chapter 11 Case and/or any outstanding prepetition debts; and (iv) granting related relief

### IV.    BASIS FOR RELIEF

17.    The relief requested in this Motion will ensure the continuation of the Debtor's business at this critical juncture as it transitions into chapter 11.  The relief requested also provides the Utility Companies with a fair and orderly procedure for determining requests for additional adequate assurance, without which the Debtor could be forced to address multiple requests by Utility Companies in a disorganized manner when the Debtor's efforts should be more productively focused on continuing to operate its business for the benefit of all parties in interest.

#### A.    The Proposed Adequate Assurance Is More Than Adequate

18.    Pursuant to § 366, a utility company may not alter, refuse, or discontinue service to, or discriminate against, a debtor *solely* on the basis of the commencement of a chapter 11 case or unpaid prepetition amounts.  11 U.S.C. § 366(a).  However, a utility company may alter, refuse, or discontinue service if, during the first twenty days of a bankruptcy case, the debtor does not provide adequate assurance of payment for postpetition utility services; or if, during the first thirty days of a chapter 11 case, the debtor does not provide adequate assurance of payment for postpetition utility services in a form satisfactory the utility company.  11 U.S.C. § 366(b), (c)(2).

19.     The policy underlying § 366 is to protect debtors from utility service cutoffs upon the filing of a bankruptcy case and provide utility companies[4] with adequate assurance that debtors will, in fact, pay for postpetition services.  *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 350 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6306; *see also In re Jones*, 369 B.R. 745, 748 (B.A.P. 1st Cir. 2007) ("The purpose of § 366 is 'to prevent the threat of termination from being used to collect pre-petition debts while not forcing the utility to provide services for which it may never be paid.'") (quoting *Begley v. Philadelphia Elec. Co. (In re Begley)*, 760 F.2d 46, 49 (3d Cir. 1985)).  As set forth herein, the Proposed Adequate Assurance is consistent with these policy goals.

20.     Section 366(c)(1)(A) defines "assurance of payment" to mean several enumerated forms of security (e.g., a cash deposit, letter of credit, certificate of deposit, surety bond, prepayment of utility consumption, or other mutually agreed upon security), while § 366(c)(1)(B) expressly provides that providing a utility with an administrative expense priority claim for any amounts that come due is not assurance of payment. 11 U.S.C. § 366(c).  The Bankruptcy Code does not otherwise define what makes an assurance of payment "adequate," thereby placing such determination within the reasonable discretion of the bankruptcy court.  *See* 11 U.S.C. §§ 366(b) ("On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment."), 366(c)(3)(A) ("On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2)."); *accord In re Pac. Gas & Elec. Co.*, 271 B.R. 626, 644 (N.D. Cal. 2002) ("The use of the word 'may' in the second sentence [of § 366(b)] clearly contemplates that the decision whether to order

---

[4] "Utility" is not defined in the Bankruptcy Code.  However, bankruptcy courts have generally limited this to entities that have a "special relationship" with debtors, in that they provide the debtors with an essential service, for which the debtors have a need for continued access.  *See, e.g., Darby v. Time Warner Cable, Inc. (In re Darby)*, 470 F.3d 573 (5th Cir. 2006).

security lies within the discretion of the Bankruptcy Court."); *In re Steinebach*, 303 B.R. 634, 641 (Bankr. D. Az. 2004) ("Bankruptcy courts are afforded reasonable discretion in determining what constitutes adequate assurance . . . .") (citation omitted).  However, when determining "whether an assurance of payment is adequate," a bankruptcy court may *not* consider three specific factors: (a) whether the debtors had a prepetition deposit; (b) whether the debtors paid their utility bills on time prepetition; or (c) the administrative expense priority afforded utilities postpetition.   11 U.S.C. § 366(c)(3)(B).

