**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>Pacifica of the Valley Corporation,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 26-11060 (TMH) |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS**
**(I)  AUTHORIZING THE DEBTOR TO (A) USE CASH COLLATERAL AND (B)**
**GRANT LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS; (II)**
**GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES; (III)**
**SCHEDULING A FINAL HEARING; AND (IV) GRANTING RELATED RELIEF**

Pacifica of the Valley Corporation dba Pacifica Hospital of the Valley ("Pacifica" or the "Debtor"), as debtor and debtor-in-possession under chapter 11 of title 11 of the United States Code, §§ 101 *et seq.* (the "Bankruptcy Code"),[2] in this chapter 11 case (the "Chapter 11 Case"), by and through its undersigned counsel, hereby moves (the "Motion") this Court for entry of an interim order (substantially in the form attached hereto as **Exhibit A**, the "Interim Order") and a final order (the "Final Order" and together with the Interim Order, the "Orders"): (i) authorizing the Debtor to (a) use Cash Collateral and (b) grant liens and superpriority administrative expense claims; (ii) granting adequate protection to the Prepetition Secured Parties (as defined below); (iii) scheduling a final hearing (the "Final Hearing"); and (iv) granting related relief.

In support of this Motion, the Debtor submits the (i) *Declaration of Precious Mayes in Support of Chapter 11 Petition and First Day Pleadings* (the "First Day Declaration") and (ii)

---

[1]   The Debtor in this Chapter 11 Case, along with the last four digits of the Debtor's federal tax identification number, is 7312. The Debtor's mailing address is 9449 San Fernando Road, Sun Valley, CA 91352.

[2]   All references herein to 'section' or '§' are to the Bankruptcy Code.

*Declaration of Peter Chadwick In Support of The Debtor's Cash Collateral Motion* (the "Chadwick Declaration"), each filed contemporaneously herewith and incorporated herein by reference.  In further support of the Motion, the Debtor respectfully states as follows:

**PRELIMINARY STATEMENT**

1.      The Debtor operates a 231-bed safety net hospital (the "Hospital") in Los Angeles County and serves thirteen zip codes, including subacute patient referrals from hospitals more than 400 miles away.  The Debtor offers complete service lines, including, 24/7 Emergency, acute care, ICU, locked Behavioral Health, d/p Subacute Skilled Nursing Facility, Outpatient Surgery and Rehab, In/outpatient ancillary services. The primary patient population at the Hospital is underserved with 84% of the patients living in poverty.

2.      This Motion seeks entry of interim and final orders authorizing the Debtor's use of cash collateral. Without immediate authority to use cash collateral, the Debtor will suffer irreparable harm and be unable to service ongoing patient needs, meet payroll, purchase medications and medical supplies, pay critical vendors, or satisfy ongoing operating expenses. The consequences would be immediate and severe: disruption of healthcare services to a vulnerable patient population, loss of hundreds of jobs, destruction of the Hospital's going-concern value, and substantial harm to all creditors and other parties in interest.

3.      By way of background, and as relevant to this Motion, the Debtor's sole secured lender is not a traditional lending institution, but rather an entity formed to acquire the Debtor's loan at a steep discount—paying only approximately $1.95 million for debt with an outstanding principal balance of $35 million plus interest—as part of a strategy to effectuate a hostile takeover of the Hospital.

4.      Specifically, Dr. Ehab Yacoub created Axios Capital Solutions, LLC ("Axios") to purchase the Debtor's loan from the original lenders, First Western Trust Bank ("First Western") and the Federal Reserve Bank of Boston (the "Federal Reserve"), after years of litigation with the Debtor's owner. The loan at issue is a Main Street Loan ("MSL") governed by the CARES Act, and the Federal Reserve has stringent requirements as to who can acquire the loan. Dr. Yacoub would have been statutorily ineligible to purchase the MSL had he properly disclosed, among other things, his affiliation with the Debtor as an investor, and that Axios's sole member, Brain Health, is also an entity likewise affiliated with the Debtor, and that Dr. Yacoub is the sole shareholder of Brain Health.

5.      Indeed, a Colorado state court recently denied Axios's motion for summary judgment after concluding that genuine issues of material fact exist regarding whether Axios validly acquired the loan. As part of Axios' aggressive enforcement strategy, it sought to replace management through an invalid exercise of a power of attorney to prevent the Debtor from filing bankruptcy and seeking the appointment of a state court receiver.

