**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Pacifica of the Valley Corporation,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 26-11060 (TMH)<br><br>**Docket Ref. No. 13** |

**DECLARATION OF PETER CHADWICK IN SUPPORT OF
THE DEBTOR'S CASH COLLATERAL MOTION**

I, Peter Chadwick, hereby state and declare as follows:

1. I am the Chief Restructuring Officer of Pacifica of the Valley Corporation d/b/a Pacifica Hospital of the Valley, the above-captioned debtor and debtor in possession (the "Debtor") in the above-referenced case (the "Chapter 11 Case"). I have been a Managing Director with Berkeley Research Group, LLC ("BRG"), since 2015. I specialize in corporate restructuring, interim management, financial advisory, and distressed business operations with over three decades of experience advising hospitals and healthcare systems in financial distress, including serving as chief restructuring officer, interim executive, and financial advisor in complex operational and chapter 11 restructurings. My work has focused on stabilizing healthcare operations, implementing cash management controls, preserving continuity of patient care, and developing operational budgets that allow hospitals to continue serving their communities while pursuing restructuring alternatives.

2. I submit this declaration in support of the *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to (A) Use Cash Collateral and (B) Grant Liens and*

---

[1] The Debtor in this Chapter 11 Case, along with the last four digits of the Debtor's federal tax identification number, is 7312. The Debtor's mailing address is 9449 San Fernando Road, Sun Valley, CA 91352.

*Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Prepetition Secured Parties; (III) Scheduling a Final Hearing; and (IV) Granting Related Relief* (the "Motion").

3.      Except as otherwise indicated, I have personal knowledge of the matters set forth herein based upon my work as CRO, my review of the Debtor's books and records, and discussions with the Debtor's management and advisors. If called upon to testify, I could and would testify competently to the matters stated herein.

4.      My immediate priority is to stabilize the Debtor's operations and preserve the Hospital's ability to continue providing critical healthcare services while the Debtor pursues its restructuring efforts.

5.      Working with the Debtor's management and professionals, I have overseen the preparation of a proposed four-week operating budget (the "Budget") that will be filed in advance of the hearing on the Motion.  The Budget is designed to fund the Debtor's most pressing and immediate operational needs during the interim period pending the final hearing on the Motion. The Budget includes only those expenditures necessary to maintain patient care, fund payroll and employee-related obligations, purchase essential pharmaceuticals and medical supplies, pay critical vendors, maintain regulatory compliance, and satisfy other expenses necessary to preserve the Debtor's operations and going-concern value.

6.      The proposed Budget is not intended to fund discretionary expenditures or non-essential activities. Rather, it is designed to conserve the Debtor's limited liquidity while ensuring that the Hospital remains operational and capable of serving its patients and community during the initial stages of this Chapter 11 Case.

7.      As CRO, and pursuant to the proposed Interim Order, I will exercise exclusive

authority over the Debtor's cash disbursements during the interim cash collateral period. No funds will be disbursed from the Debtor's accounts without my personal review and authorization. I will review proposed disbursements to ensure they are consistent with the Court-approved budget and immediately necessary for the continued operation of the Debtor's business.

8.    In addition, no payments will be made to any director or owner of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code. I will ensure compliance with this restriction by personally overseeing the Debtor's disbursement process and withholding authorization for any payment that would violate this requirement.

9.    In my professional judgment, the controls described above—including my direct oversight of all cash disbursements, the narrowly tailored four-week budget, and the prohibition against director/owner payments—provide meaningful safeguards to protect the interests of parties asserting interests in the Debtor's cash while permitting the Debtor to continue operating its Hospital, protecting patient care, and preserving the value of the estate for the benefit of all stakeholders.

10.    Based upon my review of the Debtor's financial records, as of the Petition Date, the Debtor had approximately $240,797.86 in cash on hand.  The Debtor anticipates receiving funds from Medi-Cal on or about July 7, 2026, and Quality Assurance Fees later this month, plus other government receivables, which will allow the Debtor to make necessary payments in the ordinary course of business.

11.    Without immediate authority to use cash collateral in accordance with the proposed Budget, the Debtor would be unable to fund essential operations, including payroll, patient care expenses, medical supplies, and other critical operating costs, placing the continued operation of the Hospital and its patients at immediate risk.

4

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Executed July 6, 2026, at Washington, DC.

$\qquad$ */s/ Peter Chadwick* $\qquad$
Peter Chadwick
Chief Restructuring Officer
Pacifica of the Valley Corporation