**Exhibit A**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Pacifica of the Valley Corp.,[1]<br><br>　　　　　　　Debtor. | Chapter 11<br><br>Case No. 26-11060 (TMH) |

**ORDER AUTHORIZING THE DEBTOR TO EMPLOY AND RETAIN KURTZMAN CARSON CONSULTANTS, LLC DBA VERITA GLOBAL AS CLAIMS AND NOTICING AGENT EFFECTIVE AS OF JULY 4, 2026**

Upon the application (the "Application")[2] of the above-captioned debtor and debtor in possession (the "Debtor") for entry of an order (this "Order") for authority to employ and retain Kurtzman Carson Consultants, LLC dba Verita Global ("Verita") as claims and noticing agent in the Debtor's chapter 11 case (the "Claims and Noticing Agent") effective as of the Petition Date, all as more fully set forth in the Application; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Application is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and this Court having found that the Debtor's notice of the Application and opportunity for a hearing on the Application were appropriate under the circumstances and no

---

[1]　The Debtor in this Chapter 11 Case, along with the last four digits of the Debtor's federal tax identification number, is 7312. The Debtor's mailing address is 9449 San Fernando Road, Sun Valley, CA 91352.

[2]　Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      Notwithstanding the terms of the Engagement Letter attached hereto, the Application is approved solely as set forth in this Order.

2.      The Debtor is authorized to retain Verita, effective as of the Petition Date, under the terms of the Engagement Agreement, and Verita is authorized and directed to perform noticing services and to receive, maintain, record and otherwise administer the proofs of claim filed in this case, and all related tasks, all as described in the Application (the "Claims and Noticing Services").

3.      Verita shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in this chapter 11 case (if any) and is authorized and directed to maintain official claims register for the Debtor, to provide public access to every proof of claim unless otherwise ordered by the Court and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk.

4.      Verita is authorized and directed to provide an electronic interface for filing proofs of claim and to obtain a post office box or address for the receipt of proofs of claim (if necessary).

5.      Verita is authorized to take such other action to comply with all duties set forth in the Application.

6.      Without further order of this Court, the Debtor is authorized to compensate and reimburse Verita in accordance with the terms and conditions of the Engagement Agreement upon

2

receipt of reasonably detailed invoices setting forth the services provided by Verita and the rates charged for each, and to reimburse Verita for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Verita to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

7.      Verita shall maintain records of all services performed showing dates, categories of services, fees charged, and expenses incurred, and shall serve monthly invoices on the Debtor, the U.S. Trustee, counsel to the Debtor, counsel to any official committee monitoring the expenses of the Debtor, and any party-in-interest who specifically requests service of the monthly invoices.

8.      The parties shall meet and confer in an attempt to resolve any dispute which may arise relating to the Engagement Agreement or monthly invoices, and the parties may seek resolution of such matter from this Court if resolution is not achieved.

9.      Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Verita under this Order shall be an administrative expense of the Debtor's estate.

10.     The Debtor shall indemnify Verita under the terms of the Engagement Agreement, as modified pursuant to this Order.

11.     Verita shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Agreement for services other than the Claims and Noticing Services, as provided under the Engagement Agreement, unless such services and the indemnification, contribution, or reimbursement therefore is approved by this Court.

12.     Notwithstanding anything to the contrary in the Engagement Agreement, the Debtor shall have no obligation to indemnify Verita, or provide contribution or reimbursement to Verita, for any losses, claims, damages, judgments, liabilities or expense that are either: (a)

judicially determined (the determination having become final) to have arisen from Verita's gross negligence, willful misconduct, or fraud; (b) for a contractual dispute in which the Debtor alleges the breach of Verita's contractual obligations, if this Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to *United Artists Theatre Co. v. Walton (In re United Artists Theatre Co.)*, 315 F.3d 217 (3d Cir. 2003); or (c) settled prior to a judicial determination under subsection (a) or (b), but determined by this Court, after notice and a hearing, to be a claim or expense for which Verita should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Agreement as modified by this Order.

