**EXHIBIT B**

**Colorado Court's Ruling on Summary Judgment Motion**

| | |
|---|---|
| **DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO**<br>1437 Bannock Street<br>Denver, CO 80202 | DATE FILED<br>June 26, 2026 8:47 AM<br>CASE NUMBER: 2025CV31732 |
| **Plaintiff:**<br>AXIOS CAPITAL SOLUTIONS, LLC<br><br>**v.**<br><br>**Defendants:**<br>PACIFICA OF THE VALLEY CORP. and PAUL R. TUFT | **Δ COURT USE ONLY Δ** |
| | Case No.: 2025CV31732<br><br>Division: 209 |
| **ORDER RE: MOTION FOR PARTIAL SUMMARY JUDGMENT** ||

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment, filed April 8, 2026. Having considered the parties' briefing, the relevant legal authorities cited, and being familiar otherwise with record in this case, the Court ORDERS as follows:

**UNDISPUTED FACTS**

1.      On December 10, 2020, Defendant Pacifica of the Valley Corp. ("Pacifica") entered into the Loan Agreement.

2.      Pacifica's signature, through its authorized officer/Executive Chairman, Defendant Paul R. Tuft, appears on the Loan Agreement.

3.      The Loan Agreement was for the original principal amount of $35,000,000.

4.     In connection with the Loan Agreement, Pacifica executed and delivered a Promissory Note evidencing the Loan Agreement.

5.     The Promissory Note is signed by Tuft as the Executive Chairman of Pacifica.

6.     Pursuant to the Loan Agreement and Promissory Note, funds were loaned to Pacifica per the terms of the Loan Agreement.

7.     Pacifica was provided with notice of default.

8.     The full amount due under the loan and guaranty has not been paid.

9.     When Axios was asked in discovery for all records and evidence showing each payment made to satisfy Pacifica's obligations under the Loan Agreement and Promissory Note, Pacifica produced a ledger bates labeled as PACIFICA 00000191 to show what Pacifica contends to be "each payment made under the Loan Agreement and Promissory Note."

10.     PACIFICA 00000191 shows that between 2021 and 2024 Pacifica made a total of $5,132,050.21 in interest payments and late fees due on the Loan Agreement, and no payments towards reducing the $35,000,000.00 principal amount due and owing. Having only paid $5,132,050.21 in interest payments, the full amount due under the loan and Unconditional Guaranty, including the original $35,000,000.00 in principal, has not been paid.

11.     The loan matured on December 10, 2025.

12. Tuft admits he executed the Unconditional Guaranty.

13. According to the Loan Agreement, First Western may assign all its rights under the Loan Agreement to one or more purchasers whether or not related to First Western.

14. Pacifica agreed Colorado law governs the Loan Documents.

15. According to the Unconditional Guaranty, the guaranty is binding upon and shall inure to the benefit of First Western and its assigns.

16. Tuft agreed Colorado law governs the Unconditional Guaranty.

17. The loan at issue in this lawsuit is one issued under the federal Main Street Loan Program ("MSLP").

18. The loan was subject to the terms of a Co-Lender Agreement.

19. The Co-Lender Agreement incorporated by reference the MSLP's Standard Terms and Conditions for Co-Lender Agreements, available on the Federal Reserve's website. Those Standard Terms, in turn, prohibit assignments to "any of the Borrower's Affiliates or Subsidiaries" or to natural persons.

20. Axios's sole member is Brain Health, whose sole shareholder is Ehab Yacoub.

21. The Federal Reserve's MSLP Special Purpose Vehicle ("Main Street SPV") required First Western to obtain "confirmation that there is no common ownership between the buyer and the borrower" before it would agree to transfer its 95%

participation in Pacifica's Loan Agreement and Unconditional Guarantee to First Western so First Western could assign the entire loan to Axios.

22.     On August 11, 2025, Brain Health entered into a non-disclosure agreement with First Western in relation to the potential purchase of Pacifica's Loan Agreement and Unconditional Guarantee, with Michael Eskander signing for Brain Health as "General Counsel."

23.     On September 2, 2025, Axios formed in Delaware.

24.     Later that same day, Axios's counsel submitted an offer to First Western to buy Pacifica's Loan Agreement and Unconditional Guarantee.

25.     On September 29, 2025, First Western asked Axios to provide "an operating agreement for Axios showing ownership and authorized signers."

26.     That same day, Axios, through its counsel Michael Eskander, told First Western's investment bank, Piper Sandler, that "Sophia Kozman" is "the officer with authorization to sign." First Western asked "What is her title? Is Axios Capital Solutions a Delaware LLC? Is Ms. Kozman member or manager?" Mr. Eskander responded "Yes. Delaware! Ms. Kozman is Sole officer/manager." He later responded "I checked again. Her title is Sole Member."

