**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| PACIFICA OF THE VALLEY CORPORATION, | Case No. 26-11060 (TMH) |
| Debtor. | |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF
AXIOS CAPITAL SOLUTIONS, LLC TO DEBTOR'S MOTION FOR ENTRY OF
INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO (A) USE CASH
COLLATERAL AND (B) GRANT LIENS AND SUPERPRIORITY ADMINISTRATIVE
EXPENSE CLAIMS; (II) GRANTING ADEQUATE PROTECTION TO PREPETITION
SECURED PARTIES; (III) SCHEDULING A FINAL HEARING; AND
(IV) GRANTING RELATED RELIEF**

Axios Capital Solutions, LLC ("**Axios**"), through its undersigned counsel, files this *Limited Objection and Reservation of Rights* (this "**Limited Objection**") in response to the above-captioned purported debtor's (the "**Debtor**" or **"Pacifica"**) Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to (A) Use Cash Collateral and (B) Grant Liens and Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Prepetition Secured Parties; (III) Scheduling a Final Hearing; and (IV) Granting Related Relief [D.I. 13] (the "**Cash Collateral Motion**") and states as follows:

**INTRODUCTION**

1.     As an initial matter, Axios believes that the Debtor lacked corporate authority to file the Petition.  Axios intends to file a motion to dismiss the Petition for lack of corporate authority.

2.     Patient lives are at issue.  Axios consents to the limited use of cash collateral for two-weeks for operating expenses.  Axios does not consent to the use of cash collateral for payment of any professional fees.  Unless the Debtor and Axios are able to reach a resolution for extended

12010436.3

use of cash collateral, Axios intends to file an objection to use of cash collateral on a final basis and will likely seek expedited discovery in connection with its objection.  Nevertheless, for purposes of the Debtor's first day hearing, Axios will respectfully defer to the Court's discretion in authorizing limited use of cash collateral.  Notwithstanding, Axios would like to address some of the factual inaccuracies contained in the Motion.

## FACTUAL BACKGROUND

3.      Pursuant to the *Main Street Priority Loan Agreement* dated as of December 10, 2020 (the "**Main Street Loan**") among the Debtor and First Western Trust Bank ("**FWTB**"), as also evidenced by the *Promissory Note* made and delivered by the Debtor to FWTB dated as of December 10, 2020, in the original amount of $35,000,000, the Debtor is indebted to Axios, as successor in interest to FWTB, in the amount of not less than $50,878,944,[1] together with interest, fees, penalties and other amounts that have accrued and continue to accrue daily.  Axios holds the original Promissory Note and Allonge assigning all of FWTB's interests thereunder to Axios.

4.      Pursuant to the *Pledge and Security Agreement* dated as of December 10, 2020 (the "**Security Agreement**"), between the Debtor, as grantor, and Axios, as successor in interest to FWTB, the Debtor's obligations under the Mains Street Loan, Axios holds a valid, fully perfected first priority interest in and to substantially all assets of the Debtor.

5.      Pursuant to the *Unconditional Guaranty* dated December 10, 2020 (the "**Tuft Guaranty**"), between Paul R. Tuft ("**Mr. Tuft**"), as guarantor, and Axios, as successor in interest to FWTB, the Debtor's obligations under the Main Street Loan are personally, fully, and unconditionally guaranteed by Mr. Tuft, asserted by the Debtor to be the Executive Chairman and sole owner of the Debtor's hospital.  Mr. Tuft's obligations under the Tuft Guaranty are secured by

---

[1] Calculated as of September 30, 2026, assuming no additional capitalization.

the *Securities Pledge Agreement* dated December 10, 2020 (the "**Pledge Agreement**"), pursuant to which Mr. Tuft pledged, assigned and delivered to Axios, as successor in interest to FWTB, and granted to Axios, as successor in interest to FWTB, a security interest in all (100%) of his equity interests in the Debtor (the "**Tuft Stock**"), together with all proceeds and substitutions thereof, all cash, securities and other monies and property paid thereon, all rights to subscribe for securities declared or granted in connection therewith, and all other cash and non-cash proceeds of the foregoing (the "**Pledged Collateral**").[2]  Axios' security interest in the Tuft Stock and the Tuft Pledged Collateral is perfected by, among other things, Axios' possession of the stock certificate (Certificate No. 4) evidencing the Tuft Stock.

6.    Pursuant to the Security Agreement, the Debtor irrevocably appointed Axios, as successor in interest to FWTB, as the proxy and attorney-in-fact of the [Debtor] with respect to the Pledged Collateral, including the right to vote any of the Pledged Collateral, with full power of substitution to do so (the "**Irrevocable Proxy**").

7.    Following an initial forbearance period after inception of the Main Street Loan, the Debtor defaulted under the Main Street Loan almost immediately when payments became due and has failed to make its monthly payments for years.  During that time, the Debtor has amassed tens of millions of dollars in secured and unsecured debts owed to dozens of other creditors.  During the same period, insiders of the Debtor, namely Mr. Tuft and the Debtor's CEO, Precious Velvet Mayes ("**Ms. Mayes**") have caused the Debtor to pay them and/or related entities under their

---

[2] The Pledged Collateral also includes any securities, instruments or distributions of any kind issuable, issued or received by Mr. Tuft upon conversion of, in respect of, or in exchange for any other Tuft Pledged Collateral, including, but not limited to those arising from a stock dividend, stock split, reclassification, reorganization, merger, consolidation, sale of assets or other exchange of securities or any dividends of other distributions of any kind upon or with respect to the Tuft Pledged Collateral.

