**Exhibit 1**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>Pacifica of the Valley Corporation,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 26-11060 (TMH) |

**MOTION OF THE DEBTOR FOR ENTRY OF INTERIM
AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO (A)
CONTINUE OPERATING ITS EXISTING CASH MANAGEMENT SYSTEM,
INCLUDING MAINTAINING EXISTING BANK ACCOUNTS, CHECKS, AND
BUSINESS FORMS, AND (B) CONTINUE ITS EXISTING DEPOSIT
PRACTICES, (II) WAIVING CERTAIN U.S. TRUSTEE GUIDELINES, (III)
MODIFYING REQUIREMENTS OF SECTION 345(b) OF THE BANKRUPTCY
CODE, AND (IV) GRANTING RELATED RELIEF**

Pacifica of the Valley Corporation d/b/a Pacifica Hospital of the Valley ("Pacifica"), a

debtor and debtor in possession (the "Debtor") under chapter 11 of title 11 of the United States

Code, §§ 101 et seq. (the "Bankruptcy Code"),[2] in this chapter 11 case (the "Chapter 11 Case"),

hereby files this motion (the "Motion"), pursuant to §§ 105(a), 345, 363, 364, 503(b), and

507(a)(2), Bankruptcy Rules 2015, 6003 and 6004(h); and Local Rules 2015-1 and 9013-1(m), for

entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and

**Exhibit B**, respectively (collectively, the "Proposed Orders"): (i) authorizing the Debtor to (a)

continue to use its cash management system, including maintaining its existing bank accounts,

checks, and business forms, (b) implement changes to its cash management system in the ordinary

course of business, including opening new bank accounts or closing existing bank accounts; (ii)

---

[1] The Debtor in this Chapter 11 Case, along with the last four digits of the Debtor's federal tax identification number, is:  Pacifica of the Valley Corporation d/b/a Pacifica Hospital of the Valley (7312). The Debtor's mailing address is 9449 San Fernando Road, Sun Valley, CA 91352.

[2] All references to 'section' or '§' herein are to sections of the Bankruptcy Code.  All references to "Bankruptcy Rules" are to provisions of the Federal Rules of Bankruptcy Procedure. All references to "Local Rules" are to provisions of the Local Rules of the United States Bankruptcy Court for the District of Delaware.

1

waiving certain bank account and related guidelines of the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee," and such guidelines, the "U.S. Trustee Guidelines"), to the extent inconsistent with the Debtor's practices under its existing cash management system or other actions described herein; (iii) modifying the requirements of § 345(b); and (iv) granting related relief.

The Debtor further requests that the Court authorize the financial institutions at which the Debtor maintains bank accounts to (i) continue to maintain, service, and administer the Debtor's bank accounts, and (ii) debit the bank accounts in the ordinary course of business on account of (a) wire transfers or checks drawn on the bank accounts or (b) undisputed service charges owed to such financial institutions for maintenance of the Debtor's cash management system, if any.

In support of this Motion, the Debtor submits and incorporates by reference the Declaration of Precious Mayes in Support of Emergency First Day Motions, filed contemporaneously herewith (the "First Day Declaration"), and respectfully states as follows:[3]

## I.    PRELIMINARY STATEMENT

1.    Granting this Motion is a critical part of the Debtor's reorganization and is necessary for a smooth transition into chapter 11. The Debtor's revenue is derived from government payors and a combination of private pay private insurance, individual patients, pharmacy, and government grants via ACH transactions and checks. Notably, Medi-Cal provides approximately 50% to 85% of the Debtor's total revenue and patient volume, with approximately half of the hospital's inpatient revenue coming directly from Medi-Cal, with another substantial portion arriving through Medi-Cal Managed Care. Requiring the Debtor to close its existing Bank

---

[3] Capitalized terms used but not defined in this Motion have the meanings ascribed to them in the First Day Declaration.

Accounts (as defined herein) would have disastrous, potentially fatal, consequences for the Debtor because it will significantly interrupt the Debtor's government receivables, which is the majority of its revenue. For example, it could take Medi-Cal three months, or more, to update their internal records regarding the new deposit instructions, during which time no payments would be received by the Debtor. Without this revenue, the Debtor would likely be forced to immediately liquidate and would be unable to provide patients with critical healthcare.

2.      Relatedly, the Debtor's accounting staff, which also will be working on supplying all of the information needed to meet the Debtor's chapter 11 reporting requirements, as well as performing their regular tasks, would be further distracted by a needless, time-consuming exercise of closing the Bank Accounts, opening new ones, advising and explaining the same to interested parties, addressing the logistical issues of getting the payors to utilize the new accounts and getting checks printed for the new disbursement account(s).

3.      In addition, the Debtor lacks any meaningful cash reserves and requires immediate access to its cash receipts. Any delay in collection of those receipts that are available could jeopardize the Debtor's ability to conduct its business, which, in turn, could ultimately provide irreparable harm to the Debtor's patients. Such delays would threaten the Debtor's reorganization and could cause it to immediately cease operations.

4.      The Debtor also relies upon its Bank Account and Cash Management System for other important business functions, including payment of payroll, applicable state and federal payroll taxes, and payment of vendors needed to operate the Debtor's business. Any disruption in the Debtor's ability to make these types of disbursements when and as required in the ordinary course could cause employees and patients to lose confidence in the Debtor's ability to function as a going concern.

3

5.      The requested relief preserves continuity and ensures that the Debtor will be able to continue to provide essential health care services to its patients.  The relief requested will also protect estate value and allows the Debtor to focus on stabilizing its hospital operations and pursuing a value maximizing restructuring.

## II.      JURISDICTION AND VENUE

6.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Pursuant to Bankruptcy Rule 7008 and Local Rule 9013-1(f), the Debtor consents to the entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

7.      Venue of this Chapter 11 Case and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      The statutory and legal predicates for the relief requested herein are §§ 105(a), 345, 363, 364, 503(b), and 507(a)(2), Bankruptcy Rules 6003 and 6004, and Local Rules 2015-1 and 9013-1(m).