21.      Nothing in § 366(c), however, precludes a bankruptcy court from considering other factors that could minimize the amount of the deposit, including (without limitation):  (a) the right of the utility to terminate service upon nonpayment (*see In re Penn Jersey Corp*., 72 B.R. 981, 985 (Bankr. E.D. Pa. 1987) ("We note, in this regard, . . . that the Court of Appeals has stated . . . that a utility is well-protected, after establishment of adequate assurance, by its remedy 'to disconnect service as its remedy for non-payment' without 'recourse to the bankruptcy court,' 'even though . . . the debtor is provided with an additional layer of protection arising from any available state utility commission Regulations limiting a utility's termination rights.'") (internal citations omitted)); (b) the chapter 11 estate's liquidity (*see In re Agrifos Fertilizer, L.P*., No. 01-35220-H2-11, 2002 WL 32054779, at \*5 (Bankr. S.D. Tex. Nov. 25, 2002) ("If a debtor demonstrates . . . evidence of post-petition liquidity, a deposit may not be necessary[.]") (citation omitted)); and (c) the estate's net worth and ability to pay its postpetition obligations (*see In re Best Prods. Co*., 203 B.R. 51, 54 (Bankr. E.D. Va. 1996) ("[T]he court should consider the debtor's . . . net worth, and the debtor's present and future ability to pay post-petition obligations.") (citation omitted)).

22.      Therefore, although § 366(c)(2) allows a utility company to take action if the debtor fails to provide adequate assurance of payment that the utility company deems "satisfactory," the

bankruptcy court is the ultimate arbiter of what is "satisfactory" assurance after taking into consideration all the facts of the case, including the relationship between the debtor and the utility company. *See, e.g.*, *In re Penn. Cent. Transp. Co.*, 467 F.2d 100, 103-04 (3d Cir. 1972) (affirming the bankruptcy court's decision that no utility deposit was necessary where such deposits would "jeopardize the continuing operation of the [debtor] merely to give further security to suppliers who already [were] reasonably protected"); *see also Heard v. City Water Board (In re Heard)*, 84 B.R. 454, 459 (Bankr. W.D. Tex. 1987) (holding that because the utility had not had any difficulty with the debtors during 14 years of service, "the utility need[ed] no adequate assurance"). Courts construing § 366(b) have long recognized that adequate assurance of payment does not constitute an absolute guarantee of the debtor's ability to pay. *See, e.g.,.In re Caldor, Inc.—NY*, 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) requires the Bankruptcy Court to determine whether the circumstances are sufficient to provide a utility with 'adequate assurance' of payment. The statute does not require an 'absolute guarantee of payment.'") (citation omitted), *aff'd sub nom. Va. Elec. & Power Co. v. Caldor, Inc.—NY*, 117 F.3d 646 (2d Cir. 1997) ("Caldor II"); *In re New Rochelle Tel. Corp.*, 397 B.R. 633, 639 (Bankr. E.D.N.Y. 2008) ("Adequate assurance, however, is not a guarantee of payment; rather, it is intended to guard against the utility assuming an unreasonable risk of non-payment.") (citation omitted); *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002) ("In determining adequate assurance, a bankruptcy court is not required to give a utility company the equivalent of a guaranty of payment . . . .").

23.     Thus, there is nothing to prevent a court from deciding, on the facts of the case before it, that the amount required of a debtor to provide adequate assurance of payment to a utility company should be nominal or even zero. *See, e.g.*, *In re Pac-West Telecomm, Inc.*, No. 07-10562 (BLS) (Bankr. D. Del. May 2, 2007) [Docket No. 39] (approving adequate assurance in the form

of a one-time supplemental prepayment to each utility company equal to the prorated amount of one week's charges).[5]   Indeed, courts consider what is "need[ed] of the utility for assurance, and . . . require that the debtor supply *no more than that*, since the debtor almost perforce has a conflicting need to conserve scarce financial resources."  *Caldor II*, 117 F.3d at 650 (emphasis in original) (quoting *Penn Jersey*, 72 B.R. at 985); *see also Penn Cent.*, 467 F.2d at 103-04; *In re Magnesium Corp. of Am.*, 278 B.R. 698, 714 (Bankr. S.D.N.Y. 2002).