6.      Axios also has not perfected any interest it may have through "control" of the Debtor's deposit accounts and therefore is not properly perfected in at least a portion of the Debtor's cash.  Axios has not consented to the Debtor's continued use of Cash Collateral despite the obvious and immediate consequences to the Hospital and the patients it serves.

7.      The Debtor's Landlord Entities (defined below) may also assert security interests in all personal property of the Debtor, including cash collateral. In addition, the Local Initiative Health Authority for Los Angeles County ("L.A. Care" and, together with the Landlord Entities and Axios, the "Prepetition Secured Parties") asserts a contingent security interest in certain proceeds distributed under the California Quality Assurance Fee program.

8.      The relief requested in this Motion is narrowly tailored in scope and duration to preserve the status quo.  The Debtor proposes interim Cash Collateral use through August 1, 2026 pursuant to a 4-week budget designed to address the Debtor's critical expenditures during the Interim Period, such as payroll, vendors and patient costs. The Debtor proposes to provide an adequate protection package for each Prepetition Secured Party, including replacement liens, superpriority claims, budget controls, reporting obligations, and preservation of going-concern value. The Debtor has also appointed a Chief Restructuring Officer, Peter Chadwick of BRG (the "CRO"), who shall be required to personally authorize all expenditures of funds by the Debtor and withdrawals from the Debtor's bank accounts, and no payment shall be made to any director or owner of the Debtor.  The proposed relief protects any cognizable interests in the Debtor's cash while ensuring that the Hospital continues to provide critically important patient care as a safety net hospital, employees maintain their jobs, and the value of the Debtor as a going concern is preserved for all stakeholders and creditors.

9.      Under these circumstances, authorizing the Debtor's immediate use of Cash Collateral is not merely appropriate—it is essential. Denying the requested relief would not preserve value for creditors; rather, it would precipitate the abrupt cessation of operations at a critical safety-net hospital, the destruction of substantial going-concern value, and irreparable harm to patients, employees, creditors, and the surrounding community.

**JURISDICTION AND VENUE**

10.     The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and

the Court may enter a final order consistent with Article III of the United States Constitution. Venue of the Chapter 11 Case and related proceedings is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtor consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

11.     The statutory bases for the relief requested herein are §§ 105(a), 361, 362, 363, 503, 506, 507, and 552, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and Local Rules 2002-1, 4001-1, 4001-2, and 9013-1.

**THE DEBTOR HAS AN IMMEDIATE NEED FOR CASH COLLATERAL USE**

12.     As set forth in the First Day Declaration, the Debtor's immediate access to Cash Collateral is necessary to avoid immediate and irreparable harm and critical to its continued operations, funding the administration of this Chapter 11 Case, and preserving and maximizing the value of the Debtor's assets for the benefit of all stakeholders. As set forth above, the Debtor operates the Hospital in Los Angeles County and serves thirteen zip codes, including subacute patient referrals from hospitals more than 400 miles away.  The Debtor offers complete service lines, including 24/7 Emergency, acute care, ICU locked Behavioral Health, d/p Subacute Skilled Nursing Facility, Outpatient Surgery and Rehab, In/outpatient ancillary services. The primary patient population at the Hospital is underserved with 84% of its patients living in poverty.  Absent immediate access to Cash Collateral, the Debtor would be forced to curtail or

cease operations, to the severe detriment of its patients, employees, and other constituents. Such a disruption would, in turn, have catastrophic consequences on a vulnerable patient population and result in an immediate and substantial deterioration in the value of the Debtor's assets and likely force a disorderly liquidation.

## BACKGROUND

### A.    General Background

13.    On the Petition Date, the Debtor commenced a voluntary case for relief under chapter 11 of the Bankruptcy Code. The Debtor is authorized to continue operating its business and managing its property as a debtor in possession pursuant to §§ 1107(a) and 1108.

14.    No trustee, examiner, or statutory committee has been appointed in this Chapter 11 Case.

15.    Additional information regarding the Debtor, including its business and the events leading to the commencement of this Chapter 11 Case, is set forth in the First Day Declaration.