13.     Before the earlier of: (a) the entry of an order confirming a chapter 11 plan in this chapter 11 case (that order having become a final order no longer subject to appeal); and (b) the entry of an order closing this chapter 11 case, should Verita believe that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification, contribution, or reimbursement obligations under the Engagement Agreement (as modified by this Order), including, without limitation, the advancement of defense costs, Verita must file an application in this Court, and the Debtor may not pay any such amounts to Verita before the entry of an order by this Court approving such application and the payment requested therein.  This paragraph is intended only to specify the period of time under which this Court shall have jurisdiction over any request for fees and expenses by Verita for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtor's obligation to indemnify Verita.  All parties in interest shall retain the right to object to any demand by Verita for indemnification, contribution, or reimbursement.

14.     In the event Verita is unable to provide the Claims and Noticing Services, Verita will immediately notify the Clerk and the Debtor's attorney and cause to have all original proofs

of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and Debtor's attorney.

15.     The Debtor may submit a separate retention application, pursuant to section 327 of the Bankruptcy Code or any applicable law, for work that is to be performed by Verita but is not specifically authorized by this Order.

16.     The Debtor and Verita are authorized to take all steps necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

17.     Notwithstanding any term in the Engagement Agreement to the contrary, this Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

18.     Verita shall not cease providing claims processing services during this chapter 11 case for any reason, including nonpayment, without an order of this Court.

19.     In the event of any inconsistency between the Engagement Agreement, the Application, and this Order, the terms of this Order shall govern.

20.     Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

## Exhibit 1

**Engagement Agreement**



## VERITA AGREEMENT FOR SERVICES

This Agreement is entered into as of the 6 day of July 2026, between Pacifica Hospital of the Valley (together with its affiliates and subsidiaries, the "Company"),[1] and Kurtzman Carson Consultants, LLC dba Verita Global (together with its affiliates and subcontractors, "Verita"). In consideration of the premises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

**Terms and Conditions**

I.      SERVICES

A.      Verita agrees to provide the Company with consulting services regarding noticing, claims management and reconciliation, plan solicitation, balloting, disbursements and any other services agreed upon by the parties or otherwise required by applicable law, government regulations or court rules or orders.

B.      Verita further agrees to provide (i) computer software support and training in the use of the support software, (ii) Verita's standard reports as well as consulting and programming support for the Company requested reports, (iii) program modifications, (iv) data base modifications, and/or (v) other features and services in accordance with the fees outlined in a pricing schedule provided to the Company (the "Verita Fee Structure").

C.      Without limiting the generality of the foregoing, Verita may, upon request by the Company, (i) provide a communications plan including, but not limited to, preparation of communications materials, dissemination of information and a call center staffed by Verita and/or (ii) provide confidential on-line workspaces or virtual data rooms and publish documents to such workspaces or data rooms (which publication shall not be deemed to violate the confidentiality provisions of this Agreement).

D.      The price listed for each service in the Verita Fee Structure represents a bona fide proposal for such services, which may be accepted in whole or in part.  Services will be provided when requested by the Company or required by applicable law, government regulations or court rules or orders.  Services are mutually exclusive and are deemed delivered and accepted by the Company when provided by Verita.

E.      The Company acknowledges and agrees that Verita will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "Company Parties") with respect to the services being provided under this Agreement.  The parties agree that Verita may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.  The Company agrees and understands that Verita shall not provide the Company or any other party with any legal advice.

II.     PRICES, CHARGES AND PAYMENT

A.      Verita agrees to charge and the Company agrees to pay Verita for its services at the rates and prices set by Verita that are in effect as of the date of this Agreement and in accordance with the Verita Fee Structure.  Verita's prices are generally adjusted periodically to reflect changes in the business and economic environment and are inclusive of all charges.  Verita reserves the right to reasonably increase its

---

[1]      The term Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in its chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.



**VERITA AGREEMENT FOR SERVICES**

prices, charges and rates; provided, however, that if any such increase exceeds 15%, Verita will give thirty (30) days written notice to the Company.

B.      In addition to fees and charges for services, the Company agrees to pay Verita's reasonable transportation, lodging, and meal expenses incurred in connection with services provided under this Agreement.