27.     Following Axios's representation about Axios's ownership, the draft agreements, including the Sale and Assignment Agreement, Omnibus Assignment, and

Allonge, were all updated to state Kozman was the "sole member" of Axios. That representation was in place when the final versions were executed.

28. Also in place was Axios' representation that "[n]either [Axios] nor any of its affiliates has any ownership, management, or control over Borrower, Guarantor, or any other Borrower affiliates, and neither the Borrower, Guarantor or any of their affiliates has any ownership, management, or control over Assignee or its affiliates."

29. On September 29, 2025, Axios's counsel emailed representatives of the Federal Reserve copies of the "signed docs by Ms. Sophia Kozman."

30. On September 30, 2025, the Federal Reserve approved the final Participation Sale Agreement pursuant to which the Main Street SPV agreed to sell its 95% participation in Pacifica's Loan Agreement and Unconditional Guarantee to First Western, so First Western could in turn sell the Loan Agreement and Unconditional Guarantee to Axios. On September 30, 2025, representatives of the Federal Reserve responded to counsel for Axios and First Western: "Confirming that the Main Street SPV is signed off on the transaction and our signatures may be released."

31. Although Axios was the purchaser of Pacifica's Loan Agreement and Unconditional Guarantee, First Western's investment bank, Piper Sandler, invoiced Brain Health for its fees and expenses, listing "Brain Health USA" as the purchaser.

**LEGAL STANDARD**

Summary judgment is a drastic remedy and should be granted only if it has been clearly established that the moving party is entitled to a judgment as a matter of law. *See Clementi v. Nationwide Mut. Fire Ins. Co.*, 16 P.3d 223 (Colo. 2001). Summary judgment should be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c). "The movant bears the burden of establishing the lack of a genuine issue of material fact." *Closed Basin Landowners Ass'n v. Rio Grande Water Conservation Dist.*, 734 P.2d 627, 632 (Colo. 1987). Once the moving party has met its initial burden of production, the burden shifts to the party opposing summary judgment to establish by admissible evidence a genuine issue of material fact for trial exists. *See Cont'l Air Lines, Inc. v. Keenan*, 731 P.2d 708, 712 (Colo. 1987). For purposes of summary judgment, a "material fact" is one that will affect the outcome of the case. *Olson v. State Farm Mut. Auto. Ins. Co.*, 174 P.3d 849, 853 (Colo. App. 2007).

**ANALYSIS**

The issue to be decided by this Court on summary judgment is whether the assignment of the Loan Agreement, Promissory Note, and Unconditional Guaranty from First Western to Axios was legally valid. Specifically, Defendants argue the transfer was improper because Axios mislead First Western and the Federal Reserve when it concealed the fact Yacoub is common owner of both Axios and Pacifica. Thus, Defendants argue, the assignment was void *ab initio* for violating provisions of the CARES Act which do

not permit common ownership between the buyer and the borrower when selling agreements such as these to a third party. In support of this argument, Defendants produce a Complaint from a California lawsuit Yacoub filed in which he alleges he provided $5 million in funding to Tuft and an Institutional Affiliation Agreement between Brain Health and Pacifica. Defendants argue both documents demonstrate Yacoub holds a controlling interest in Pacifica.[1]

Axios responds the restrictions the CARES Act imposed did not apply to the assignment from First Western to Axios. Specifically, Axios points to a clause in the Participation Sale Agreement which the Federal Reserve approved that releases Loan Agreement and related documents from obligations under the MSLP. Axios also argues Yacoub has no ownership interests in Pacifica. In support of this contention, Axios points to Tuft's interrogatory response where he states he "is the sole shareholder and Chairman of the Board of Pacifica."

First, Axios misses the thrust of Defendants' argument when it states the CARES Act restrictions were not binding on the assignment. Defendants' entire argument is the Federal Reserve would not have approved any of the documentation related to the assignment if Yacoub had properly disclosed his ownership interest in Pacifica because, pursuant to the CARES Act, this is impermissible. Therefore, a trier of fact must determine whether Yacoub has any ownership interest in Pacifica at all.

---

[1] It is uncontested Yacoub holds an ownership interest in Axios.

After reviewing the documentation the parties provided, the Court finds there is a disputed issue of fact as to whether Yacoub has any ownership interest in Pacifica. As such, a determination of whether the transfer was valid would be inappropriate for the Court to make on summary judgment; the jury in this matter must first resolve the factual issue of whether Yacoub has any ownership interest in Pacifica. After that has been decided, only then may the Court decide the legal issue of whether the assignment was valid.

**CONCLUSION**

Based on the foregoing, the Court DENIES Plaintiff's Motion for Summary Judgment.

DATED: June 26, 2026.

BY THE COURT:

Sarah B. Wallace
District Court Judge