12010436.3

ownership or control millions of dollars since the Debtor emerged from its prior bankruptcy proceeding in 2017.

8.      For instance, Pacifica's auditor's report for the years 2021-2022 state as follows:

a.      *Notes receivable from a related party:*

In 2022 and 2021, Pacifica issued non-interest bearing loans with the total loans receivable balances of $10,458,059 and $3,311,607 … at December 31, 2022 and 2021, respectively to a related entity with common ownership. The loan is represented in notes receivable from related parties on the accompany Balance Sheet and is payable on December 31, 2023.

b.      *Loans to Shareholder:*

During the years ended December 31, 2022 and 2021 loans were issued by Pacifica to the shareholder with the total loans receivable balances of $5,391,883 and $3,912,898 at December 31, 2022 and 2021 respectively.

c.      *Related Vendors:*

Southwest Healthcare Services, LLC ("**Southwest**") is related to Pacifica through common ownership and provides certain management advisory services to Pacifica. During 2022 and 2021, Pacifica incurred management advisory service expenses from Southwest in the amounts of $6,518,000 million and $3,145,000 million, respectively.  As of December 31, 2022 and 2021, Pacifica owed $1,476,000 and $0 respectively, to Southwest for the management advisory services, which are recorded as accounts payable to related parties on the accompanying Balance Sheet."

During the years ended December 31, 2022 and 2021, Pacifica loaned Southwest $0 and $8,560,000 and Southwest repaid $200,000 and $0 respectively, with the total notes receivable balances of $22,008,001 million and $22,208,001 million at December 2022 and 2021, respectively…"

As of December 31, 2020, the management of Pacifica estimated an accrued a bad debt allowance for the Southwest loan in the amount of approximately $11,960,000 … The loan receivable balance net of the bad debt allowance amounted to $10,045,000 and $10,245,000 at December 31, 2022 and 2021 respectively.

9.      The Debtor's 2024 Auditor's Report reflects continued misuse of the Debtor's assets including:

12010436.3

(i) the Debtor's Notes receivable from a related party had increased to an outstanding debt of $14,691,871 by December 31, 2023, and of which the Debtor's "management" had written off $2,000,000 as bad debt;

(ii) the Debtor's Loans to Shareholder exceeded $5,300,000 at December 31, 2022, and $4,400,000 at December 31, 2023, and were classified as a "reduction of equity" in the Debtor's financials; and

(iii) as to the Debtor's Related Vendors: "During 2023 and 2022, [the Debtor] incurred management advisory service expenses from Southwest in the amounts of $3,300,000 and $6,518,000 respectively. As of December 31, 2023 and 2022, [the Debtor] owed $1,142,000 and $1,476,000, respectively, to Southwest for the management advisory services, which are recorded as accounts payable to third parties on the accompanying Balance Sheet." Additionally, during 2022 and 2023, Southwest paid $0 towards its $22,008,001 payable to the Debtor.

10. Thus, as stated in numerous notices of default issued to the Debtor, in 2023, 2024 and 2025, the Debtor is and has been in default of its obligations under the Main Street Loan. Such defaults have never been cured by the Debtor.

11. On May 13, 2025, FWTB commenced suit against the Debtor in the District Court of Denver County, Colorado (the "**Colorado Court**"), styled as *First Western Trust Bank v. Pacifica of the Valley Corporation and Paul R. Tuft*, Case No. 2025CV31732 (Division 209) (the "**Colorado Lawsuit**").

12. By Order of the Colorado Court dated November 5, 2025, granting *First Western Trust Bank's Verified Motion for Substitution of Plaintiff/Creditor Pursuant to C.R.C.P. 25(c)*, Axios was substituted as the plaintiff in the Colorado Lawsuit.

13. On May 15, 2026, the Colorado Court entered the *Order Appointing Special Monitor* (the "**Monitor Order**") pursuant to which the Court appointed Westwood Healthcare Partners, LLC ("**Westwood**") as Special Monitor to monitor the Debtor. The Monitor Order instills Westwood with sweeping rights of access and authority to investigate and obtain information from the Debtor concerning all aspects of its operations and existence.

12010436.3

14. Within the 30 days following entry of the Monitor Order, Mr. Tuft and/or Ms. Mayes caused the Debtor to wire to Mr. Tuft, personally, in excess of $600,000 via a series of wire transfers.

15. On June 15, 2026, Axios filed the *Plaintiff's Emergency Motion for Temporary and Restraining Order and Preliminary Injunction* to stop the dissipation of the Debtor's funds. The Debtor and Mr. Tuft stipulated to the requested preliminary injunction and Mr. Tuft returned to the Debtor $238,000 that was wired to him on June 15, 2026 but, upon information and belief, has not returned any other funds.