## III.      BACKGROUND

A.  The Chapter 11 Case

9.      On July 4, 2026 (the "Petition Date"), the Debtor commenced a voluntary case for relief under chapter 11 of the Bankruptcy Code.  The Debtor is authorized to continue operating

4

its business and managing its properties as a debtor in possession pursuant to §§ 1107(a) and 1108. No trustee, examiner, or statutory committee has been appointed in this Chapter 11 Case.

10.     Additional information regarding the Debtor, its business, and the events leading to the commencement of this Chapter 11 Case is set forth in the First Day Declaration.

B.     Overview of the Cash Management System

11.     In the ordinary course of business, the Debtor maintains and uses a cash management system (the "Cash Management System") that is similar to those used by healthcare enterprises of comparable size and complexity.  Through the Cash Management System, the Debtor receives, transfers, and disburses funds in an orderly manner, maintains records of those transactions, and satisfies the reporting and payment requirements applicable to government healthcare programs.

12.     The Cash Management System consists of thirteen (13) bank accounts (the "Bank Accounts") maintained at California Federal Credit Union and Columbia Bank (collectively, the "Banks").  Deposits at the California Federal Credit Union are federally insured up to at least $250,000 per account holder by the National Credit Union Administration ("NCUA").  Also, deposits at Columbia Bank are federally insured up to at least $250,000 per account holder by the Federal Deposit Insurance Corporation ("FDIC").

13.     The Bank Accounts are identified and described on the schedule attached as **Exhibit C** (the "Bank Account Chart").  The Bank Account Chart sets forth relevant information for each Bank Account, including: (a) the account title, based on recent bank statements, including whether the Bank Account is used to hold funds for other parties; (b) the last four digits of the account number; (c) the account type; (d) the applicable Bank; (e) whether the account is subject to any draft arrangements and the name of the applicable drafting party; (f) recent balances; and

(g) a brief description of the purpose and use of the account.  The Debtor may open additional accounts after the Petition Date to the extent necessary.

14.    As reflected in the Bank Account Chart, the Bank Accounts at California Credit Union generally fall into the following categories: an operating account; a government collections account, a non-government collections account; a payroll account; a payroll tax and benefits account; an accounts payable account; and an ERISA account.

15.    The Debtor also has three (3) joint Bank Accounts with Serra Clinic at Columbia Bank.  The Debtor cannot access these Bank Accounts which are related to the Debtor's capitated plan where claims under the plan are managed by Serra Clinic who then makes distributions on those claims from the account.

16.    The Debtor's Cash Management System operates in the following manner.  The Debtor generates revenue primarily by providing acute care, sub-acute, skilled nursing, behavioral health, and emergency services to patients.  A majority of the Debtor's total revenues come from government payors and the remainder comes from a combination of private pay private insurance, individual patients, pharmacy, and government grants via ACH transactions and checks.  Receipts from those payors are deposited into the Debtor's collections accounts and then are transferred to the operating account.  The funds are then transferred to one of the Debtor's other accounts for disbursement to satisfy the Debtor's operational obligations, including payroll, vendor payments, and tax obligations.

17.    To assist the Court in understanding the Debtor's need to maintain its existing Cash Management System, the Debtor has attached as **Exhibit D** a diagram reflecting the flow of receipts and disbursements through the Cash Management System (the "Cash Flow Diagram").

6

C. <u>Bank Fees</u>

18.     In the ordinary course of business, the Debtor incurs and pays fees and expenses to the Banks in connection with maintaining and operating the Bank Accounts (the "<u>Bank Fees</u>"). These fees are typically paid by authorizing the Banks to deduct the applicable amounts from the relevant Bank Accounts in accordance with the governing bank agreements.  The Bank Fees average approximately $11,500 per month.  As of the Petition Date, the Debtor estimates that it owes approximately $25,000 in accrued Bank Fees, all of which are expected to become due and payable within thirty (30) days after the Petition Date.  To preserve uninterrupted access to the Bank Accounts and the services necessary to operate the Cash Management System, the Debtor seeks authority to pay any Bank Fees that are due and owing, including any prepetition Bank Fees, in the ordinary course of business on a postpetition basis and consistent with past practice.

D. <u>The Debtor's Business Forms</u>

19.     In the ordinary course of business, the Debtor uses checks, invoices, letterhead, purchase orders, and other forms and correspondence (collectively, the "<u>Business Forms</u>").  The Debtor's existing Business Forms do not include any designation referencing its status as a debtor in possession.  To avoid unnecessary expense and potential operational confusion among employees, patients, vendors, and other parties, the Debtor seeks authority to continue using its existing Business Forms, notwithstanding any applicable U.S. Trustee Guidelines.

## IV.     <u>RELIEF REQUESTED</u>

20.     By this Motion, the Debtor seeks entry of the Proposed Orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively: (i) authorizing the Debtor to (a) continue to use its Cash Management System, including maintaining its existing Bank Accounts, checks, and Business Forms, and (b) implement changes to its Cash Management System in the

7

ordinary course of business, including opening new bank accounts or closing existing Bank Accounts;[4] (ii) waiving certain bank account and related requirements set forth in the U.S. Trustee Guidelines, to the extent inconsistent with the Debtor's practices under its existing Cash Management System or other actions described herein; (iii) modifying the requirements of § 345(b); and (iv) granting related relief.

21.     The Debtor further requests that the Court authorize the financial institutions at which the Debtor maintains Bank Accounts to (i) continue to maintain, service, and administer the Debtor's Bank Accounts, and (ii) debit such accounts in the ordinary course of business on account of (a) wire transfers or checks drawn on the bank accounts or (b) undisputed service charges owed to such financial institutions for maintenance of the Debtor's Cash Management System, if any.

## V.     BASIS FOR RELIEF

### A.     The Bankruptcy Code Authorizes the Debtor's Continued Use of the Cash Management System and Bank Accounts.

22.     The Debtor's continued use of the Cash Management System is authorized by the Bankruptcy Code.  Section 363(c)(1) permits a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. § 363(c)(1).  That authority extends to a debtor in possession's continued use of its customary cash management system and supports the relief requested herein.  *See, e.g., In re Charter Co.*, 778 F.2d 617, 621 (11th Cir. 1985) (indicating that an order authorizing the debtor to employ a cash management system that was "usual and customary in the past" was "entirely consistent" with §363(c)(1)).  In addition, § 364(a) authorizes a debtor in possession to obtain unsecured credit and incur unsecured debt in the ordinary course of business without notice or a hearing.  *See* 11 U.S.C. § 364(a).