24.     Here, the Proposed Adequate Assurance is reasonable and satisfies the requirements of § 366.  As set forth above, the Debtor fully intends to pay all postpetition obligations owed to the Utility Providers.  The Debtor has a good historical payment record with the Utility Companies.  To the best of the Debtor's knowledge, there are no material defaults or arrearages of any significance for the Debtor's undisputed invoices for prepetition Utility Services, other than payment interruptions that may be caused by the commencement of this Chapter 11 Case.  Additionally, the Utility Companies are protected through the Utility Deposit that will be held in a segregated account, and are afforded flexibility and an opportunity to be heard through the Adequate Assurance Procedures.  Accordingly, the Proposed Adequate Assurance is reasonable and satisfies § 366.  Moreover, termination of the Utility Services could result in the Debtor's inability to operate its business to the detriment of all stakeholders.  *See In re Pilgrim's Pride Corp.*, No. 08-45664 (DML), 2009 WL 7313309, at *2 (Bankr. N.D. Tex. Jan 4, 2009) ("The consequences of an unexpected termination of utility service to [the debtors] could be catastrophic."); *In re Monroe Well Serv., Inc.*, 83 B.R. 317, 319, 322 (Bankr. E.D. Pa. 1988) (noting that without utility service the debtors would "cease

---

[5] Prior to the enactment of § 366(c), courts frequently made parallel rulings pursuant to § 366(b).  *See Penn. Cent.*, 467 F.2d at 103-04 (3d Cir. 1972) (affirming the bankruptcy court's decision that no utility deposit was necessary); *Caldor II*, 117 F.3d at 650 ("Even assuming that 'other security' should be interpreted narrowly, we agree with the appellees that a bankruptcy court's authority to 'modify' the level of the 'deposit or other security,' provided for under § 366(b), includes the power to require no 'deposit or other security' where none is necessary to provide a utility supplier with 'adequate assurance of payment.'").

operation" and that § 366 "was intended to limit the leverage held by utility companies, not increase it.").

**B.      The Adequate Assurance Procedures Are Reasonable and Appropriate**

25.      The proposed Adequate Assurance Procedures are reasonable because they will ensure that the essential Utility Services continue while providing a streamlined process for Utility Companies to challenge the adequacy of the Proposed Adequate Assurance or seek an alternative form of adequate assurance.

26.      As explained herein and in the First Day Declaration, continued and uninterrupted utility service is critical to the Debtor's operations and the success of this Chapter 11 Case.  In contrast, pursuant to the Adequate Assurance Procedures proposed herein, the Utility Companies will not be prejudiced by continuing to provide their services to the Debtor postpetition.  If a Utility Company does not believe the Proposed Adequate Assurance is "satisfactory," such Utility Company may file an objection or submit an Additional Assurance Request pursuant to the Adequate Assurance Procedures proposed herein.

27.      The Court has the power to approve these Adequate Assurance Procedures pursuant to § 105(a), which provides that a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  11 U.S.C. § 105(a).  The Adequate Assurance Procedures are necessary and appropriate to carry out the provisions of the Bankruptcy Code, as they will ensure that the Utility Services are continued without prejudicing the Utility Companies.

**V.      COMPLIANCE WITH BANKRUPTCY RULE 6003 AND WAIVER OF BANKRUPTCY RULES 6005(a) AND (h)**

28.      Lastly, the Debtor requests that the Court determine that the relief requested in this Motion complies with Bankruptcy Rule 6003 and that waiver of Bankruptcy Rules 6004(a) and

(h) is appropriate. Rule 6003 provides: Unless relief is needed to avoid immediate and irreparable harm, the court must not, within 21 days after the petition is filed, grant an application or motion to: . . . (2) use, sell, or lease property of the estate, including a motion to pay all or a part of a claim that arose before the petition was filed; [or] (3) incur any other obligation regarding the property of the estate . . . . Fed. R. Bankr. P. 6003(a)(2), (a)(3).