### B.    The Debtor's Prepetition Indebtedness

16.    On December 10, 2020, the Debtor entered into a Main Street Loan ("MSL") with First Western and the Federal Reserve because it needed a cash infusion to meet burgeoning pandemic-related costs and First Western agreed to provide the Debtor with a senior secured loan in the principal amount of $35,000,000 and, in connection with the MSL, the Debtor entered into a Pledge and Security Agreement.[3]  On May 13, 2025, First Western filed

---

[3]    For purposes of this Motion and any Interim or Final Order entered hereon only, the term "Prepetition Collateral" means all property of the Debtor's estate in which any Prepetition Secured Party asserts a lien, security interest, or other interest arising under prepetition agreements or applicable law, solely to the extent such interest is ultimately determined to be valid, perfected, enforceable, and unavoidable. The term "Cash Collateral" means all cash, cash equivalents, deposit accounts, securities accounts, investment property, accounts receivable, payment intangibles, proceeds thereof, and other property that may constitute "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code in which any Prepetition Secured

a lawsuit against the Debtor in Colorado state court (currently captioned *Axios Capital Solutions v. Pacifica of the Valley Corporation*, Case No. 2025CV31732 (Dist. Ct. County of Denver, Co., Div. 209) (the "Colorado Action")) for breach of contract for the Debtor's failure to timely meet its repayment obligations.

17.     As mentioned above and described more fully in the First Day Declaration, in November 2025, Axios Capital Solutions, LLC ("Axios"), claimed to have purchased the Debtor's MSL, and stepped into First Western's shoes as the plaintiff in the Colorado Action. On June 26, 2026, the Colorado court denied Axios's motion for summary judgment, concluding that genuine issues of material fact exist regarding whether Axios validly acquired the MSL.  A true and correct copy of the Colorado court's ruling is attached as Exhibit B to the First Day Declaration.

**C.     Other Asserted Interests In Cash Collateral**

18.     Since 2013, Pacifica has operated its Hospital pursuant to a long-term Master Lease for the real property located at 9449 San Fernando Road, Sun Valley, California. The lessors under the Master Lease are Reliq Pacifica LLC, Beverly Gemini Investments, LLC, Taking the 5th, LLC, and Fifth/Arizona Investors, LLC (collectively, the "Landlord Entities"). The Hospital is the Debtor's principal operating facility and is indispensable to its ability to provide acute care services to the surrounding community. During the COVID-19 pandemic, Pacifica experienced significant financial distress and became unable to timely satisfy certain obligations owing to the Landlord Entities under the Master Lease.  As of the Petition Date, the

---

Party asserts an interest, whether or not such asserted interest is ultimately determined to be valid, perfected, enforceable, or unavoidable. References in this Motion to Prepetition Collateral and Cash Collateral are solely for purposes of seeking interim relief under section 363 of the Bankruptcy Code and shall not constitute an admission, stipulation, or determination regarding the existence, validity, extent, priority, perfection, enforceability, or avoidability of any asserted lien or security interest, all of which rights are expressly reserved by the Debtor and all other parties in interest.

Debtor estimates that it owes the Landlord Entities approximately $9.5 million.  The Landlord Entities filed a UCC-1 financing statements in November of 2022 seeking to perfect a lien in all personal property of the Debtor.

19.     Finally, the Local Initiative Health Authority for Los Angeles County, which operates as L.A. Care Health Plan ("L.A. Care"), a publicly operated health plan, filed UCC-1 statements in January 2026 and May 2026 asserting security interests in future proceeds of certain HQAF funds. These security interests arise from agreements entered into between the Debtor and L.A. Care whereby L.A. Care purchased the Debtor's right to future receipt of HQAF payments. The applicable purchase agreements provide that if the sale of the Debtor's right to receive future HQAF payments is subsequently held not to be a true sale, the Debtor also granted L.A. Care a "Back-Up Security Interest" (as defined in the purchase agreements) in the Debtor's HQAF receivables.  As of the Petition Date, the Debtor estimates that it owes L.A. Care approximately $7.5 million on account of these agreements.

**D.     Summary of Terms of Cash Collateral Use**

20.     Pursuant to Bankruptcy Rule 4001(b) and Local Rule 4001-2(a)(i), the below chart contains a summary of the material terms of the proposed use of Cash Collateral.[4]

| SUMMARY OF MATERIAL TERMS | | |
|---|---|---|
| **Parties with an Asserted Interest in Cash Collateral** Bankruptcy Rule 4001(b)(1)(B); Local Rule 4001-2(a)(i) | • Axios Capital Solutions, LLC<br>• The Landlord Entities<br>  o  Reliq Pacifica LLC<br>  o  Beverly Gemini Investments LLC<br>  o  Taking the 5th LLC<br>  o  Fifth/Arizona Investors LLC<br>• Local Initiative Health Authority for Los Angeles County (as to HQAF proceeds only) | |

---

[4]     The summaries contained in this Motion are qualified in their entirety by the provisions of the Interim Order. To the extent anything in this Motion is inconsistent with the Interim Order, the terms of the Interim Order shall control.