C.      In addition to all fees for services and expenses hereunder, the Company shall pay to Verita (i) any fees and charges related to, arising out of, or as a result of any error or omission made by the Company or the Company Parties, as mutually determined by Verita and the Company, and (ii) all taxes that are applicable to this Agreement or that are measured by payments made under this Agreement and are required to be collected by Verita or paid by Verita to a taxing authority.

D.      Where the Company requires services that are unusual or beyond the normal business practices of Verita, or are otherwise not provided for in the Verita Fee Structure, the cost of such services shall be charged to the Company at a competitive rate.

E.      Verita agrees to submit its invoices to the Company monthly and the Company agrees that the amount invoiced is due and payable upon the Company's receipt of the invoice. Verita's invoices will contain reasonably detailed descriptions of charges for both hourly (fees) and non-hourly (expenses) case specific charges. Where total invoice amounts are expected to exceed $10,000 in any single month and Verita reasonably believes it will not be paid, Verita may require advance payment from the Company due and payable upon demand and prior to the performance of services hereunder.  If any amount is unpaid as of thirty (30) days from the receipt of the invoice, the Company further agrees to pay a late charge, calculated as two and one-half percent (2-1/2%) of the total amount unpaid every thirty (30) days.  In the case of a dispute in the invoice amount, the Company shall give written notice to Verita within ten (10) days of receipt of the invoice by the Company.  The undisputed portion of the invoice will remain due and payable immediately upon receipt of the invoice.  Late charges shall not accrue on any amounts in dispute or any amounts unable to be paid due to Court order or applicable law.  Unless otherwise agreed to in writing, the fees for print notice and media publication (including commissions) must be paid at least three (3) days in advance of those fees and expenses being incurred.

F.      In the event that the Company files for protection pursuant to chapter 11 of the United States Bankruptcy Code (a "Chapter 11 Filing"), the parties intend that Verita shall be employed pursuant to 28 U.S.C. § 156(c) to the extent possible and otherwise in accordance with applicable Bankruptcy law and that all amounts due under this Agreement shall, to the extent possible, be paid as administrative expenses of the Company's chapter 11 estate.  As soon as practicable following a Chapter 11 Filing (and otherwise in accordance with applicable law and rules and orders of the Bankruptcy Court), the Company shall cause pleadings to be filed with the Bankruptcy Court seeking entry of an order or orders approving this Agreement (the "Retention Order").  The form and substance of the pleadings and the Retention Order shall be reasonably acceptable to Verita.  If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Verita will continue to be paid for its services in accordance with the terms of this Agreement.  The parties recognize and agree that if there is a conflict between the terms of this Agreement and the terms of the Retention Order, the terms of the Retention Order shall govern during the chapter 11 or other proceeding.

**VERITA AGREEMENT FOR SERVICES**

III.     RIGHTS OF OWNERSHIP

A.      The parties understand that the software programs and other materials furnished by Verita pursuant to this Agreement and/or developed during the course of this Agreement by Verita are the sole property of Verita.  The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation.  The Company agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished pursuant to this Agreement.

B.      The Company further agrees that any ideas, concepts, know-how or techniques relating to data processing or Verita's performance of its services developed or utilized during the term of this Agreement by Verita shall be the exclusive property of Verita.  Fees and expenses paid by the Company do not vest in the Company any rights in such property, it being understood that such property is only being made available for the Company's use during and in connection with the services provided by Verita under this Agreement.

IV.     NON-SOLICITATION

The Company agrees that neither it nor its subsidiaries or other affiliated companies shall directly or indirectly solicit for employment, employ or otherwise retain employees of Verita during the term of this Agreement and for a period of twelve (12) months after termination of this Agreement unless Verita provides prior written consent to such solicitation or retention.

V.      CONFIDENTIALITY

Each of Verita and the Company, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the services provided under this Agreement; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body it may, upon not less than five (5) business days' written notice to the other party, release the required information.

VI.     SUSPENSION OF SERVICE AND TERMINATION

A.      This Agreement shall remain in force until terminated or suspended by either party (i) upon thirty (30) days' written notice to the other party or (ii) immediately upon written notice for Cause (defined herein).  As used herein, the term "Cause" means (i) gross negligence or willful misconduct of Verita that causes serious and material harm to the Company's reorganization under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay Verita invoices for more than sixty (60) days from the date of invoice, or (iii) the accrual of invoices or unpaid services in excess of the retainer held by Verita where Verita reasonably believes it will not be paid.