16. On June 12, 2026, Axios and the Monitor jointly filed the *Joint Motion to Expand the Special Monitor's Role to a Full Receivership* (the "**Receivership Motion**").

17. Based on action taken pursuant to a limited exercise of the Irrevocable Proxy, by letter dated June 12, 2026, Axios notified Mr. Tuft and the Debtor, as follows:

> As a direct and proximate result of the ongoing occurrence of one or more Events of Default as defined in the Loan Documents, [Axios] hereby notifies [the Debtor] and Mr. Tuft of its exercise of the following rights and remedies, its use of which shall not prejudice any other rights and remedies Lender may have under the Loan Documents or applicable law:
>
> 1) Pursuant to Paragraph 3 of that certain Securities Pledge Agreement, any rights [Mr. Tuft] may otherwise have to consent, vote, or to otherwise cause the Borrower to avail itself of the protections of Title 11 of the United States Code (including to file a Petition in Bankruptcy) are hereby suspended;
>
> 2) Pursuant to Article VI of that certain Pledge and Security Agreement, please find attached Action by Written Consent of Shareholders and Directors of [the Debtor] delegating any such bankruptcy authority exclusively to Westwood Healthcare Partners, LLC, having an Effective Date of June 11, 2026.

18. By letter dated July 3, 2026, Axios notified the Debtor's counsel, Dentons US LLP, as follows:

We write to ensure that you have been made aware that Mr. Tuft, whom we presume secured your engagement, does not have authority to commence a bankruptcy proceeding for Pacifica, and as such your services are not necessary. Please see the enclosed correspondence from my office dated June 12, 2026.

Moreover, any payments Pacifica may have made to your firm are both an unauthorized transfer of Axios' collateral and constitute an improper waste of Pacifica's assets. We request that you promptly return any such payments to Pacifica and immediately cease any bankruptcy work on its behalf. To date, the Special Monitor has given no indication of its intent to commence a bankruptcy filing on behalf of Pacifica. We hope that this matter can be resolved amicably, as Axios does intend to protect its rights under the Loan Documents and to its collateral to the full extent of the law.

19. On Saturday, the Fourth of July 2026, the Debtor filed the Petition and commenced this Case. The Debtor's hurry to file the Petition, despite actual knowledge that it lacked any authority to do so, was likely to prevent the Colorado Court from hearing and acting on the Receivership Motion at a hearing scheduled for July 8, 2026.

## **LIMITED OBJECTIONS**

20. Axios objects to the pendency of this Case and intends to file a motion to dismiss the bankruptcy case. The Debtor and Mr. Tuft were informed on June 12, 2026, that neither of them had any right to vote to seek relief under the Bankruptcy Code and that such right had been exclusively delegated to Westwood. Axios then followed up with a letter to the Debtor's counsel on July 3, 2026, to ensure that the Debtor's counsel was aware of the Debtor's and Mr. Tuft's lack of authority to seek relief under the Bankruptcy Code.

21. The Debtor lacked any authority to commence this Case; the Petition was not properly authorized. The *Resolutions of the Sole Director of [the Debtor]* dated July 2, 2026, attached to the Petition, are wrongfully executed by Mr. Tuft and wrongfully relied upon by the Debtor as authority to have filed the Petition. This Case was, knowingly and purposely commenced wrongfully, without any corporate authority whatsoever.

12010436.3

22. Axios does not consent to the Debtor's use of cash collateral on a final basis and intends to file an objection to be heard at any second day hearing that may occur in this Case. Axios will likely seek expedited discovery in connection with its objection.

## **RESERVATION OF RIGHTS**

23. Axios hereby expressly reserves the right to (a) amend or supplement this Limited Objection and otherwise take any additional or further action with respect to the subject matter hereof, (b) be heard before this Court to raise additional arguments or issues in connection therewith or in connection with any of the Debtor's other first day motions, (c) take discovery concerning the Cash Collateral Motion, the Debtor's lack of authority to commence this Case, and any of the Debtor's first day motions. Nothing herein is intended to nor shall be construed as a waiver or limitation of any of Axios' rights or remedies, all of which are fully reserved and preserved.

12010436.3

**RAINES FELDMAN LITTRELL LLP**

Dated: July 8, 2026
      Wilmington, Delaware

*/s/ Mark W. Eckard*
Thomas J. Francella, Jr. (No. 3835)
Mark W. Eckard (No. 4542)
824 North Market Street, Suite 805
Wilmington, DE 19801
Telephone: (302) 772-5803
Email: tfrancella@raineslaw.com
      meckard@raineslaw.com

and

Hamid R. Rafatjoo, Esquire (*pro hac vice*)
Raines Feldman Littrell LLP
4675 MacArthur Ct., Suite 1550
Newport Beach, CA 92660
HRafatjoo@RainesLaw.com

and

Carollynn H.G. Callari, Esquire (*pro hac vice*)
Raines Feldman Littrell LLP
1350 Avenue of the Americas, 22nd Floor
New York, NY 10019
ccallari@raineslaw.com

12010436.3