---

[4] Before opening any new Bank Account or closing any Bank Account, the Debtor shall provide notice of its intention to do so to the U.S. Trustee and any unsecured creditors' committee appointed in this Chapter 11 Case.

8

23. Section 105(a) vests this Court with authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Here, permitting the Debtor to continue using the Cash Management System, including maintaining its existing Bank Accounts, is necessary to the orderly administration of this Chapter 11 Case and to the Debtor's ability to preserve estate value for the benefit of all parties in interest. In a related context, courts have recognized that a centralized cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993).

24. The Debtor believes that the Cash Management System is an ordinary course and customary business practice that is critical to maintaining uninterrupted operations during this Chapter 11 Case and maximizing value for the benefit of all parties in interest. Requiring the Debtor to close existing Bank Accounts and establish new ones at this early and critical stage would be costly, impractical, and highly disruptive. The Debtor receives payments from numerous of payors, including governmental agencies, and any change in deposit instructions would require those payors to update their internal records and remittance processes – a process that can be lengthy and difficult to implement. During that transition, payments may continue to be directed to existing Bank Accounts, resulting in delays or interruptions in cash flow.

25. Any disruption to the Debtor's cash flow will materially interfere with the continuity of the Debtor's operations, impair its ability to satisfy ordinary course obligations, and ultimately affect patient care. In addition, the Debtor's accounting personnel are already responsible for managing day-to-day financial operations while also compiling the information

necessary to satisfy the Debtor's chapter 11 reporting obligations.  Requiring them to undertake the additional burden of closing Bank Accounts, opening new ones, communicating revised instructions to numerous parties, resolving implementation issues with depositors, and arranging for new checks and disbursement processes would divert valuable time and resources from more pressing operational and restructuring matters.

26.     Given the Debtor's history, structure, and payment relationships, establishing and maintaining a new cash management system would be expensive, inefficient, and unnecessarily burdensome.  Reestablishing and reconnecting deposits, billing systems, and disbursement processes to new accounts would serve little practical purpose and would risk significant operational disruption.  Maintaining the existing Cash Management System is therefore necessary to preserve the Debtor's business operations, protect estate value, and avoid severe and potentially irreparable harm to the Debtor, its estate, patients, creditors, and other parties in interest.

B.   This Court Should Waive Certain U.S. Trustee Guidelines to Permit the Debtor to Continue Using the Cash Management System.

27.     The Debtor further requests, pursuant to §§ 105(a) and 363, that the Court waive certain bank account and related requirements under the U.S. Trustee Guidelines to the extent such requirements are inconsistent with (a) the Debtor's existing practices under the Cash Management System or (b) any actions taken by the Debtor in accordance with an order granting this Motion or any other order entered in this Chapter 11 Case, including any order governing the use of cash collateral or debtor-in-possession financing.

28.     The U.S. Trustee Guidelines are intended to distinguish prepetition transactions and operations from postpetition transactions and operations and to guard against the inadvertent postpetition payment of prepetition claims. Among other things, the U.S. Trustee Guidelines

10

would require the Debtor to close the Bank Accounts, open new "debtor in possession" accounts, and establish segregated accounts for tax payments and cash collateral.

29. As discussed above, strict enforcement of those requirements would impose unnecessary cost and administrative burden at a critical stage of this Chapter 11 Case. In particular, requiring the Debtor to close existing Bank Accounts and open new ones would risk disrupting established payment streams from numerous sources, including governmental agencies, and could delay the Debtor's receipt and disbursement of funds needed to maintain ordinary course operations and patient care. It also would divert the Debtor's accounting personnel from their ongoing operational and chapter 11 reporting responsibilities.

30. The Debtor can, and will, coordinate with the Banks to preserve the appropriate distinction between the prepetition and postpetition periods.

31. Nor is it necessary to require separate debtor in possession accounts for tax payments, including payroll taxes, or for cash collateral. The Debtor can continue to satisfy its tax obligations through existing practices, and the U.S. Trustee can monitor account activity through the Debtor's periodic reporting. With respect to cash collateral, the Debtor has proposed safeguards in the cash collateral motion filed contemporaneously herewith to protect parties with liens on and security interests in the Debtor's cash.

32. Accordingly, the Debtor submits that cause exists to waive certain bank account and related U.S. Trustee Guidelines to the extent they are inconsistent with the Debtor's historical practices, and to permit the Debtor to continue using the existing Bank Accounts consistent with historical practice and any orders of this Court. To the extent the Court determines that the U.S. Trustee Guidelines are not satisfied or cannot be waived, the Debtor requests a 45-day waiver of such requirements, subject to the Debtor's right to seek a further extension.

11

C.   Modifying Certain Requirements of Section 345(b) Is Warranted.

33.     Section 345(a) authorizes a debtor in possession to make deposits or investments of estate money in a manner "as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a).  For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," § 345(b) provides that the estate must require from the entity with which the money is deposited or invested a bond in favor of the United States secured by the undertaking of an adequate corporate surety, "unless the court for cause orders otherwise." *Id*. § 345(b).  Alternatively, the debtor may require the entity to deposit governmental securities pursuant to 31 U.S.C. § 9303.[5]

34.     To the extent that the Cash Management System does not strictly comply with § 345, the Debtor seeks a waiver of the deposit and investment requirements set forth therein for a 45-day period commencing upon entry of the Interim Order, without prejudice to the Debtor's right to seek further modifications or extensions of time.

35.     Courts may waive compliance with § 345 for "cause."  In evaluating whether "cause" exists, courts have considered a number of factors, including:

- the sophistication of the debtor's business;
- the size of the debtor's business operations;
- the amount of the investments involved;
- the bank ratings (Moody's and Standard & Poor) of the financial institutions where the debtor in possession funds are held;
- the complexity of the case;
- the safeguards in place within the debtor's own business for ensuring the safety of the funds;
- the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions;
- the benefit to the debtor;

---

[5] Section 9303 of title 31 provides that when a person is required by law to give a surety bond, that person, in lieu of a surety bond, may instead provide an eligible obligation, designated by the Secretary of the Treasury, as an acceptable substitute for a surety bond.  31 U.S.C. § 9303.