29.     Courts have interpreted language similar to that used in Bankruptcy Rule 6003 in the context of preliminary injunctions. In that context, irreparable harm has been interpreted as an immediate harm for which money damages cannot provide adequate compensation. *See, e.g., Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 Fed. Appx. 907, 910 (3d Cir. 2007) (citing *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)). Further, the harm must be shown to be actual and imminent, not speculative or unsubstantiated. *See, e.g., Acierno v. New Castle Cty.*, 40 F.3d 645, 653-55 (3d Cir. 1994).

30.     As described in this Motion and the First Day Declaration, the Debtor respectfully submits that the relief requested herein is necessary and appropriate to ensure a smooth transition into chapter 11, to retain essential Utility Services to continue operating in the ordinary course, to normalize and maintain existing relationships with the Debtor's Utility Companies during the turbulent early stages of this bankruptcy case, and to preserve and maximize value for the benefit of the Debtor's creditors. As set forth herein, the relief requested in this Utilities Motion is essential to those objectives.

31.     As a result, the Debtor respectfully submits that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and seeks authority to provide adequate assurance of payment to the Utility Companies in accordance with the procedures proposed herein.

32.     The Debtor further seeks a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[an] order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth above, the Debtor submits that granting this Motion is essential to prevent irreparable damage to the Debtor's operations, going-concern value, and its efforts to pursue a sale or restructuring of the business.

33.     Accordingly, the relief requested herein is appropriate under the circumstances and under Bankruptcy Rules 6003 and 6004(h).

34.     Finally, should the Court be inclined to grant the Motion, the Debtor also seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a).

## VI.     RESERVATION OF RIGHTS

35.     Nothing contained in this Motion or any order granting the relief requested in this Motion, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtor under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtor's or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to §365; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtor's estate; or (g) a waiver or limitation of any claims, causes

of action or other rights of the Debtor or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

36.     The Debtor further reserves all rights to:  (a) supplement the Utilities Services List if it is determined that any Utility Company has been omitted; (b) challenge the status of any entity listed on the Utilities Services List as a "utility" falling within the scope of § 366; and (c) terminate any Utility Services at any time and to seek an immediate refund of any Utility Deposit without giving effect to any right of setoff or recoupment or claim asserted by a Utility Company against the Debtor.

## VII.     NO PRIOR REQUEST

37.     No prior request for the relief sought in this motion has been made to this or any other court.

## VIII.     NOTICE

38.     The Debtor will serve notice of this Motion on the following parties: (a) the Office of the United States Trustee; (b) counsel for the Debtor's secured lenders; (c) the Debtor's thirty largest unsecured creditors on a consolidated basis; and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## IX.     CONCLUSION

WHEREFORE, the Debtor respectfully requests entry of an order (i) granting the relief requested herein; and (ii) granting the Debtor such other and further relief as the Court deems just and proper.

Dated: July 6, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
919 North Market Street, 17th Floor
Wilmington, DE 19899
Tel: (302) 652-4100
Email: ljones@pszjlaw.com

-and-

**DENTONS US LLP**

Tania M. Moyron (*pro hac vice* forthcoming)
Samuel R. Maizel (*pro hac vice* forthcoming)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Facsimile:  (213) 623-9924
Email: tania.moyron@dentons.com
         samuel.maizel@dentons.com

John D. Beck (*pro hac vice* forthcoming)
Geoffrey Miller (*pro hac vice* forthcoming)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
Email: john.beck@dentons.com
         geoffrey.miller@dentons.com

*Proposed Counsel to Debtor and Debtor in Possession*