| SUMMARY OF MATERIAL TERMS | | |
|---|---|---|
| **Amount of Cash Collateral and Purposes for Use of Cash Collateral** Bankruptcy Rule 4001(b)(1)(B); Local Rule 4001-2(a)(i)(A) | To prevent immediate and irreparable harm to the Debtor's estate, the Debtor is authorized, subject to the terms and conditions of the Orders, as applicable, (including the Carve Out), to use all Cash Collateral in accordance with the terms of the Orders, as applicable, and the Budget (subject to permitted variances); provided that (a) the Prepetition Secured Parties are granted the Adequate Protection and (b) except on the terms and conditions of the Orders, the Debtor shall be enjoined and prohibited from at any times using the Cash Collateral absent further order of the Court.<br><br>As of the Petition Date, the Debtor has approximately $240,797.86 of cash on hand. *See* Chadwick Declaration ¶ 10. | Interim Order ¶ 2. |
| **Adequate Protection and Professional Fees and Expenses Bankruptcy Rule 4001(b)(1)(B);** Local Rules 4001-2(a)(i)(B), (G), and (K) | The Debtor proposes to provide the Prepetition Secured Parties with the following forms of adequate protection (the "Adequate Protection Package"):<br><br>(a) **Replacement Liens**.  Replacement liens under sections 361 and 363 on all postpetition property to the same extent and priority as any valid, perfected, unavoidable prepetition liens, solely to the extent of any diminution in value resulting from the Debtor's use of their Collateral.<br><br>(b) **Superpriority Administrative Claim**.  A superpriority administrative expense claim under section 507(b) of the Bankruptcy Code, subordinate only to the Carve Out, solely to the extent that (i) the applicable Prepetition Secured Parity is determined to hold valid, perfected, and enforceable prepetition liens and claims, (ii) the Debtors' use of Cash Collateral results in a diminution in the value of such Prepetition Secured Party's interest in the Prepetition Collateral, and (iii) the other forms of adequate protection provided to such Prepetition Secured Party are determined to be insufficient to protect against any such diminution in value.<br><br>(c) **Information Rights**.  The Debtor shall comply with the access and information requirements set | Interim Order ¶ 6. |

| SUMMARY OF MATERIAL TERMS |
|---|

forth in ¶7 of the Interim Order, including reporting to the Prepetition Secured Parties and the Special Monitor.

(d) **Maintenance of Collateral**.  The Debtor shall continue to maintain and insure the Prepetition Collateral in the amounts and for the risks, and by the entities, as required under the MSL.

(e) **Budget**.  The Debtor shall use Cash Collateral solely in accordance with a Court-approved interim 4-week budget (the "Budget"), subject to permitted variances on operational disbursements of up to twenty percent (20%) on an aggregate basis, tested on a cumulative basis.

(f) **CRO Authority Over Cash Disbursements; No Director Payments**.  In addition to complying with the Budget and all other requirements of the Interim Order, (a) all expenditures of funds by the Debtor and withdrawals from the Debtor's bank accounts shall require personal authorization by the CRO and (b) no payment shall be made to any director or owner of the Debtor.

(g) **Preservation of Going-Concern Value**. The Debtor further submits that the continued operation of the Hospital as a going concern preserves and enhances the value of the asserted collateral of the Prepetition Secured Parties. By authorizing the Debtor's use of Cash Collateral, the Court will enable the Debtor to continue providing essential healthcare services, maintain its workforce, preserve relationships with vendors and payors, and avoid a precipitous liquidation of the Hospital. Conversely, absent access to Cash Collateral, the Debtor would be forced to cease operations, resulting in an immediate and substantial destruction of going-concern value and a corresponding diminution in the value of any collateral securing the asserted claims of the Prepetition Secured Parties. Accordingly, the proposed use of Cash Collateral, together with the Debtor's proposed Adequate Protection Package,