B.      In the event that this contract is terminated, regardless of the reason for such termination, Verita shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions and Verita shall provide all necessary staff, services and assistance required for an orderly transfer.  The Company agrees to pay for such services in accordance with Verita's then existing prices for such services.  If such termination occurs following entry of the Retention Order, the Company shall immediately seek entry of an order (in form and substance reasonably

**VERITA AGREEMENT FOR SERVICES**

acceptable to Verita) that discharges Verita from service and responsibility in the Company's bankruptcy case.

C.       Any data, programs, storage media or other materials furnished by the Company to Verita or received by Verita in connection with the services provided under the terms of this Agreement may be retained by Verita until the services provided are paid for, or until this Agreement is terminated with the services paid in full.  The Company shall remain liable for all fees and expenses imposed under this Agreement as a result of data or physical media maintained or stored by Verita.  Verita shall dispose of the data and media in the manner requested by the Company.  The Company agrees to pay Verita for reasonable expenses incurred as a result of the disposition of data or media.  If the Company has not utilized Verita's services under this Agreement for a period of at least ninety (90) days, Verita may dispose of the data or media, and be reimbursed by the Company for the expense of such disposition, after giving the Company thirty (30) days' notice.  Notwithstanding any term herein to the contrary, following entry of the Retention Order, the disposition of any data or media by Verita shall be in accordance with any applicable instructions from the clerk of the Bankruptcy Court, local Bankruptcy Court rules and orders of the Bankruptcy Court.

VII.     SYSTEM IMPROVEMENTS

Verita strives to provide continuous improvements in the quality of service to its clients.  Verita, therefore, reserves the right to make changes in operating procedure, operating systems, programming languages, general purpose library programs, application programs, time period of accessibility, types of terminal and other equipment and the Verita data center serving the Company, so long as any such changes do not materially interfere with ongoing services provided to the Company in connection with the Company's chapter 11 case.

VIII.    ARTIFICIAL INTELLIGENCE (AI)

Verita may use AI-assisted tools solely to support service delivery (e.g., data processing, fraud detection, communications). Such tools do not independently make decisions affecting individuals. Personal information processed via such tools is subject to the same contractual restrictions, security measures, and data protection obligations as all other processing, and is not used to train shared or third-party AI models.

IX.      LIMITATIONS OF LIABILITY AND INDEMNIFICATION

A.       The Company shall indemnify and hold Verita, its affiliates, members, directors, officers, employees, consultants, subcontractors and agents (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, judgments, liabilities and expenses (including reasonable counsel fees and expenses) (collectively, "Losses") resulting from, arising out of or related to Verita's performance under this Agreement. Such indemnification shall exclude Losses resulting from Verita's gross negligence or willful misconduct.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third-parties against any Indemnified Party.  The Company shall notify Verita in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that the Company becomes aware of with respect to the services provided by Verita under this Agreement.  The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

B.       Except as provided herein, Verita's liability to the Company or any person making a claim through or under the Company for any Losses of any kind, even if Verita has been advised of the possibility of such

**VERITA AGREEMENT FOR SERVICES**

Losses, whether direct or indirect and unless due to gross negligence or willful misconduct of Verita, shall be limited to the total amount billed or billable to the Company for the portion of the particular work which gave rise to the alleged Loss.  In no event shall Verita be liable for any indirect, special or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the services provided for in this Agreement.  In no event shall Verita's liability to the Company for any Losses, whether direct or indirect, arising out of this Agreement exceed the total amount billed to the Company and actually paid to Verita for the services contemplated under the Agreement; provided, however, that this limitation shall not apply to the Company during any chapter 11 case in which the Company is a debtor.

C.      The Company is responsible for the accuracy of the programs, data and information it or any Company Party submits for processing to Verita and for the output of such information.  Verita does not verify information provided by the Company and, with respect to the preparation of schedules and statements, all decisions are at the sole discretion and direction of the Company.  The Company reviews and approves all schedules and statements filed on behalf of, or by, the Company; Verita bears no responsibility for the accuracy or contents therein.  The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs and data submitted by the Company to Verita.