12

- the harm, if any, to the debtor;
- the harm, if any, to the estate; and
- the reasonableness of the debtor's request for relief from § 345(b) requirements in light of the overall circumstances of the case.

*In re Serv. Merch. Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).  Here, these factors warrant a modification of the requirements of § 345 to the extent the Cash Management System does not already strictly comply with its requirements.

36.     In addition, Local Rule 2015-1(b) authorizes this Court to grant interim relief from § 345(a) and (b) until a hearing on the merits of the Debtor's request to waive the investment requirements. Specifically, the Local Rule provides:

> Except as provided in Local Rule 4001-3, the Court will not grant a waiver of the investment requirements of 11 U.S.C. § 345 without notice and a hearing, but may grant an interim waiver of the requirements pending a final hearing (i) if the debtor has more than 200 creditors or (ii) for cause shown.

Local Rule 2015-1(b). Here, interim relief is warranted because the Debtor has over 200 creditors and the Debtor operates a carefully managed Cash Management System.

37.     The Debtor's Bank Accounts comply with the requirements of § 345(b).  Each of the Debtor's Bank Accounts are insured by the FDIC or NCUA and are held at well-capitalized and highly-rated banks.  Moreover, Columbia Bank is designated as an authorized depository by the U.S. Trustee and conform to the U.S. Trustee Guidelines.  Although the Bank Accounts at California Federal Credit Union are not held at an authorized depository, the Debtor believes that any funds that are deposited in the California Federal Credit Union Bank Accounts are secure.

38.     Therefore, cause exists to waive the requirements of § 345(b) and allow the Debtor to continue to maintain the Bank Accounts in the ordinary course of business.  The Debtor requests that it be permitted to maintain their Bank Accounts in accordance with their existing practices,

13

for a 45-day period commencing upon entry of the Interim Order, without prejudice to the Debtors' right to seek further modifications or extensions of time.

D. Any U.S. Trustee Guidelines Requiring Immediate Replacement of Checks or Business Forms Should Be Waived.

39.     Pursuant to Local Rule 2015-1(a), the Debtor requests that the Court waive compliance with any U.S. Trustee Guidelines that would require the Debtor to immediately replace its checks or other Business Forms.

40.     Local Rule 2015-1(a) provides:

> Upon the debtor's motion, the Court may, without notice and hearing, permit the debtor to use its existing bank accounts and use its existing pre-printed checks without including its bankruptcy case number or a "Debtor-in-Possession" designation, but once the debtor's existing checks have been used, the debtor must include its bankruptcy case number and a "Debtor-in-Possession" designation on its checks.

Del. Bankr. L.R. 2015-1(a).

41.     To minimize expense to its estate, the Debtor seeks authority to continue using all checks substantially in the forms existing immediately before the Petition Date, without reference to the Debtor's status as a debtor in possession. If the Debtor generates new checks during the pendency of this Chapter 11 Case, other than from its existing check stock, those checks will include a legend identifying the Debtor as a "Debtor in Possession." The Debtor also seeks authority to continue using all other Business Forms, including, without limitation, letterhead, purchase orders, and invoices, without reference to the Debtor's status as a debtor in possession.

42.     Requiring the Debtor to revise its existing checks, correspondence, and other Business Forms would impose unnecessary expense and administrative burden on the Debtor's estate. Such changes also could disrupt ordinary business operations and create avoidable confusion among patients, vendors, and other parties that transact with the Debtor, without

14

providing a meaningful corresponding benefit. For these reasons, the Debtor requests authority to continue using its existing check stock, correspondence, and other Business Forms without being required to include the designation "Debtor in Possession" on those materials.

43. Notwithstanding the foregoing, once the Debtor's existing check stock has been exhausted, the Debtor will include the designation "Debtor in Possession" and the applicable bankruptcy case number on newly ordered checks. In addition, as soon as practicable after entry of the Interim Order, the Debtor will update any electronically generated checks to reflect its status as a debtor in possession.

44. For the reasons set forth herein, the Debtor submits that cause exists to waive any U.S. Trustee Guidelines requiring the immediate replacement of checks or other Business Forms.

## VI. COMPLIANCE WITH BANKRUPTCY RULE 6003 AND WAIVER OF BANKRUPTCY RULES 6004(a) AND (h)

45. The Debtor requests that the Court determine that the relief requested in this Motion complies with Bankruptcy Rule 6003 and that waiver of Bankruptcy Rules 6004(a) and (h).

46. Bankruptcy Rule 6003 provides:

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding the following: . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001. . . .

47. The Third Circuit Court of Appeals has interpreted language similar to that used in Bankruptcy Rule 6003 in the context of preliminary injunctions. In that context, irreparable harm has been interpreted as a continuing harm that cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation. *See, e.g., Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 Fed. Appx. 907, 910 (3d Cir. 2007) (*citing Glasco v. Hills*,

558 F.2d 179, 181 (3d Cir. 1977)). Further, the harm must be shown to be actual and imminent, not speculative or unsubstantiated. *See, e.g., Acierno v. New Castle County*, 40 F.3d 645, 653-55 (3d Cir. 1994).

48.     The Debtor believes that an immediate and orderly transition into chapter 11 is necessary to preserve the continuity of its operations and support the administration of this Chapter 11 Case.  As set forth above, the Debtor's ability to continue using the Cash Management System, and maintain its existing Bank Accounts and Business Forms is necessary to avoid immediate operational disruption and preserve estate value.   Accordingly, the Debtor submits that the requirements of Bankruptcy Rule 6003 have been satisfied.