| SUMMARY OF MATERIAL TERMS | | |
|---|---|---|
| | protects the Prepetition Secured Parties against any diminution in the value of their asserted interests and is the only viable path forward to providing a return to such Prepetition Secured Parties. | |
| **Limitation of the Court's Power and/or Discretion** Local Rule 4001-2(a)(i)(C) | The Interim Order does not contain any provisions that specifically limit the Court's authority to enter future orders in the Debtor's Chapter 11 Case. | N/A |
| **Budget** Bankruptcy Rule 4001(b)(1)(B); Local Rule 4001-2(a)(iii) | The use of Cash Collateral is subject to a budget to be approved by the Court. The Debtor agrees to comply with the Budget (subject to Permitted Variances). A failure by the Debtors to satisfy any Variance Test (subject to Permitted Variances) constitutes a Cash Collateral Termination Event. The Budget is attached to the Interim Order as Schedule 1. | Interim Order ¶ 3. |
| **Carve-Out** Local Rule 4001-2(a)(i)(F) | The Interim Order provides a "Carve Out" of certain statutory fees and allowed professional fees of the Debtors and any official committee appointed in these chapter 11 cases pursuant to section 1103 of the Bankruptcy Code and a Post-Carve Out Trigger Notice Cap, all as detailed in the Interim Order."" | Interim Order ¶ 8(b). |
| **Postpetition Liens on Unencumbered Assets** Local Rule 4001-2(a)(i)(G) | None | N/A |

| SUMMARY OF MATERIAL TERMS | | |
|---|---|---|
| **Milestones** Bankruptcy Rule **4001(c)(1)(B)** Local Rule 4001-2(a)(i)(H) and 4001-2(a)(ii) | None | N/A |
| **Payment of Adequate Protection Fees and Expenses Without Review** Local Rule 4001-2(a)(i)(K) | None. | N/A |
| **Limitation on Estate Funds Related to the Challenge Period** Local Rule 4001-2(a)(i)(L) | None | N/A |
| **Termination Date/Remedies** Bankruptcy Rule 4001(b)(1)(B); Local Rules 4001-2(a)(i)(M), (S) | Upon the occurrence of a Cash Collateral Termination Event, the affected Prepetition Secured Party may seek, on five days' notice, an order terminating the Debtor's use of Cash Collateral; provided that, until entry of such order, (x) the Debtor may cure any Cash Collateral Termination Event and (y) the Debtor may continue to use Cash Collateral to make payments in respect of expenses critical to preserve the value of the Debtor's business and the Collateral in accordance with the Budget; and provided, further, that the Debtor may continue to use Cash Collateral after termination of its use of Cash Collateral solely to the extent necessary to fund the Carve Out subject to ¶ 8(d) of the Interim Order.<br><br>Nothing herein limits the Court's ability to hear any matters it deems appropriate at such hearing. | Interim Order ¶¶ 9,10. |
| **Termination Events** Bankruptcy Rule 4001(b)(1)(B); | The events set forth in ¶ 9 of the Interim Order are collectively referred to as the "Cash Collateral Termination Events" and consist of: | Interim Order ¶ 9. |

4912-2374-3419.1 68804.00001                    -12-

| SUMMARY OF MATERIAL TERMS | | |
|---|---|---|
| Local Rule 4001-2(a)(i)(M) | (a)    the Expiration Date;<br><br>(b)    the effective date of a chapter 11 plan of the Debtor;<br><br>(c)    the violation of any term of this Interim Order by the Debtor (other than as de-scribed in clause (h) below) that is not cured within five (5) business days of receipt by the Debtor, counsel for any statutory committees ap-pointed in this case, and the U.S. Trustee of notice of such default, violation, or breach (which may be provided to the Debtor, counsel for the Official Committee, and the U.S. Trustee by email);<br><br>(d)    the filing by the Debtor of a motion to dismiss the Chapter 11 Case, or the entry of any order dismissing this Chapter 11 Case (other than following the effective date of a chapter 11 plan);<br><br>(e)    the filing by the Debtor of a motion to convert this Chapter 11 Case to a case un-der chapter 7 or the entry of order converting this Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code;<br><br>(f)    the entry of an order appointing a chapter 11 trustee or an examiner with enlarged powers relating to the operation of the business of any Debtor (powers beyond those set forth in sections 1106(a)(3) and (a)(4) of the Bankruptcy Code);<br><br>(g)    the failure by the Debtor to deliver to any of the Notice Parties any of the documents or other information reasonably required to be delivered to such applicable party pursuant to this Interim Order within five (5) business days following a request therefor from any of the Notice Parties pursuant to the terms of this Interim Order; or any such documents or other information shall contain a material misrepresentation; provided that, such misrepresentation remains uncured for at least five (5) business days following written notice thereof from a Notice Party; or | |