D.      The Company agrees that except as expressly set forth herein, Verita makes no representations or warranties, express or implied, including, but not limited to, any implied or express warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

X.      FORCE MAJEURE

Verita will not be liable for any delay or failure in performance when such delay or failure arises from circumstances beyond its reasonable control, including without limitation acts of God, acts of government in its sovereign or contractual capacity, acts of public enemy or terrorists, acts of civil or military authority, war, riots, civil strife, terrorism, blockades, sabotage, rationing, embargoes, epidemics, pandemics, outbreaks of infectious diseases or any other public health crises, earthquakes, fire, flood, other natural disaster, quarantine or any other employee restrictions, power shortages or failures, utility or communication failure or delays, labor disputes, strikes, or shortages, supply shortages, equipment failures, or software malfunctions.

XI.     INDEPENDENT CONTRACTORS

The Company and Verita are and shall be independent contractors of each other and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of this Agreement.

XII.    NOTICES

All notices and requests in connection with this Agreement shall be given or made upon the respective parties in writing and shall be deemed as given as of the third day following the day it is deposited in the U.S. Mail, postage pre-paid or on the day it is given if sent by facsimile or electronic mail or on the day after the day it is sent if sent by overnight courier to the appropriate address set forth below:

**VERITA AGREEMENT FOR SERVICES**

KCC/Verita Global, LLC      Company
222 N. Pacific Coast Highway, 3rd Floor      Address
El Segundo, CA  90245      City, ST Zip
Attn:  Drake D. Foster      Attn:
Tel: (310) 823-9000      Email:
Fax: (310) 823-9133      Tel:
E-Mail: dfoster@veritaglobal.com      Fax:

Or to such other address as the party to receive the notice or request so designates by written notice to the other.

XIII.    APPLICABLE LAW

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of California.

XIV.    ENTIRE AGREEMENT/ MODIFICATIONS

Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, other agreements, and communications oral and written between the parties relating to the subject matter of this Agreement.  The Company represents that it has the authority to enter into this Agreement, and the Agreement is non-dischargeable under any applicable statute or law.  If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.  This Agreement may be modified only by a written instrument duly executed by an authorized representative of the Company and an officer of Verita.

XV.    COUNTERPARTS; EFFECTIVENESS

This Agreement may be executed in two or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other parties, which delivery may be made by exchange of copies of the signature page by facsimile or electronic mail.

XVI.    ASSIGNMENT

This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other, with the exception that this Agreement can be assigned without written consent by Verita to a wholly-owned subsidiary or affiliate of Verita.

**VERITA AGREEMENT FOR SERVICES**

XVII.   ATTORNEYS' FEES

In the event that any legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree to reimburse the prevailing party's reasonable attorneys' fees, court costs, and all other related expenses, which may be set by the court in the same action or in a separate action brought for that purpose, in addition to any other relief to which the prevailing party may be entitled.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the first date mentioned above.

Kurtzman Carson Consultants, LLC dba Verita Global

_____
BY: Evan Gershbein                      DATE:
TITLE: EVP, Corporate Restructuring Services

Company

_____
BY:                                     DATE:
TITLE:



# Fee Structure

## Consulting Services & Rates[1]

| Position | Hourly Rate |
| --- | --- |
| Analyst | Waived |

The Analyst processes incoming mail, creditor mail, creditor correspondence and returned mail, and supports the case team with administrative tasks as required.

| Position | Hourly Rate |
| --- | --- |
| Technology/Programming Consultant[2] | $31.50 - $85.50 |

The Technology/Programming Consultant assists with complex system requests, including unique claim/ballot reporting and custom website updates.

| Position | Hourly Rate |
| --- | --- |
| Consultant/Senior Consultant/Director | $58.50 - $216.00 |

The Consultant is the day-to-day contact for mailings, including the preparation and filing of affidavits of service (a critical due process component).  He/she also responds to creditor and counsel inquiries, maintains the public access website, identifies actionable pleadings (i.e., claims objections, notices of transfer, withdrawals, etc.) and updates the official claims register. Verita's Consultants average over six years of experience.