49.     In addition, to the extent any aspect of the relief requested herein constitutes a use of property under § 363(b), the Debtor requests a waiver of the notice requirements under Bankruptcy Rule 6004(a), to the extent not otherwise satisfied, and the 14-day stay under Bankruptcy Rule 6004(h), to the extent applicable.  As described above, the relief requested herein is necessary to allow the Debtor to continue operating its business, administer its estate, and preserve value for the benefit of creditors and other parties in interest.  The Debtor therefore submits that waiver of any applicable notice requirements under Bankruptcy Rule 6004(a), and waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), is appropriate.

## VII.     RESERVATION OF RIGHTS

50.     Nothing in this Motion shall be deemed: (a) an implication or admission as to the amount of, basis for, or validity of any claim against the Debtor under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtor's or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion;

16

(e) a concession by the Debtor that any lien, whether contractual, common law, statutory, or otherwise, satisfied pursuant to this Motion is valid, and all rights to contest the extent, validity, or perfection of, or seek avoidance of, all such liens are expressly reserved; (f) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to § 365; (g) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtor's estate; (h) a waiver of the obligation of any party in interest to file a proof of claim; or (i) a waiver of any claims or causes of action that may exist against any entity under the Bankruptcy Code or any other applicable law. If the Court enters any order granting the relief sought herein, any payment made pursuant to such order is not intended, and shall not be construed, as an admission as to the validity of any particular claim or a waiver of the Debtor's rights to subsequently dispute such claim.

## VIII.   NOTICE

51.     The Debtor will provide notice of this Motion to the following parties or their respective counsel: (a) the U.S. Trustee; (b) the holders of the thirty (30) largest unsecured claims against the Debtor; (c) counsel to any secured parties; (d) the Banks; (e) the office of the attorney general for each of the states in which the Debtor operates; (f) the United States Attorney's Office for the District of Delaware; (g) the Internal Revenue Service; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.

52.     Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m). The Debtor submits that, under the circumstances, no other or further notice is required.

WHEREFORE, the Debtor respectfully requests that the Court enter the Proposed Orders granting the relief requested in this Motion and such other and further relief as may be just and proper.

[*Signature page to follow*]

Dated: July 6, 2026

/s/ Laura Davis Jones

**PACHULSKI STANG ZIEHL & JONES LLP**

Laura Davis Jones (DE Bar No. 2436)
919 North Market Street, 17th Floor
Wilmington, DE 19899
Telephone: (302) 652-4100
Email:  ljones@pszjlaw.com
**DENTONS US LLP**

Tania M. Moyron (*pro hac vice* forthcoming)
Samuel R. Maizel (*pro hac vice* forthcoming)
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone:  (213) 623-9300
Facsimile:  (213) 623-9924
Email:  tania.moyron@dentons.com
             samuel.maizel@dentons.com

John D. Beck (*pro hac vice* forthcoming)
Geoffrey Miller (*pro hac vice* forthcoming)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
Email:  john.beck@dentons.com
             geoffrey.miller@dentons.com

*Proposed Counsel to Debtor and Debtor in Possession*

19

**EXHIBIT A**

(Proposed Interim Order)

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>Pacifica of the Valley Corporation,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 26-11060 (TMH) |

**INTERIM ORDER (I) AUTHORIZING THE DEBTOR
TO (A) CONTINUE OPERATING ITS EXISTING CASH
MANAGEMENT SYSTEM, INCLUDING MAINTAINING EXISTING BANK
ACCOUNTS, CHECKS, AND BUSINESS FORMS, AND (B) CONTINUE ITS EXISTING
DEPOSIT PRACTICES, (II) WAIVING CERTAIN U.S. TRUSTEE GUIDELINES,
(III) SCHEDULING A FINAL HEARING, (IV) MODIFYING THE REQUIREMENTS
OF SECTION 345(b) OF THE BANKRUPTCY CODE; AND (V) GRANTING RELATED
RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtor and debtor-in-possession

(the "Debtor") for entry of an interim order (this "Interim Order") (a) authorizing, but not directing,

the Debtor to (i) continue to maintain and use its existing cash management system, including

maintaining existing bank accounts, checks, and business forms, (ii) continue its existing deposit

practices, and (iii) open and close bank accounts, (b) granting the Debtor a waiver of certain bank

account and related guidelines of the Office of the United States Trustee for the District of

Delaware (the "U.S. Trustee Guidelines"), to the extent inconsistent with the Debtor's practices

under its existing cash management system or other actions described herein, (c) modifying the

requirements of § 345(b); and (d) granting related relief, all as more fully set forth in the Motion;

and the Court having reviewed the Motion and the First Day Declaration; and the Court having

---

[1] The Debtor in this Chapter 11 Case, along with the last four digits of the Debtor's federal tax identification number, is: Pacifica of the Valley Corporation d/b/a Pacifica Hospital of the Valley (7312). The Debtor's mailing address is 9449 San Fernando Road, Sun Valley, CA 91352.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given, and that no other or further notice is necessary, except as set forth in the Motion with respect to entry of this Interim Order and notice of the Final Hearing (as defined below); and upon the record herein; and after due deliberation thereon; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors, and other parties in interest, it is hereby **ORDERED THAT**:

1.       The Motion is **GRANTED** on an interim basis as set forth herein.

2.       The Debtor is authorized and empowered to maintain and continue using its integrated cash management system described in the Motion (the "Cash Management System") and to collect, concentrate, and disburse cash in accordance with the Cash Management System; provided, however, that notwithstanding anything to the contrary in this Interim Order, any payment to be made hereunder, and any authorization contained herein, shall be subject to the terms of any interim or final orders, as applicable, approving the use of cash collateral and/or the Debtor's entry into any postpetition financing facilities or credit agreements, and any budgets in connection therewith governing such postpetition financing and/or use of cash collateral (each such order, a "Cash Collateral Order").

2

3. The Debtor and the Banks are authorized to implement changes to the Cash Management System in the ordinary course of business, including closing any existing bank accounts or opening any new bank accounts (collectively, the "Bank Accounts"), as they may deem necessary and appropriate in its discretion; provided that any such new account is (i) with a bank that is designated as an authorized depository pursuant to the U.S. Trustee Guidelines, and (ii) before opening any new Bank Account or closing any Bank Account, the Debtor shall provide notice of its intention to do so to the U.S. Trustee and any unsecured creditors' committee appointed in this Chapter 11 Case (a "Committee").