| SUMMARY OF MATERIAL TERMS | | |
|---|---|---|
| | (h)      the Debtor's failure to comply with the Budget except with respect to Permitted Variance. | |
| **Validity, Perfection, and Amount of Obligations Securing Prepetition Liens, Binding Effect of Stipulations on Third Parties, and Challenge Period** Bankruptcy Rule 4001(b)(1)(B); Local Rule 4001-2(a)(i)(Q) | None | N/A |
| **Waiver/Modification of Automatic Stay** Bankruptcy Rule 4001(b)(1)(B); Local Rule 4001-2(a)(i)(S) | None | N/A |
| **Provisions Limiting the Rights of Parties in Interest** Local Rule 4001-2(a)(i)(T) | None | N/A |
| **Section 506(c) and 552(b) Waiver** Local Rule 4001-2(a)(i)(V), (W) | None | N/A |

| SUMMARY OF MATERIAL TERMS | | |
|---|---|---|
| **Marshaling Waiver** Local Rule 4001-2(a)(i)(X) | None | N/A |

## BASIS FOR RELIEF

**A. The Debtor Is Entitled to Use Cash Collateral and the Proposed Adequate Protection Is Appropriate.**

21.     Section 363 of the Bankruptcy Code governs the Debtor's use of property of its estate, including Cash Collateral. Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may use Cash Collateral where "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

22.     As of the Petition Date, Axios has not consented to the Debtor's use of Cash Collateral and has consistently pursued litigation and other adverse actions designed to wrest control of the Debtor's operations. Notwithstanding the lack of consent, the Debtor should be authorized to use Cash Collateral because it is providing Axios with adequate protection of any interest it may have in such collateral. Section 363(e) of the Bankruptcy Code requires that a secured creditor's interest in property be adequately protected when a debtor uses cash collateral, and section 362(d)(1) similarly provides for adequate protection of a creditor's interest as a result of the imposition of the automatic stay. *See In re Cont'l Airlines*, 91 F.3d 553, 556 (3d Cir. 1996). As set forth below, the Debtor's proposed adequate protection package fully satisfies these requirements.

23.    While section 361 of the Bankruptcy Code provides examples of forms of adequate protection, such as granting replacement liens and administrative claims, courts decide what constitutes sufficient adequate protection on a case-by-case basis. *See In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994); *In re Satcon Tech. Corp.*, No. 12-12869, 2012 WL 6091160, at *6 (Bankr. D. Del. Dec. 7, 2012); *In re N.J. Affordable Homes Corp.*, No. 05-60442, 2006 WL 2128624, at *14 (Bankr. D.N.J. June 29, 2006); *In re Columbia Gas Sys., Inc.*, Nos. 91-803, 91-804, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992); *In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (citing 2 Collier on Bankruptcy ¶ 361.01 [1] at 361-66 (15th ed. 1993) (explaining that adequate protection can take many forms and "must be determined based upon equitable considerations arising from the particular facts of each proceeding")).

24.    The concept of adequate protection is designed to shield a secured creditor from diminution in the value of its interest in collateral during the period of a debtor's use. *See In re Carbone Cos.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) ("The test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral."); *see also In re Cont'l Airlines, Inc.*, 154 B.R. 176, 180–81 (Bankr. D. Del. 1993) (holding that adequate protection for use of collateral under section 363 of the Bankruptcy Code is limited to use-based decline in value).

25.    As described above, and as set forth in the Interim Order, the Debtor proposes to provide the Prepetition Secured Parties with the following forms of adequate protection (the "Adequate Protection Package"):

(a) **Replacement Liens**.  Replacement liens under sections 361 and 363 on all postpetition property to the same extent and priority as any valid, perfected, unavoidable prepetition liens, solely to the extent of any diminution in value resulting from the Debtor's use of such Prepetition Secured Party's Collateral.

(b) **Superpriority Administrative Claim**.  A superpriority administrative expense claim under section 507(b) of the Bankruptcy Code, subordinate only to the Carve Out, solely to the extent that (i) the applicable Prepetition Secured Party is determined to hold valid, perfected, and enforceable prepetition liens and claims, (ii) the Debtor's use of Cash Collateral results in a diminution in the value of such Prepetition Secured Party's interest in the Prepetition Collateral, and (iii) the other forms of adequate protection provided to such Prepetition Secured Party are determined to be insufficient to protect against any such diminution in value.

(c) **Information Rights**.  The Debtor shall comply with the access and information requirements set forth in ¶ 7 of the Interim Order, including reporting to the Prepetition Secured Parties and the Special Monitor.

(d) **Maintenance of Collateral**.  The Debtor shall continue to maintain and insure the Prepetition Collateral in the amounts, against the risks, and by the entities, required under the MSL.