The Senior Consultant manages the various data collection processes required by the chapter 11 process.  This includes, among other things, compiling the creditor matrix and Schedules/SOFAs (and generating drafts of same for counsel and advisors), reviewing and processing claims, overseeing contract review, overseeing all mailings and generating custom claim and ballot reports. Verita's Senior Consultants average over seven years of experience.

The Director is the primary contact for the company, counsel and other professionals and oversees and supports the entirety of an engagement. Verita's Directors average over twelve years of experience and are generally former practitioners.

| Position | Hourly Rate |
| --- | --- |
| Securities/Senior Consultant | $220.50 |

The Securities/Senior Consultant is the day-to-day contact and acts as advisor on transactions including balloting with treatment election, rights offers, exchange offers and complex plan distributions. This position handles service of related materials to banks, brokers and agents and manages tabulation and audit processes, preparing detailed reporting of results. In addition, the Solicitation Consultant provides support on all voting, tabulation, Schedule and SOFA services and other additional complex consulting tasks.

| Position | Hourly Rate |
| --- | --- |
| Securities Lead/Director | $225 |

The Securities Lead/Director oversees all activities of the group and provide counsel with respect to solicitation and noticing events ensuring that processes employed are effective and practical for securities depositories, bank, brokers, nominees and their agents. In addition, the Solicitation Lead provides counsel on all voting, tabulation, Schedule and SOFA services and other additional complex consulting tasks.

| Position | Hourly Rate |
| --- | --- |
| Holidays and Weekday Overtime[3] | Waived |

---

[1] Please note that additional professional services not covered by this proposal will be charged at hourly rates, including any outsourced services performed under our supervision and control.

[2] Certain technology development fees may be applicable.

[3] Certain additional charges may apply for weekend services.

 veritaglobal.com

# Printing & Noticing Services

| Service | Fee |
| --- | --- |
| Printing | $0.12 per image[4] (volume discounts apply) |
| Document folding and inserting | Waived |
| Envelopes | Varies by size |
| E-mail noticing | Waived[5] |
| Fax noticing | $0.05 per page |
| Public Securities Events | Varies by Event |
| Claim Acknowledgement Card | Waived |
| Insert creditor information into customized documents | Waived |
| Newspaper/Media | Quote prior to publishing |

# Claims Administration & Management Expenses

| Service | Fee |
| --- | --- |
| License fee and data storage | $0.10 per record per month |
| Database and system access (unlimited users) | Waived |
| Custom client reports | Waived |
| Access to Verita CaseView (secure, password protected) | Waived |
| Proprietary, secured, password protected portal for unlimited users. Comprehensive case data, including extensive real time analytics on claim, solicitation and processing information. Functionality to run or request customized reports summarizing case analytics | |

# Verita eServices

| Service | Fee |
| --- | --- |
| Case website set up & hosting | Waived |
| Automated updates of case docket and claims register | Waived |
| Online claims filing (ePOC) | Waived |

[4] Print surcharges of $0.05 per image may apply to mailings required to be sent outside of normal business hours (8am – 6pm ET, Monday through Friday, excluding public holidays)

[5] A set-up fee for email services larger than 50 parties may apply. This set-up fee varies depending on the total number of parties

 **veritaglobal.com**

## Document Management/Imaging

| Service | Fee |
| --- | --- |
| Electronic imaging (scanning & bar coding) | $0.10 per imaged page |
| Virtual Data Room | Quote prior to VDR set-up |
| CD-ROMS (mass document storage) | Varies upon requirements |

## Call Center Support Services

| Service | Fee |
| --- | --- |
| Case-specific voice-mail box for creditors | Waived |
| Interactive Voice Response ("IVR") | Set-up and per minute fee waived |
| Monthly maintenance charge | Waived |
| Management of call center | Standard hourly rates |

## Disbursements

| Service | Fee |
| --- | --- |
| Check issuance | Quote prior to printing |
| W-9 mailing and maintenance of TIN database | See hourly rates and noticing charges |