4. The Debtor is authorized, subject to the terms of any Cash Collateral Order, to (i) continue to use, with the same account numbers, all of the Bank Accounts in existence as of the Petition Date, including those Bank Accounts identified on **Exhibit C** to the Motion, and (ii) treat the Bank Accounts for all purposes as accounts of the Debtor as debtor in possession.

5. The Debtor is authorized to continue to use, in its present form, all correspondence and business forms, as well as checks and all other documents related to the Bank Accounts (collectively, the "Business Forms") in existence immediately before the Petition Date, without reference to the Debtor's status as debtor in possession, until existing stock is exhausted; provided that if the Debtor generates new Business Forms during the pendency of this Chapter 11 Case, such Business Forms shall include a legend identifying the Debtor as "Debtor in Possession," and, to the extent practicable, the Debtor shall print such legend on any Business Forms electronically generated during this case.

6. The Debtor is authorized, but not directed, to continue to utilize any third-party providers, if any, necessary for the administration of its Cash Management System.

3

7.     Except as otherwise provided in this Interim Order, all banks at which the Bank Accounts are maintained (collectively, the "Banks") are authorized and directed to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtor as debtor in possession, without interruption and in the ordinary course of business, in a manner consistent with such practices before the Petition Date, and to receive, process, honor, and pay any and all checks, drafts, wires, or other electronic transfer requests issued by the Debtor and drawn on the Bank Accounts after the Petition Date, whether issued before or after the Petition Date, to the extent the Debtor has sufficient funds standing to its credit with such Bank.

8.     To the extent any Banks have frozen any of the Bank Accounts, the Banks are authorized and directed to immediately unfreeze such Bank Accounts.

9.     In the event any Bank refuses to honor a check drawn or transfer made on an Account maintained by such Bank, provided there are sufficient good funds in the Account to complete the transfer, such Bank is authorized and directed to immediately turn over the deposits held in the applicable Account upon the Debtor's request.

10.     The Banks are authorized to charge, and the Debtor is authorized to pay and honor, or allow to be deducted from the applicable Bank Account, both prepetition and postpetition service fees and other fees, costs, charges, and expenses to which the Banks may be entitled under the terms of and in accordance with their contractual arrangements with the Debtor.

11.     Each of the Debtor's Banks is authorized to debit the Debtor's accounts in the ordinary course of business, without need for further order of this Court, for: (i) all checks, items, and other payment orders drawn on the Debtor's accounts that are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof before the Bank's receipt of notice of the filing of the Petition; (ii) all checks, automated clearing house entries, and other items deposited

4

or credited to one of the Debtor's accounts with such Bank before the filing of the Petition that have been dishonored, reversed, or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items before the filing of the Petition; and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the Cash Management System.

12.     Any of the Debtor's Banks may rely on the representations of the Debtor with respect to whether any check, item, or other payment order drawn or issued by the Debtor before the filing of the Petition should be honored pursuant to this or any other order of this Court, and such Bank shall not have any liability to any party for relying on such representations by the Debtor as provided for herein.

13.     Any existing deposit agreements between the Debtor and each of the Banks shall continue to govern the postpetition cash management relationship between the Debtor and the Banks, and all provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect, subject to the terms of any Cash Collateral Order.

14.     Subject to § 553, the Banks are prohibited from offsetting against, freezing, or otherwise impeding the Debtor's use of any funds deposited in the Bank Accounts on account of, or by reason of, any claim, as defined in § 101(5), of any such Bank against the Debtor that arose before the Petition Date, absent further order of the Court.

15.     The relief, rights, and responsibilities provided for in this Order shall be deemed to apply to any and all Bank Accounts maintained in the Debtor's name, including any new bank accounts, whether or not such Bank Accounts are identified on **Exhibit C** to the Motion, and any Banks at which new accounts are opened shall be subject to the rights and obligations of this Order.

5

16.     For the Banks at which the Debtor holds Bank Accounts that are parties to a Uniform Depository Agreement with the U.S. Trustee, the Debtor shall immediately (a) contact such Banks, (b) provide such Banks with the Debtor's employer identification number, (c) identify its Bank Accounts held at such Banks as being held by a debtor in possession in the Debtor's bankruptcy case, and (d) serve a copy of this Order on each such Bank. For any Bank at which the Debtor holds Bank Accounts that is not party to a Uniform Depository Agreement with the U.S. Trustee, the Debtor shall serve a copy of this Order on each such Bank, and the Debtor shall use its good-faith efforts to cause such Bank to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee within forty-five (45) days of the date of this Order.

17.     To the extent any of the Bank Accounts are not in compliance with § 345(b) or any of the U.S. Trustee Guidelines, the Debtor shall have until a date that is forty-five (45) days from the date hereof, without prejudice to seeking an additional extension, to either come into compliance with § 345(b) and the U.S. Trustee Guidelines or make such other arrangements as are agreed to by the U.S. Trustee or approved by the Court.

18.     Nothing in the Motion or this Interim Order, or the relief granted herein, including any actions taken or payments made by the Debtor, shall be construed as: (a) an implication or admission as to the amount of, basis for, or validity of any claim against the Debtor under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtor's or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion; (e) a concession by the Debtor that any lien, whether contractual, common law, statutory, or otherwise, satisfied pursuant to the Motion is valid, and all rights to contest the extent, validity, or perfection of, or seek avoidance of, all such liens are expressly reserved; (f) a request

6

US_ACTIVE\138036523

or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to § 365; (g) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtor's estate; (h) a waiver of the obligation of any party in interest to file a proof of claim; or (i) a waiver of any claims or causes of action that may exist against any entity under the Bankruptcy Code or any other applicable law. Nothing contained in this Interim Order shall be deemed to increase, reclassify, elevate to administrative expense status, or otherwise affect any claim to the extent it is not paid.