(e) **Budget**.  The Debtor shall use Cash Collateral solely in accordance with a Court-approved 4-week budget (the "Budget"), subject to permitted variances on operational disbursements of up to twenty percent (20%) on an aggregate basis, tested on a cumulative basis.

(f) **CRO Authority Over Cash Disbursements; No Director Payments**.  In addition to complying with the Budget and all other requirements of the Interim Order, (a) the CRO shall have exclusive authority to authorize, defer, modify, or withhold any disbursement and (b) no payment shall be made to any director or owner of the Debtor.

(g) **Preservation of Going-Concern Value**. The Debtor further submits that the continued operation of the Hospital as a going concern preserves and enhances the value of the asserted collateral of the Prepetition Secured Parties. By authorizing the Debtor's use of Cash Collateral, the Court will enable the Debtor to continue providing essential healthcare services, maintain its workforce, preserve relationships with vendors and payors, and avoid a precipitous liquidation of the Hospital. Conversely, absent access to Cash Collateral, the Debtor would be forced to cease operations, resulting in an immediate and substantial destruction of going-concern value and a corresponding diminution in the value of any collateral securing the asserted claims of the Prepetition Secured Parties. Accordingly, the proposed use of Cash Collateral, together with the Debtor's proposed Adequate Protection Package, not only protects the Prepetition Secured Parties against any diminution in the value of their asserted interests but is the only viable path forward to providing a return to such Prepetition Secured Parties.

26.     The Debtor submits that the proposed Adequate Protection Package, along with the fact that the Debtor will soon receive additional and substantial HQAF payments, appropriately protects the Prepetition Secured Parties against any diminution in the value of their interests in the Prepetition Collateral, including any Cash Collateral, resulting from the Debtor's continued use of such collateral during this Chapter 11 Case. Under the circumstances, the proposed Adequate Protection Package adequately safeguards any rights the Prepetition Secured Parties may have while enabling the Debtor to continue operating the Hospital, preserve going-concern value, and maximize recoveries for all stakeholders. Absent authority to use Cash Collateral on these terms, the Debtor would face an immediate and disorderly cessation of operations, resulting in significant harm to patients, employees, creditors, and the Debtor's estate.

**B.      Failure to Obtain the Immediate Interim Use of Cash Collateral Would Cause Immediate and Irreparable Harm.**

27.     Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than fourteen days after service of such motion. Upon request, however, the Court is authorized to conduct a preliminary expedited hearing on this Motion and authorize the Debtor's proposed use of Cash Collateral to the extent necessary to avoid immediate and irreparable harm to the Debtor's estate. *See* Fed. R. Bankr. P. 4001(b)(2).

28.     The Debtor has an immediate and critical need to use Cash Collateral to continue operating its Hospital and administering this Chapter 11 Case. Without prompt access to liquidity, the Debtor cannot sustain operations or continue providing essential healthcare services to its patients. *See* Chadwick Declaration ¶ 11. The Debtor intends to use the Cash Collateral in the ordinary course of business, including to service patient needs, pay employee

wages and benefits, satisfy obligations to landlords and critical vendors, maintain hospital operations, and fund the costs of administering this Chapter 11 Case. Access to Cash Collateral will also provide the Debtor with the breathing spell afforded by the Bankruptcy Code to stabilize its operations and pursue a resolution of the Axios dispute and a value-maximizing restructuring free from further disruption to operations caused by Axios's prepetition enforcement efforts. *See id.* ¶ 5-6.

29.     As of the Petition Date, the Debtor has approximately $240,797.86 in cash on hand. *See id.* ¶ 10. Without immediate authority to use Cash Collateral, the Debtor will lack sufficient liquidity to continue operating its Hospital, meet payroll and other critical operating expenses, or fund this Chapter 11 Case. *See id.* ¶ 11. The resulting disruption would severely jeopardize patient care, adversely affect the Debtor's employees, vendors, and other stakeholders, and substantially diminish the value of the Debtor's estate. Accordingly, the Debtor's immediate use of Cash Collateral is essential to preserve its going-concern value, protect the continuity of patient care, and maximize recoveries for all parties in interest.

30.     The Debtor therefore seeks immediate authority to use the Cash Collateral as set forth in this Motion and in the proposed Interim Order to prevent immediate and irreparable harm to its estate pending the Final Hearing pursuant to Bankruptcy Rule 4001(b) and Local Rule 4001-2(b)(ii). The Debtor submits that it has satisfied the requirements of Bankruptcy Rule 4001 and Local Rule 4001-2 to support an expedited preliminary hearing and immediate access to Cash Collateral on an interim basis.