19.     Nothing contained in the Motion or this Interim Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of the Debtor that did not exist or was not perfected as of the Petition Date, or (b) alter or impair any lien, security interest, or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

20.     The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2026, at _____ prevailing Eastern Time. On or before 4:00 p.m. prevailing Eastern Time on _____, 2026, any objections or responses to entry of a final order on the Motion shall be filed with the Court and served on: (a) [main debtor entity and its address]; (b) proposed counsel to the Debtors, _____; (c) ____; and (d) the United States Trustee for the District of Delaware.  In the event no objections to entry of the final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

21.     To the extent applicable, the requirements set forth in Bankruptcy Rule 6003 have been satisfied.

22.     The requirements set forth in Bankruptcy Rule 6004(a) are hereby waived.

23.     Notwithstanding the applicability of Bankruptcy Rule 6004(h), if any, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

7

24. The Debtor is authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order.

25. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Interim Order.

8

**EXHIBIT B**

(Proposed Final Order)

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  | |
|---|---|
| In re:<br><br>Pacifica of the Valley Corporation,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 26-11060 (TMH) |

**FINAL ORDER (I) AUTHORIZING THE DEBTOR TO (A) CONTINUE
OPERATING ITS EXISTING CASH MANAGEMENT SYSTEM,
INCLUDING MAINTAINING EXISTING BANK ACCOUNTS, CHECKS, AND
BUSINESS FORMS, AND (B) CONTINUE ITS EXISTING DEPOSIT PRACTICES,
(II) WAIVING CERTAIN U.S. TRUSTEE GUIDELINES, (III) MODIFYING THE
REQUIREMENTS OF SECTION 345(b) OF THE BANKRUPTCY CODE;
AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtor and debtor-in-possession

(the "**Debtor**") for entry of a final order (this "Final Order") (a) authorizing, but not directing, the

Debtor to (i) continue to maintain and use its existing cash management system, including

maintaining existing bank accounts, checks, and business forms, (ii) continue its existing deposit

practices, and (iii) open and close bank accounts, (b) granting the Debtor a waiver of certain bank

account and related guidelines of the Office of the United States Trustee for the District of

Delaware (the "U.S. Trustee Guidelines"), to the extent inconsistent with the Debtor's practices

under its existing cash management system or other actions described herein, (c) modifying the

requirements of § 345(b), and (d) granting related relief, all as more fully set forth in the Motion;

and the Court having reviewed the Motion and the First Day Declaration; and the Court having

jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C.

---

[1] The Debtor in this Chapter 11 Case, along with the last four digits of the Debtor's federal tax identification number,
is: Pacifica of the Valley Corporation d/b/a Pacifica Hospital of the Valley (7312).  The Debtor's mailing address is
9449 San Fernando Road, Sun Valley, CA 91352.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

US_ACTIVE\138036554

§§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given, and that no other or further notice is necessary, except as set forth in the Motion with respect to entry of this Final Order and notice of the Final Hearing (as defined below); and upon the record herein; and after due deliberation thereon; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors, and other parties in interest, it is hereby

**ORDERED THAT**:

1.       The Motion is **GRANTED** on a final basis as set forth herein.

2.       The Debtor is authorized and empowered to maintain and continue using its integrated cash management system described in the Motion (the "Cash Management System") and to collect, concentrate, and disburse cash in accordance with the Cash Management System; provided, however, that notwithstanding anything to the contrary in this Final Order, any payment to be made hereunder, and any authorization contained herein, shall be subject to the terms of any interim or final orders, as applicable, approving the use of cash collateral and/or the Debtor's entry into any postpetition financing facilities or credit agreements, and any budgets in connection therewith governing such postpetition financing and/or use of cash collateral (each such order, a "Cash Collateral Order").

3.       The Debtor and the Banks are authorized to implement changes to the Cash Management System in the ordinary course of business, including closing any existing bank

2

accounts or opening any new bank accounts (collectively, the "Bank Accounts"), as they may deem necessary and appropriate in its discretion; provided that any such new account is (i) with a bank that is designated as an authorized depository pursuant to the U.S. Trustee Guidelines, and (ii) before opening any new Bank Account or closing any Bank Account, the Debtor shall provide notice of its intention to do so to the U.S. Trustee and any unsecured creditors' committee appointed in this Chapter 11 Case (a "Committee").

4.      The Debtor is authorized, subject to the terms of any Cash Collateral Order, to (i) continue to use, with the same account numbers, all of the Bank Accounts in existence as of the Petition Date, including those Bank Accounts identified on **Exhibit C** to the Motion, and (ii) treat the Bank Accounts for all purposes as accounts of the Debtor as debtor in possession.

5.      The Debtor is authorized to continue to use, in its present form, all correspondence and business forms, as well as checks and all other documents related to the Bank Accounts (collectively, the "Business Forms") in existence immediately before the Petition Date, without reference to the Debtor's status as debtor in possession, until existing stock is exhausted; provided that if the Debtor generates new Business Forms during the pendency of this Chapter 11 Case, such Business Forms shall include a legend identifying the Debtor as "Debtor in Possession," and, to the extent practicable, the Debtor shall print such legend on any Business Forms electronically generated during this case.

6.      The Debtor is authorized, but not directed, to continue to utilize any third-party providers, if any, necessary for the administration of its Cash Management System.

7.      Except as otherwise provided in this Final Order, all banks at which the Bank Accounts are maintained (collectively, the "Banks") are authorized and directed to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtor as debtor in

3

possession, without interruption and in the ordinary course of business, in a manner consistent with such practices before the Petition Date, and to receive, process, honor, and pay any and all checks, drafts, wires, or other electronic transfer requests issued by the Debtor and drawn on the Bank Accounts after the Petition Date, whether issued before or after the Petition Date, to the extent the Debtor has sufficient funds standing to its credit with such Bank.

8. To the extent any Banks have frozen any of the Bank Accounts, the Banks are authorized and directed to immediately unfreeze such Bank Accounts.

9. In the event any Bank refuses to honor a check drawn or transfer made on an Account maintained by such Bank, provided there are sufficient good funds in the Account to complete the transfer, such Bank is authorized and directed to immediately turn over the deposits held in the applicable Account upon the Debtor's request.

10. The Banks are authorized to charge, and the Debtor is authorized to pay and honor, or allow to be deducted from the applicable Bank Account, both prepetition and postpetition service fees and other fees, costs, charges, and expenses to which the Banks may be entitled under the terms of and in accordance with their contractual arrangements with the Debtor.