C.    **The Scope of the Carve Out Is Appropriate.**

31.     The proposed adequate protection is subject to the Carve Out, pursuant to which funds will be regularly reserved and funded during the pendency of the Chapter 11 Case to

ensure the timely payment of Allowed Professional Fees. Without the Carve Out, the Debtor and other parties in interest may be deprived of certain rights and powers, including the right to select their own professionals, because the services for which professionals may be paid in this chapter 11 case would be restricted. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (observing that courts insist on carve outs for estate professionals because "[a]bsent such protection, the collective rights and expectations of all parties-in-interest are sorely prejudiced").

32.     Moreover, the Carve Out serves to enhance the value of the Debtor's estate because, in the absence of a carveout, "nobody will represent the debtor or the committee and the case will fall apart, further diminishing the overall value of the secured creditor's collateral[.]" *In re Molycorp, Inc.*, 562 B.R. 67, 76 n. 39 (Bankr. D. Del. 2017). The Carve Out does not directly or indirectly deprive the Debtor's estate or other parties in interest of possible rights and powers. Additionally, the Carve Out protects against administrative insolvency on account of process costs during the course of the Chapter 11 Case by ensuring that assets remain for any payment owing to the Clerk of the Court, the U.S. Trustee pursuant to 28 U.S.C. § 1930, and professional fees of the Debtor and any statutory committee.

**REQUEST FOR FINAL HEARING**

33.    Pursuant to Bankruptcy Rule 4001(b)(2), the Debtor requests that the Court set a date for consideration of entry of the Final Order (the "Final Hearing") that is as soon as practicable and fix the time and date prior to the Final Hearing for parties in interest to file objections to this Motion.

**WAIVER OF BANKRUPTCY RULES 6004(a) AND (h)**

34.    The Debtor respectfully requests that the Court waive any stay of the effectiveness of the interim and final orders granting this Motion.  Pursuant to Bankruptcy Rule 6004(h), "[u]nless the court orders otherwise, an order authorizing the use, sale, or lease of property (other than cash collateral) is stayed for 14 days after the order is entered."  The Debtor submits that granting this Motion such that it is effective immediately is essential to prevent irreparable damage to the Debtor and its estate.

35.    Accordingly, the Debtor respectfully submits that the relief requested herein is appropriate under the circumstances and under Bankruptcy Rules 6003 and 6004(h).

36.    Finally, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) because the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtor's estate, is narrowly tailored to the exigencies of this Chapter 11 Case, and any delay resulting from compliance with the notice requirements would materially prejudice the Debtor, its estate, and stakeholders by jeopardizing the Debtor's access to Cash Collateral and its ability to continue operations in the ordinary course.

**RESERVATION OF RIGHTS**

37.    Notwithstanding anything to the contrary herein, nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion

(including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be: (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtor under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtor's or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code or otherwise affect the Debtor's rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtor's estate; (g) a waiver or limitation of the Debtor's or any other party in interest's claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; or (h) a waiver of the obligation of any party in interest to file a proof of claim.

## **NOTICE**

38.     The Debtor will provide notice of this Motion to the following parties or their respective counsel: (a) the U.S. Trustee; (b) the holders of the thirty (30) largest unsecured claims against the Debtor; (c) counsel to Axios; (d) counsel to the Landlord Entities; (e) counsel to L.A. Care; (f) the office of the attorney general for each of the states in which the Debtor operates; (g) the United States Attorney's Office for the District of Delaware; (h) the Internal Revenue Service; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.

The Debtor will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m). The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests entry of the Orders: (i) granting the relief requested herein; and (ii) granting the Debtor such other and further relief as the Court deems just and proper.

[Remainder of page left intentionally blank]

Dated: July 7, 2026          **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
Timothy Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
Wilmington, DE 19899
Tel:     (302) 652-4100
Email: ljones@pszjlaw.com
       tcairns@pszjlaw.com

-and -


**DENTONS US LLP**
Tania M. Moyron ([*pro hac vice* forthcoming])
Samuel R. Maizel ([*pro hac vice* forthcoming])
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Facsimile:  (213) 623-9924
Email:  tania.moyron@dentons.com
       samuel.maizel@dentons.com

John D. Beck (*pro hac vice* forthcoming)
Geoffrey Miller (*pro hac vice* forthcoming)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
Email:  john.beck@dentons.com
       geoffrey.miller@dentons.com

*Proposed Counsel to Debtor and Debtor in Possession*