11. Each of the Debtor's Banks is authorized to debit the Debtor's accounts in the ordinary course of business, without need for further order of this Court, for: (i) all checks, items, and other payment orders drawn on the Debtor's accounts that are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof before the Bank's receipt of notice of the filing of the Petition; (ii) all checks, automated clearing house entries, and other items deposited or credited to one of the Debtor's accounts with such Bank before the filing of the Petition that have been dishonored, reversed, or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items before the

4

filing of the Petition; and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the Cash Management System.

12.     Any of the Debtor's Banks may rely on the representations of the Debtor with respect to whether any check, item, or other payment order drawn or issued by the Debtor before the filing of the Petition should be honored pursuant to this or any other order of this Court, and such Bank shall not have any liability to any party for relying on such representations by the Debtor as provided for herein.

13.     Any existing deposit agreements between the Debtor and each of the Banks shall continue to govern the postpetition cash management relationship between the Debtor and the Banks, and all provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect, subject to the terms of any Cash Collateral Order.

14.     Subject to § 553, the Banks are prohibited from offsetting against, freezing, or otherwise impeding the Debtor's use of any funds deposited in the Bank Accounts on account of, or by reason of, any claim, as defined in § 101(5), of any such Bank against the Debtor that arose before the Petition Date, absent further order of the Court.

15.     The relief, rights, and responsibilities provided for in this Order shall be deemed to apply to any and all Bank Accounts maintained in the Debtor's name, including any new bank accounts, whether or not such Bank Accounts are identified on **Exhibit C** to the Motion, and any Banks at which new accounts are opened shall be subject to the rights and obligations of this Order.

16.     For the Banks at which the Debtor holds Bank Accounts that are parties to a Uniform Depository Agreement with the U.S. Trustee, the Debtor shall immediately (a) contact such Banks, (b) provide such Banks with the Debtor's employer identification number, (c) identify

5

its Bank Accounts held at such Banks as being held by a debtor in possession in the Debtor's bankruptcy case, and (d) serve a copy of this Order on each such Bank. For any Bank at which the Debtor holds Bank Accounts that is not party to a Uniform Depository Agreement with the U.S. Trustee, the Debtor shall serve a copy of this Order on each such Bank, and the Debtor shall use its good-faith efforts to cause such Bank to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee within forty-five (45) days of the date of this Order.

17.	To the extent any of the Bank Accounts are not in compliance with § 345(b) or any of the U.S. Trustee Guidelines, the Debtor shall have until a date that is forty-five (45) days from the date hereof, without prejudice to seeking an additional extension, to either come into compliance with § 345(b) and the U.S. Trustee Guidelines or make such other arrangements as are agreed to by the U.S. Trustee or approved by the Court.

18.	Nothing in the Motion or this Final Order, or the relief granted herein, including any actions taken or payments made by the Debtor, shall be construed as: (a) an implication or admission as to the amount of, basis for, or validity of any claim against the Debtor under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtor's or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion; (e) a concession by the Debtor that any lien, whether contractual, common law, statutory, or otherwise, satisfied pursuant to the Motion is valid, and all rights to contest the extent, validity, or perfection of, or seek avoidance of, all such liens are expressly reserved; (f) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to § 365; (g) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtor's estate; (h) a waiver of the obligation

6

US_ACTIVE\138036554

of any party in interest to file a proof of claim; or (i) a waiver of any claims or causes of action that may exist against any entity under the Bankruptcy Code or any other applicable law. Nothing contained in this Final Order shall be deemed to increase, reclassify, elevate to administrative expense status, or otherwise affect any claim to the extent it is not paid.

19.     Nothing contained in the Motion or this Final Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of the Debtor that did not exist or was not perfected as of the Petition Date, or (b) alter or impair any lien, security interest, or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

20.     Notwithstanding the applicability of Bankruptcy Rule 6004(h), if any, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

21.     The Debtor is authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order.

22.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Final Order.

7

**EXHIBIT C**

(Bank Account Chart)

**Bank Account Chart**

| Account Holder | Account Number (Last 4 Digits) | Account Type | Bank | Draft Arrangement | Balance as of July 4, 2026 | Purpose |
|---|---|---|---|---|---|---|
| Pacifica of the Valley Corporation | 2426 | Checking | California Federal Credit Union | None | $1,222.48 | Operating Account |
| Pacifica of the Valley Corporation | 2499 | Checking | California Federal Credit Union | None | $0.00 | Government Collections Account |
| Pacifica of the Valley Corporation | 2501 | Checking | California Federal Credit Union | None | $2,340.49 | Non-Government Collections Account |
| Pacifica of the Valley Corporation | 2435 | Checking | California Federal Credit Union | None | $7,704.00 | Accounts Payable |
| Pacifica of the Valley Corporation | 2444 | Checking | California Federal Credit Union | None | $227,935.49 | Payroll |
| Pacifica of the Valley Corporation | 2453 | Checking | California Federal Credit Union | None | $1,026.34 | Payroll Tax & Benefits |
| Pacifica of the Valley Corporation | 2480 | Checking | California Federal Credit Union | None | $559.05 | ERISA |
| Pacifica of the Valley Corporation | 2462 | Money Market | California Federal Credit Union | None | $10.00 | Business Money Market |
| Pacifica of the Valley Corporation | 2417 | Checking | California Federal Credit Union | None | $0.01 | Not in use |
| Pacifica of the Valley Corporation | 2510 | Checking | California Federal Credit Union | None | $0.00 | Collections |
| Pacifica of the Valley Corporation and Serra Clinic | 3913 | Restricted | Columbia Bank | None | $0.00 | Account for Capitated Plan |
| Pacifica of the Valley Corporation and Serra Clinic | 5184 | Restricted | Columbia Bank | None | $244,200.92 | Account for Capitated Plan |
| Pacifica of the Valley Corporation and Serra Clinic | 8518 | Restricted, Savings | Columbia Bank | None | $671,903.33 | Money Market Account for Capitated Plan |

US_ACTIVE\138036584

**EXHIBIT D**

(Cash Flow Diagram)

