**Exhibit 1**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Pacifica of the Valley Corporation,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 26-11060 (TMH) |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO (A) USE CASH COLLATERAL AND (B) GRANT LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS; (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES; (III) <u>SCHEDULING A FINAL HEARING; AND (IV) GRANTING RELATED RELIEF</u>**

Pacifica of the Valley Corporation dba Pacifica Hospital of the Valley ("<u>Pacifica</u>" or the "<u>Debtor</u>"), as debtor and debtor-in-possession under chapter 11 of title 11 of the United States Code, §§ 101 *et seq*. (the "<u>Bankruptcy Code</u>"),[2] in this chapter 11 case (the "<u>Chapter 11 Case</u>"), by and through its undersigned counsel, hereby moves (the "<u>Motion</u>") this Court for entry of an interim order (substantially in the form attached hereto as **<u>Exhibit A</u>**, the "<u>Interim Order</u>") and a final order (the "<u>Final Order</u>" and together with the Interim Order, the "<u>Orders</u>"): (i) authorizing the Debtor to (a) use Cash Collateral and (b) grant liens and superpriority administrative expense claims; (ii) granting adequate protection to the Prepetition Secured Parties (as defined below); (iii) scheduling a final hearing (the "<u>Final Hearing</u>"); and (iv) granting related relief.

In support of this Motion, the Debtor submits the (i) *Declaration of Precious Mayes in Support of Chapter 11 Petition and First Day Pleadings* (the "<u>First Day Declaration</u>") and (ii)

---

[1] The Debtor in this Chapter 11 Case, along with the last four digits of the Debtor's federal tax identification number, is 7312. The Debtor's mailing address is 9449 San Fernando Road, Sun Valley, CA 91352.

[2] All references herein to 'section' or '§' are to the Bankruptcy Code.


4912-2374-3419.1 68804.00001

*Declaration of Peter Chadwick In Support of The Debtor's Cash Collateral Motion* (the "Chadwick Declaration"), each filed contemporaneously herewith and incorporated herein by reference. In further support of the Motion, the Debtor respectfully states as follows:

**PRELIMINARY STATEMENT**

1. The Debtor operates a 231-bed safety net hospital (the "Hospital") in Los Angeles County and serves thirteen zip codes, including subacute patient referrals from hospitals more than 400 miles away. The Debtor offers complete service lines, including, 24/7 Emergency, acute care, ICU, locked Behavioral Health, d/p Subacute Skilled Nursing Facility, Outpatient Surgery and Rehab, In/outpatient ancillary services. The primary patient population at the Hospital is underserved with 84% of the patients living in poverty.

2. This Motion seeks entry of interim and final orders authorizing the Debtor's use of cash collateral. Without immediate authority to use cash collateral, the Debtor will suffer irreparable harm and be unable to service ongoing patient needs, meet payroll, purchase medications and medical supplies, pay critical vendors, or satisfy ongoing operating expenses. The consequences would be immediate and severe: disruption of healthcare services to a vulnerable patient population, loss of hundreds of jobs, destruction of the Hospital's going-concern value, and substantial harm to all creditors and other parties in interest.

3. By way of background, and as relevant to this Motion, the Debtor's sole secured lender is not a traditional lending institution, but rather an entity formed to acquire the Debtor's loan at a steep discount—paying only approximately $1.95 million for debt with an outstanding principal balance of $35 million plus interest—as part of a strategy to effectuate a hostile takeover of the Hospital.

4. Specifically, Dr. Ehab Yacoub created Axios Capital Solutions, LLC ("Axios") to purchase the Debtor's loan from the original lenders, First Western Trust Bank ("First Western") and the Federal Reserve Bank of Boston (the "Federal Reserve"), after years of litigation with the Debtor's owner. The loan at issue is a Main Street Loan ("MSL") governed by the CARES Act, and the Federal Reserve has stringent requirements as to who can acquire the loan. Dr. Yacoub would have been statutorily ineligible to purchase the MSL had he properly disclosed, among other things, his affiliation with the Debtor as an investor, and that Axios's sole member, Brain Health, is also an entity likewise affiliated with the Debtor, and that Dr. Yacoub is the sole shareholder of Brain Health.

5. Indeed, a Colorado state court recently denied Axios's motion for summary judgment after concluding that genuine issues of material fact exist regarding whether Axios validly acquired the loan. As part of Axios' aggressive enforcement strategy, it sought to replace management through an invalid exercise of a power of attorney to prevent the Debtor from filing bankruptcy and seeking the appointment of a state court receiver.

6. Axios also has not perfected any interest it may have through "control" of the Debtor's deposit accounts and therefore is not properly perfected in at least a portion of the Debtor's cash. Axios has not consented to the Debtor's continued use of Cash Collateral despite the obvious and immediate consequences to the Hospital and the patients it serves.

7. The Debtor's Landlord Entities (defined below) may also assert security interests in all personal property of the Debtor, including cash collateral. In addition, the Local Initiative Health Authority for Los Angeles County ("L.A. Care" and, together with the Landlord Entities and Axios, the "Prepetition Secured Parties") asserts a contingent security interest in certain proceeds distributed under the California Quality Assurance Fee program.

8. The relief requested in this Motion is narrowly tailored in scope and duration to preserve the status quo. The Debtor proposes interim Cash Collateral use through August 1, 2026 pursuant to a 4-week budget designed to address the Debtor's critical expenditures during the Interim Period, such as payroll, vendors and patient costs. The Debtor proposes to provide an adequate protection package for each Prepetition Secured Party, including replacement liens, superpriority claims, budget controls, reporting obligations, and preservation of going-concern value. The Debtor has also appointed a Chief Restructuring Officer, Peter Chadwick of BRG (the "CRO"), who shall be required to personally authorize all expenditures of funds by the Debtor and withdrawals from the Debtor's bank accounts, and no payment shall be made to any director or owner of the Debtor. The proposed relief protects any cognizable interests in the Debtor's cash while ensuring that the Hospital continues to provide critically important patient care as a safety net hospital, employees maintain their jobs, and the value of the Debtor as a going concern is preserved for all stakeholders and creditors.

9. Under these circumstances, authorizing the Debtor's immediate use of Cash Collateral is not merely appropriate—it is essential. Denying the requested relief would not preserve value for creditors; rather, it would precipitate the abrupt cessation of operations at a critical safety-net hospital, the destruction of substantial going-concern value, and irreparable harm to patients, employees, creditors, and the surrounding community.

## JURISDICTION AND VENUE

10. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and

the Court may enter a final order consistent with Article III of the United States Constitution. Venue of the Chapter 11 Case and related proceedings is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtor consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

11. The statutory bases for the relief requested herein are §§ 105(a), 361, 362, 363, 503, 506, 507, and 552, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and Local Rules 2002-1, 4001-1, 4001-2, and 9013-1.

**THE DEBTOR HAS AN IMMEDIATE NEED FOR CASH COLLATERAL USE**

12. As set forth in the First Day Declaration, the Debtor's immediate access to Cash Collateral is necessary to avoid immediate and irreparable harm and critical to its continued operations, funding the administration of this Chapter 11 Case, and preserving and maximizing the value of the Debtor's assets for the benefit of all stakeholders. As set forth above, the Debtor operates the Hospital in Los Angeles County and serves thirteen zip codes, including subacute patient referrals from hospitals more than 400 miles away. The Debtor offers complete service lines, including 24/7 Emergency, acute care, ICU locked Behavioral Health, d/p Subacute Skilled Nursing Facility, Outpatient Surgery and Rehab, In/outpatient ancillary services. The primary patient population at the Hospital is underserved with 84% of its patients living in poverty. Absent immediate access to Cash Collateral, the Debtor would be forced to curtail or

cease operations, to the severe detriment of its patients, employees, and other constituents. Such a disruption would, in turn, have catastrophic consequences on a vulnerable patient population and result in an immediate and substantial deterioration in the value of the Debtor's assets and likely force a disorderly liquidation.

## BACKGROUND

### A. General Background

13. On the Petition Date, the Debtor commenced a voluntary case for relief under chapter 11 of the Bankruptcy Code. The Debtor is authorized to continue operating its business and managing its property as a debtor in possession pursuant to §§ 1107(a) and 1108.

14. No trustee, examiner, or statutory committee has been appointed in this Chapter 11 Case.

15. Additional information regarding the Debtor, including its business and the events leading to the commencement of this Chapter 11 Case, is set forth in the First Day Declaration.

### B. The Debtor's Prepetition Indebtedness

16. On December 10, 2020, the Debtor entered into a Main Street Loan ("MSL") with First Western and the Federal Reserve because it needed a cash infusion to meet burgeoning pandemic-related costs and First Western agreed to provide the Debtor with a senior secured loan in the principal amount of $35,000,000 and, in connection with the MSL, the Debtor entered into a Pledge and Security Agreement.[3] On May 13, 2025, First Western filed

[3] For purposes of this Motion and any Interim or Final Order entered hereon only, the term "Prepetition Collateral" means all property of the Debtor's estate in which any Prepetition Secured Party asserts a lien, security interest, or other interest arising under prepetition agreements or applicable law, solely to the extent such interest is ultimately determined to be valid, perfected, enforceable, and unavoidable. The term "Cash Collateral" means all cash, cash equivalents, deposit accounts, securities accounts, investment property, accounts receivable, payment intangibles, proceeds thereof, and other property that may constitute "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code in which any Prepetition Secured

a lawsuit against the Debtor in Colorado state court (currently captioned *Axios Capital Solutions v. Pacifica of the Valley Corporation*, Case No. 2025CV31732 (Dist. Ct. County of Denver, Co., Div. 209) (the "Colorado Action")) for breach of contract for the Debtor's failure to timely meet its repayment obligations.

17. As mentioned above and described more fully in the First Day Declaration, in November 2025, Axios Capital Solutions, LLC ("Axios"), claimed to have purchased the Debtor's MSL, and stepped into First Western's shoes as the plaintiff in the Colorado Action. On June 26, 2026, the Colorado court denied Axios's motion for summary judgment, concluding that genuine issues of material fact exist regarding whether Axios validly acquired the MSL. A true and correct copy of the Colorado court's ruling is attached as Exhibit B to the First Day Declaration.

**C. Other Asserted Interests In Cash Collateral**

18. Since 2013, Pacifica has operated its Hospital pursuant to a long-term Master Lease for the real property located at 9449 San Fernando Road, Sun Valley, California. The lessors under the Master Lease are Reliq Pacifica LLC, Beverly Gemini Investments, LLC, Taking the 5th, LLC, and Fifth/Arizona Investors, LLC (collectively, the "Landlord Entities"). The Hospital is the Debtor's principal operating facility and is indispensable to its ability to provide acute care services to the surrounding community. During the COVID-19 pandemic, Pacifica experienced significant financial distress and became unable to timely satisfy certain obligations owing to the Landlord Entities under the Master Lease. As of the Petition Date, the

---

Party asserts an interest, whether or not such asserted interest is ultimately determined to be valid, perfected, enforceable, or unavoidable. References in this Motion to Prepetition Collateral and Cash Collateral are solely for purposes of seeking interim relief under section 363 of the Bankruptcy Code and shall not constitute an admission, stipulation, or determination regarding the existence, validity, extent, priority, perfection, enforceability, or avoidability of any asserted lien or security interest, all of which rights are expressly reserved by the Debtor and all other parties in interest.

Debtor estimates that it owes the Landlord Entities approximately $9.5 million. The Landlord Entities filed a UCC-1 financing statements in November of 2022 seeking to perfect a lien in all personal property of the Debtor.

19. Finally, the Local Initiative Health Authority for Los Angeles County, which operates as L.A. Care Health Plan ("L.A. Care"), a publicly operated health plan, filed UCC-1 statements in January 2026 and May 2026 asserting security interests in future proceeds of certain HQAF funds. These security interests arise from agreements entered into between the Debtor and L.A. Care whereby L.A. Care purchased the Debtor's right to future receipt of HQAF payments. The applicable purchase agreements provide that if the sale of the Debtor's right to receive future HQAF payments is subsequently held not to be a true sale, the Debtor also granted L.A. Care a "Back-Up Security Interest" (as defined in the purchase agreements) in the Debtor's HQAF receivables. As of the Petition Date, the Debtor estimates that it owes L.A. Care approximately $7.5 million on account of these agreements.

## D. Summary of Terms of Cash Collateral Use

20. Pursuant to Bankruptcy Rule 4001(b) and Local Rule 4001-2(a)(i), the below chart contains a summary of the material terms of the proposed use of Cash Collateral.[4]

| SUMMARY OF MATERIAL TERMS | | |
|---|---|---|
| **Parties with an Asserted Interest in Cash Collateral** Bankruptcy Rule 4001(b)(1)(B); Local Rule 4001-2(a)(i) | • Axios Capital Solutions, LLC<br>• The Landlord Entities<br>o Reliq Pacifica LLC<br>o Beverly Gemini Investments LLC<br>o Taking the 5th LLC<br>o Fifth/Arizona Investors LLC<br>• Local Initiative Health Authority for Los Angeles County (as to HQAF proceeds only) | |

[4] The summaries contained in this Motion are qualified in their entirety by the provisions of the Interim Order. To the extent anything in this Motion is inconsistent with the Interim Order, the terms of the Interim Order shall control.

| SUMMARY OF MATERIAL TERMS | | |
|---|---|---|
| **Amount of Cash Collateral and Purposes for Use of Cash Collateral**<br>Bankruptcy Rule 4001(b)(1)(B);<br>Local Rule 4001-2(a)(i)(A) | To prevent immediate and irreparable harm to the Debtor's estate, the Debtor is authorized, subject to the terms and conditions of the Orders, as applicable, (including the Carve Out), to use all Cash Collateral in accordance with the terms of the Orders, as applicable, and the Budget (subject to permitted variances); provided that (a) the Prepetition Secured Parties are granted the Adequate Protection and (b) except on the terms and conditions of the Orders, the Debtor shall be enjoined and prohibited from at any times using the Cash Collateral absent further order of the Court.<br><br>As of the Petition Date, the Debtor has approximately $240,797.86 of cash on hand. *See* Chadwick Declaration ¶ 10. | Interim Order ¶ 2. |
| **Adequate Protection and Professional Fees and Expenses**<br>**Bankruptcy Rule 4001(b)(1)(B);**<br>Local Rules 4001-2(a)(i)(B), (G), and (K) | The Debtor proposes to provide the Prepetition Secured Parties with the following forms of adequate protection (the "<u>Adequate Protection Package</u>"):<br><br>(a) **Replacement Liens**. Replacement liens under sections 361 and 363 on all postpetition property to the same extent and priority as any valid, perfected, unavoidable prepetition liens, solely to the extent of any diminution in value resulting from the Debtor's use of their Collateral.<br><br>(b) **Superpriority Administrative Claim**. A superpriority administrative expense claim under section 507(b) of the Bankruptcy Code, subordinate only to the Carve Out, solely to the extent that (i) the applicable Prepetition Secured Parity is determined to hold valid, perfected, and enforceable prepetition liens and claims, (ii) the Debtors' use of Cash Collateral results in a diminution in the value of such Prepetition Secured Party's interest in the Prepetition Collateral, and (iii) the other forms of adequate protection provided to such Prepetition Secured Party are determined to be insufficient to protect against any such diminution in value.<br><br>(c) **Information Rights**. The Debtor shall comply with the access and information requirements set | Interim Order ¶ 6. |

**SUMMARY OF MATERIAL TERMS**

forth in ¶7 of the Interim Order, including reporting to the Prepetition Secured Parties and the Special Monitor.

(d) **Maintenance of Collateral**. The Debtor shall continue to maintain and insure the Prepetition Collateral in the amounts and for the risks, and by the entities, as required under the MSL.

(e) **Budget**. The Debtor shall use Cash Collateral solely in accordance with a Court-approved interim 4-week budget (the "Budget"), subject to permitted variances on operational disbursements of up to twenty percent (20%) on an aggregate basis, tested on a cumulative basis.

(f) **CRO Authority Over Cash Disbursements; No Director Payments**. In addition to complying with the Budget and all other requirements of the Interim Order, (a) all expenditures of funds by the Debtor and withdrawals from the Debtor's bank accounts shall require personal authorization by the CRO and (b) no payment shall be made to any director or owner of the Debtor.

(g) **Preservation of Going-Concern Value**. The Debtor further submits that the continued operation of the Hospital as a going concern preserves and enhances the value of the asserted collateral of the Prepetition Secured Parties. By authorizing the Debtor's use of Cash Collateral, the Court will enable the Debtor to continue providing essential healthcare services, maintain its workforce, preserve relationships with vendors and payors, and avoid a precipitous liquidation of the Hospital. Conversely, absent access to Cash Collateral, the Debtor would be forced to cease operations, resulting in an immediate and substantial destruction of going-concern value and a corresponding diminution in the value of any collateral securing the asserted claims of the Prepetition Secured Parties. Accordingly, the proposed use of Cash Collateral, together with the Debtor's proposed Adequate Protection Package,

| SUMMARY OF MATERIAL TERMS | | |
|---|---|---|
| | protects the Prepetition Secured Parties against any diminution in the value of their asserted interests and is the only viable path forward to providing a return to such Prepetition Secured Parties. | |
| **Limitation of the Court's Power and/or Discretion**<br>Local Rule 4001-2(a)(i)(C) | The Interim Order does not contain any provisions that specifically limit the Court's authority to enter future orders in the Debtor's Chapter 11 Case. | N/A |
| **Budget**<br>Bankruptcy Rule 4001(b)(1)(B); Local Rule 4001-2(a)(iii) | The use of Cash Collateral is subject to a budget to be approved by the Court. The Debtor agrees to comply with the Budget (subject to Permitted Variances).<br><br>A failure by the Debtors to satisfy any Variance Test (subject to Permitted Variances) constitutes a Cash Collateral Termination Event. The Budget is attached to the Interim Order as Schedule 1. | Interim Order ¶ 3. |
| **Carve-Out**<br>**Local Rule 4001-2(a)(i)(F)** | The Interim Order provides a "Carve Out" of certain statutory fees and allowed professional fees of the Debtors and any official committee appointed in these chapter 11 cases pursuant to section 1103 of the Bankruptcy Code and a Post-Carve Out Trigger Notice Cap, all as detailed in the Interim Order."" | Interim Order ¶ 8(b). |
| **Postpetition Liens on Unencumbered Assets**<br>Local Rule 4001-2(a)(i)(G) | None | N/A |

| SUMMARY OF MATERIAL TERMS | | |
|---|---|---|
| **Milestones Bankruptcy Rule 4001(c)(1)(B)** Local Rule 4001-2(a)(i)(H) and 4001-2(a)(ii) | None | N/A |
| **Payment of Adequate Protection Fees and Expenses Without Review** Local Rule 4001-2(a)(i)(K) | None. | N/A |
| **Limitation on Estate Funds Related to the Challenge Period** Local Rule 4001-2(a)(i)(L) | None | N/A |
| **Termination Date/Remedies** Bankruptcy Rule 4001(b)(1)(B); Local Rules 4001-2(a)(i)(M), (S) | Upon the occurrence of a Cash Collateral Termination Event, the affected Prepetition Secured Party may seek, on five days' notice, an order terminating the Debtor's use of Cash Collateral; provided that, until entry of such order, (x) the Debtor may cure any Cash Collateral Termination Event and (y) the Debtor may continue to use Cash Collateral to make payments in respect of expenses critical to preserve the value of the Debtor's business and the Collateral in accordance with the Budget; and provided, further, that the Debtor may continue to use Cash Collateral after termination of its use of Cash Collateral solely to the extent necessary to fund the Carve Out subject to ¶ 8(d) of the Interim Order.<br><br>Nothing herein limits the Court's ability to hear any matters it deems appropriate at such hearing. | Interim Order ¶¶ 9,10. |
| **Termination Events** Bankruptcy Rule 4001(b)(1)(B); | The events set forth in ¶ 9 of the Interim Order are collectively referred to as the "Cash Collateral Termination Events" and consist of: | Interim Order ¶ 9. |

| SUMMARY OF MATERIAL TERMS | | |
|---|---|---|
| Local Rule 4001-2(a)(i)(M) | (a) the Expiration Date;<br><br>(b) the effective date of a chapter 11 plan of the Debtor;<br><br>(c) the violation of any term of this Interim Order by the Debtor (other than as de-scribed in clause (h) below) that is not cured within five (5) business days of receipt by the Debtor, counsel for any statutory committees ap-pointed in this case, and the U.S. Trustee of notice of such default, violation, or breach (which may be provided to the Debtor, counsel for the Official Committee, and the U.S. Trustee by email);<br><br>(d) the filing by the Debtor of a motion to dismiss the Chapter 11 Case, or the entry of any order dismissing this Chapter 11 Case (other than following the effective date of a chapter 11 plan);<br><br>(e) the filing by the Debtor of a motion to convert this Chapter 11 Case to a case un-der chapter 7 or the entry of order converting this Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code;<br><br>(f) the entry of an order appointing a chapter 11 trustee or an examiner with enlarged powers relating to the operation of the business of any Debtor (powers beyond those set forth in sections 1106(a)(3) and (a)(4) of the Bankruptcy Code);<br><br>(g) the failure by the Debtor to deliver to any of the Notice Parties any of the documents or other information reasonably required to be delivered to such applicable party pursuant to this Interim Order within five (5) business days following a request therefor from any of the Notice Parties pursuant to the terms of this Interim Order; or any such documents or other information shall contain a material misrepresentation; provided that, such misrepresentation remains uncured for at least five (5) business days following written notice thereof from a Notice Party; or | |

| SUMMARY OF MATERIAL TERMS | | |
|---|---|---|
| | (h) the Debtor’s failure to comply with the Budget except with respect to Permitted Variance. | |
| **Validity, Perfection, and Amount of Obligations Securing Prepetition Liens, Binding Effect of Stipulations on Third Parties, and Challenge Period** Bankruptcy Rule 4001(b)(1)(B); Local Rule 4001-2(a)(i)(Q) | None | N/A |
| **Waiver/Modification of Automatic Stay** Bankruptcy Rule 4001(b)(1)(B); Local Rule 4001-2(a)(i)(S) | None | N/A |
| **Provisions Limiting the Rights of Parties in Interest** Local Rule 4001-2(a)(i)(T) | None | N/A |
| **Section 506(c) and 552(b) Waiver** Local Rule 4001-2(a)(i)(V), (W) | None | N/A |

| SUMMARY OF MATERIAL TERMS | | |
|---|---|---|
| **Marshaling Waiver** Local Rule 4001-2(a)(i)(X) | None | N/A |

## BASIS FOR RELIEF

### A. The Debtor Is Entitled to Use Cash Collateral and the Proposed Adequate Protection Is Appropriate.

21. Section 363 of the Bankruptcy Code governs the Debtor's use of property of its estate, including Cash Collateral. Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may use Cash Collateral where "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

22. As of the Petition Date, Axios has not consented to the Debtor's use of Cash Collateral and has consistently pursued litigation and other adverse actions designed to wrest control of the Debtor's operations. Notwithstanding the lack of consent, the Debtor should be authorized to use Cash Collateral because it is providing Axios with adequate protection of any interest it may have in such collateral. Section 363(e) of the Bankruptcy Code requires that a secured creditor's interest in property be adequately protected when a debtor uses cash collateral, and section 362(d)(1) similarly provides for adequate protection of a creditor's interest as a result of the imposition of the automatic stay. *See In re Cont'l Airlines*, 91 F.3d 553, 556 (3d Cir. 1996). As set forth below, the Debtor's proposed adequate protection package fully satisfies these requirements.

23. While section 361 of the Bankruptcy Code provides examples of forms of adequate protection, such as granting replacement liens and administrative claims, courts decide what constitutes sufficient adequate protection on a case-by-case basis. *See In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994); *In re Satcon Tech. Corp.*, No. 12-12869, 2012 WL 6091160, at *6 (Bankr. D. Del. Dec. 7, 2012); *In re N.J. Affordable Homes Corp.*, No. 05-60442, 2006 WL 2128624, at *14 (Bankr. D.N.J. June 29, 2006); *In re Columbia Gas Sys., Inc.*, Nos. 91-803, 91-804, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992); *In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (citing 2 Collier on Bankruptcy ¶ 361.01 [1] at 361-66 (15th ed. 1993) (explaining that adequate protection can take many forms and "must be determined based upon equitable considerations arising from the particular facts of each proceeding")).

24. The concept of adequate protection is designed to shield a secured creditor from diminution in the value of its interest in collateral during the period of a debtor's use. *See In re Carbone Cos.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) ("The test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral."); *see also In re Cont'l Airlines, Inc.*, 154 B.R. 176, 180–81 (Bankr. D. Del. 1993) (holding that adequate protection for use of collateral under section 363 of the Bankruptcy Code is limited to use-based decline in value).

25. As described above, and as set forth in the Interim Order, the Debtor proposes to provide the Prepetition Secured Parties with the following forms of adequate protection (the "<u>Adequate Protection Package</u>"):

(a) **Replacement Liens**. Replacement liens under sections 361 and 363 on all postpetition property to the same extent and priority as any valid, perfected, unavoidable prepetition liens, solely to the extent of any diminution in value resulting from the Debtor's use of such Prepetition Secured Party's Collateral.

(b) **Superpriority Administrative Claim**. A superpriority administrative expense claim under section 507(b) of the Bankruptcy Code, subordinate only to the Carve Out, solely to the extent that (i) the applicable Prepetition Secured Party is determined to hold valid, perfected, and enforceable prepetition liens and claims, (ii) the Debtor's use of Cash Collateral results in a diminution in the value of such Prepetition Secured Party's interest in the Prepetition Collateral, and (iii) the other forms of adequate protection provided to such Prepetition Secured Party are determined to be insufficient to protect against any such diminution in value.

(c) **Information Rights**. The Debtor shall comply with the access and information requirements set forth in ¶ 7 of the Interim Order, including reporting to the Prepetition Secured Parties and the Special Monitor.

(d) **Maintenance of Collateral**. The Debtor shall continue to maintain and insure the Prepetition Collateral in the amounts, against the risks, and by the entities, required under the MSL.

(e) **Budget**. The Debtor shall use Cash Collateral solely in accordance with a Court-approved 4-week budget (the "Budget"), subject to permitted variances on operational disbursements of up to twenty percent (20%) on an aggregate basis, tested on a cumulative basis.

(f) **CRO Authority Over Cash Disbursements; No Director Payments**. In addition to complying with the Budget and all other requirements of the Interim Order, (a) the CRO shall have exclusive authority to authorize, defer, modify, or withhold any disbursement and (b) no payment shall be made to any director or owner of the Debtor.

(g) **Preservation of Going-Concern Value**. The Debtor further submits that the continued operation of the Hospital as a going concern preserves and enhances the value of the asserted collateral of the Prepetition Secured Parties. By authorizing the Debtor's use of Cash Collateral, the Court will enable the Debtor to continue providing essential healthcare services, maintain its workforce, preserve relationships with vendors and payors, and avoid a precipitous liquidation of the Hospital. Conversely, absent access to Cash Collateral, the Debtor would be forced to cease operations, resulting in an immediate and substantial destruction of going-concern value and a corresponding diminution in the value of any collateral securing the asserted claims of the Prepetition Secured Parties. Accordingly, the proposed use of Cash Collateral, together with the Debtor's proposed Adequate Protection Package, not only protects the Prepetition Secured Parties against any diminution in the value of their asserted interests but is the only viable path forward to providing a return to such Prepetition Secured Parties.

26. The Debtor submits that the proposed Adequate Protection Package, along with the fact that the Debtor will soon receive additional and substantial HQAF payments, appropriately protects the Prepetition Secured Parties against any diminution in the value of their interests in the Prepetition Collateral, including any Cash Collateral, resulting from the Debtor's continued use of such collateral during this Chapter 11 Case. Under the circumstances, the proposed Adequate Protection Package adequately safeguards any rights the Prepetition Secured Parties may have while enabling the Debtor to continue operating the Hospital, preserve going-concern value, and maximize recoveries for all stakeholders. Absent authority to use Cash Collateral on these terms, the Debtor would face an immediate and disorderly cessation of operations, resulting in significant harm to patients, employees, creditors, and the Debtor's estate.

**B. Failure to Obtain the Immediate Interim Use of Cash Collateral Would Cause Immediate and Irreparable Harm.**

27. Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than fourteen days after service of such motion. Upon request, however, the Court is authorized to conduct a preliminary expedited hearing on this Motion and authorize the Debtor's proposed use of Cash Collateral to the extent necessary to avoid immediate and irreparable harm to the Debtor's estate. *See* Fed. R. Bankr. P. 4001(b)(2).

28. The Debtor has an immediate and critical need to use Cash Collateral to continue operating its Hospital and administering this Chapter 11 Case. Without prompt access to liquidity, the Debtor cannot sustain operations or continue providing essential healthcare services to its patients. *See* Chadwick Declaration ¶ 11. The Debtor intends to use the Cash Collateral in the ordinary course of business, including to service patient needs, pay employee

wages and benefits, satisfy obligations to landlords and critical vendors, maintain hospital operations, and fund the costs of administering this Chapter 11 Case. Access to Cash Collateral will also provide the Debtor with the breathing spell afforded by the Bankruptcy Code to stabilize its operations and pursue a resolution of the Axios dispute and a value-maximizing restructuring free from further disruption to operations caused by Axios's prepetition enforcement efforts. *See id.* ¶ 5-6.

29. As of the Petition Date, the Debtor has approximately $240,797.86 in cash on hand. *See id.* ¶ 10. Without immediate authority to use Cash Collateral, the Debtor will lack sufficient liquidity to continue operating its Hospital, meet payroll and other critical operating expenses, or fund this Chapter 11 Case. *See id.* ¶ 11. The resulting disruption would severely jeopardize patient care, adversely affect the Debtor's employees, vendors, and other stakeholders, and substantially diminish the value of the Debtor's estate. Accordingly, the Debtor's immediate use of Cash Collateral is essential to preserve its going-concern value, protect the continuity of patient care, and maximize recoveries for all parties in interest.

30. The Debtor therefore seeks immediate authority to use the Cash Collateral as set forth in this Motion and in the proposed Interim Order to prevent immediate and irreparable harm to its estate pending the Final Hearing pursuant to Bankruptcy Rule 4001(b) and Local Rule 4001-2(b)(ii). The Debtor submits that it has satisfied the requirements of Bankruptcy Rule 4001 and Local Rule 4001-2 to support an expedited preliminary hearing and immediate access to Cash Collateral on an interim basis.

**C. The Scope of the Carve Out Is Appropriate.**

31. The proposed adequate protection is subject to the Carve Out, pursuant to which funds will be regularly reserved and funded during the pendency of the Chapter 11 Case to

ensure the timely payment of Allowed Professional Fees. Without the Carve Out, the Debtor and other parties in interest may be deprived of certain rights and powers, including the right to select their own professionals, because the services for which professionals may be paid in this chapter 11 case would be restricted. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (observing that courts insist on carve outs for estate professionals because "[a]bsent such protection, the collective rights and expectations of all parties-in-interest are sorely prejudiced").

32. Moreover, the Carve Out serves to enhance the value of the Debtor's estate because, in the absence of a carveout, "nobody will represent the debtor or the committee and the case will fall apart, further diminishing the overall value of the secured creditor's collateral[.]" *In re Molycorp, Inc.*, 562 B.R. 67, 76 n. 39 (Bankr. D. Del. 2017). The Carve Out does not directly or indirectly deprive the Debtor's estate or other parties in interest of possible rights and powers. Additionally, the Carve Out protects against administrative insolvency on account of process costs during the course of the Chapter 11 Case by ensuring that assets remain for any payment owing to the Clerk of the Court, the U.S. Trustee pursuant to 28 U.S.C. § 1930, and professional fees of the Debtor and any statutory committee.

## REQUEST FOR FINAL HEARING

33. Pursuant to Bankruptcy Rule 4001(b)(2), the Debtor requests that the Court set a date for consideration of entry of the Final Order (the "Final Hearing") that is as soon as practicable and fix the time and date prior to the Final Hearing for parties in interest to file objections to this Motion.

## WAIVER OF BANKRUPTCY RULES 6004(a) AND (h)

34. The Debtor respectfully requests that the Court waive any stay of the effectiveness of the interim and final orders granting this Motion. Pursuant to Bankruptcy Rule 6004(h), "[u]nless the court orders otherwise, an order authorizing the use, sale, or lease of property (other than cash collateral) is stayed for 14 days after the order is entered." The Debtor submits that granting this Motion such that it is effective immediately is essential to prevent irreparable damage to the Debtor and its estate.

35. Accordingly, the Debtor respectfully submits that the relief requested herein is appropriate under the circumstances and under Bankruptcy Rules 6003 and 6004(h).

36. Finally, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) because the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtor's estate, is narrowly tailored to the exigencies of this Chapter 11 Case, and any delay resulting from compliance with the notice requirements would materially prejudice the Debtor, its estate, and stakeholders by jeopardizing the Debtor's access to Cash Collateral and its ability to continue operations in the ordinary course.

## RESERVATION OF RIGHTS

37. Notwithstanding anything to the contrary herein, nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion

(including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be: (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtor under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtor's or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code or otherwise affect the Debtor's rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtor's estate; (g) a waiver or limitation of the Debtor's or any other party in interest's claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; or (h) a waiver of the obligation of any party in interest to file a proof of claim.

## **NOTICE**

38. The Debtor will provide notice of this Motion to the following parties or their respective counsel: (a) the U.S. Trustee; (b) the holders of the thirty (30) largest unsecured claims against the Debtor; (c) counsel to Axios; (d) counsel to the Landlord Entities; (e) counsel to L.A. Care; (f) the office of the attorney general for each of the states in which the Debtor operates; (g) the United States Attorney's Office for the District of Delaware; (h) the Internal Revenue Service; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.

Case 26-11060-TMH Doc 31 Filed 07/01/26 Page 23 of 24

The Debtor will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m). The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## **CONCLUSION**

WHEREFORE, the Debtor respectfully requests entry of the Orders: (i) granting the relief requested herein; and (ii) granting the Debtor such other and further relief as the Court deems just and proper.

[Remainder of page left intentionally blank]

Case 26-11060-TMH Doc 53 Filed 07/13/26 Page 24 of 24

Dated: July 7, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Laura Davis Jones*

Laura Davis Jones (DE Bar No. 2436)
Timothy Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
Wilmington, DE 19899
Tel: (302) 652-4100
Email: ljones@pszjlaw.com
tcairns@pszjlaw.com

-and -

**DENTONS US LLP**
Tania M. Moyron ([*pro hac vice* forthcoming])
Samuel R. Maizel ([*pro hac vice* forthcoming])
601 S. Figueroa Street #2500
Los Angeles, CA 90017
Telephone: (213) 623-9300
Facsimile: (213) 623-9924
Email: tania.moyron@dentons.com
samuel.maizel@dentons.com

John D. Beck (*pro hac vice* forthcoming)
Geoffrey Miller (*pro hac vice* forthcoming)
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
Email: john.beck@dentons.com
geoffrey.miller@dentons.com

*Proposed Counsel to Debtor and Debtor in Possession*

# EXHIBIT A

**Proposed Form of Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Pacifica of the Valley Corporation,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 26-11060 (TMH)<br><br>**Docket Ref. No. ____** |

**INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO (A) USE CASH COLLATERAL AND (B) GRANT LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS; (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES (III) SCHEDULING A FINAL HEARING; AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of Pacifica of the Valley Corporation dba Pacifica Hospital of the Valley ("Pacifica" or the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"), pursuant to sections 105(a), 361, 362, 363, 503, 506, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 4001-1, 4001-2, and 9013-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Local Rules"), seeking entry of an interim order (this "Interim Order") and a Final Order (as defined below), among other things:

(a) authorizing the use of Cash Collateral (as defined below), pursuant to sections 105, 361, 362, 363, 503, and 507 of the Bankruptcy Code on the terms and conditions set forth in this Interim Order;

(b) granting adequate protection, as and to the extent set forth herein, to the Prepetition Secured Parties (as defined below) to protect against any Diminution in Value (as defined below) of their interests in any Cash Collateral;

[1] The Debtor in this Chapter 11 Case, along with the last four digits of the Debtor's federal tax identification number, is 7312. The Debtor's mailing address is 9449 San Fernando Road, Sun Valley, CA 91352.

[2] Each capitalized term that is not defined herein shall have the meaning ascribed to such terms in the Motion.

(c) scheduling a final hearing (the "Final Hearing") to consider entry of a final order granting the relief requested in the Motion on a final basis (the "Final Order") and approving the form of notice with respect to the Final Hearing;

(d) waiving any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of this Interim Order; and

(e) granting related relief;

all as more fully set forth in the Motion; and an interim hearing with respect to the Motion having been held on July 8, 2026 (the "Interim Hearing"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 4001(b) and 9014 and Bankruptcy Local Rule 9013-1 and it appearing that no other or further notice need be provided; and the Court having considered the *Declaration of Precious Mayes in Support of Chapter 11 Petition and First Day Pleadings* (the "First Day Declaration") and the *Declaration of Peter Chadwick In Support of The Debtor's Cash Collateral Motion* (the "Chadwick Declaration"), the Budget (as defined below) filed and served by the Debtor, the evidence submitted or adduced, and the statements of counsel made at the Interim Hearing; and the Court having considered the interim relief requested in the Motion; and the Court having determined that the relief requested in the Motion on an interim basis is necessary to avoid immediate and irreparable harm to the Debtor and its estate; and that the legal and factual bases set forth in the Motion and at the Interim Hearing establish just cause for the relief granted herein; and all objections, if any, to the relief requested in the Motion on an interim basis having been withdrawn, resolved, or overruled by the Court; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

A. ***Petition Date.*** On July 4, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (this "Court") commencing this Chapter 11 Case.

B. ***Debtor in Possession.*** The Debtor continues to manage and operate its business and properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Case.

C. ***No Committee Formation.*** As of the date hereof, the United States Trustee for the District of Delaware (the "U.S. Trustee") has not appointed an official committee of unsecured creditors in the Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code (the "Official Committee").

D. ***Jurisdiction and Venue.*** This Court has jurisdiction over the Chapter 11 Case, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334. Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for the Chapter 11 Case and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief set forth herein are sections 105(a), 361, 362, 363, 503, 506, 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and Bankruptcy Local Rules 2002-1, 4001-1, 4001-2, and 9013-1.

E. ***Notice.*** Notice of the Motion and the Interim Hearing constitutes due, sufficient, and appropriate notice and complies with Bankruptcy Rules 4001(b) and 9014 and the Bankruptcy

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Local Rules, and no other or further notice of the Motion with respect to the relief requested at the Interim Hearing or the entry of this Interim Order shall be required.

F. ***Need for Use of Cash Collateral.*** The Debtor has an immediate and critical need to use Cash Collateral on an interim basis to avoid irreparable harm and permit the orderly continuation of the operation of its business, protect patient health and well-being, maintain business relationships with customers, vendors, and suppliers, make payroll, pay the costs of administering the Chapter 11 Case, and satisfy other working capital and operational needs (in each case, in accordance with and subject to this Interim Order) for the benefit of the estate and the Debtor's creditors and stakeholders, including the Prepetition Secured Parties. The access of the Debtor to sufficient working capital and liquidity through the use of Cash Collateral and other Prepetition Collateral is necessary and vital to the preservation and maintenance of the going concern value of the Debtor and its successful reorganization. The Debtor does not have sufficient sources of working capital and financing to operate its business in the ordinary course of business without the use of Cash Collateral. Absent the ability to use Cash Collateral and the other Prepetition Collateral, the continued operation of the Debtor's business would not be possible, and immediate and irreparable harm to the Debtor and its estate would be inevitable.

G. ***Use of Cash Collateral.*** As adequate protection for the use of Cash Collateral, all Cash Collateral shall be used and/or applied solely for the purposes permitted in the Budget (as defined below), including, without limitation, (i) to pay the costs of administration of the Chapter 11 Case, (ii) for general corporate and working capital purposes, and (iii) to pay adequate protection payments to the extent set forth herein, in each case, in accordance with the terms and conditions of this Interim Order.

H. ***Adequate Protection.*** The Prepetition Secured Parties shall receive adequate protection as set forth herein pursuant to sections 361, 362, and 363 of the Bankruptcy Code for the Debtor's use of the Prepetition Collateral, including Cash Collateral, and the imposition of the automatic stay, in the case of the Adequate Protection Liens and Adequate Protection Superpriority Claims (each, as defined below), solely to the extent of any postpetition Diminution in Value (as defined below). As adequate protection against any postpetition aggregate Diminution in Value of the Prepetition Secured Parties' respective liens and security interests in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date resulting from, among other things, (i) the use, sale, or lease by the Debtor of such collateral, (ii) the use of Cash Collateral by the Debtor on a dollar-for-dollar basis, (iii) the imposition of the automatic stay, and (iv) the imposition of the Carve-Out (as defined below) (collectively, and to the fullest extent permitted under the Bankruptcy Code or other applicable law, the "Diminution in Value"), the Prepetition Secured Parties are entitled to adequate protection, pursuant to sections 361, 362, and 363 of the Bankruptcy Code, as set forth in this Interim Order.

I. ***Proper Exercise of Business Judgment***. Based on the Motion, the First Day Declaration, and the record presented to the Court at the Interim Hearing, (i) the terms of adequate protection granted to the Prepetition Secured Parties, (ii) the terms on which the Debtor may continue to use Prepetition Collateral (including Cash Collateral), and (iii) the Cash Collateral arrangements described herein reflect the Debtor's exercise of prudent business judgment. Absent the ability to continue to use Cash Collateral upon the terms set forth herein, the Debtor, its estate, its creditors, and other parties-in-interest will be seriously and irreparably harmed.

J. ***Budget***. The Debtor has prepared the itemized cash flow forecast set forth on **Exhibit 1** attached hereto (the "Budget"). The Budget is an integral part of this Interim Order, and

the adequate protection being provided to the Prepetition Secured Parties relies, in part, upon the Debtor's willingness and ability to comply, subject to Permitted Variance (as defined below), with the Budget, in determining to allow the Debtor's use of Cash Collateral in accordance with the terms of this Interim Order.

K. ***Good Faith***. The Debtor has acted in good faith and with sound business judgment in connection with this Interim Order.

L. ***Need for Immediate Entry of this Interim Order.*** The Debtor has requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2). The permission granted herein to use Cash Collateral (and provide adequate protection therefor) is necessary, essential, and appropriate to avoid immediate and irreparable harm to the Debtor and its estate and creditors.

**NOW THEREFORE**, based upon the foregoing findings and conclusions, the Motion, the First Day Declaration, and the record before the Court, and after due consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. ***Motion Granted.*** The use of Cash Collateral is hereby authorized and approved on an interim basis and the Motion is hereby **GRANTED** in accordance with and subject to the terms and conditions of this Interim Order. Any objections or other statements with respect to any of the relief set forth in this Interim Order that have not been withdrawn, waived, or settled, and all reservation of rights inconsistent with this Interim Order, are hereby denied and overruled.

2. ***Authorization to Use Cash Collateral***. Subject to the provisions of this Interim Order (including the Carve-Out), the Debtor is authorized to use Cash Collateral during the period from the Petition Date through and including a Termination Date (as defined below) to operate the

Debtor's business in the ordinary course and pay certain costs, fees, and expenses related to the Chapter 11 Case, in accordance with the Budget as provided herein, and as approved by any order of this Court.

3. ***Budget.*** Subject to the provisions of this Interim Order (including the Carve-Out), the Debtor is authorized to use Cash Collateral in accordance with the Budget (subject to Permitted Variance) through August 1, 2026 (the "Expiration Date") as may be amended, replaced, extended, supplemented, or otherwise modified in accordance with the terms of this Interim Order or the consent of the Prepetition Secured Parties (in their sole discretion). On the Friday of each week, the Debtor shall deliver a reconciliation report (the "Variance Report") to the Prepetition Secured Parties and any statutory committees appointed in this case, in form reasonably satisfactory to the Prepetition Secured Parties, showing variances of budget amounts to actual amounts on a line-item basis for the period for the prior week (the "Testing Period"). The Variance Report will include (i) the variance (as compared to the applicable Budget) of actual cash receipts of the Debtor for the Testing Period (as defined below), (ii) the variance (as compared to the applicable Budget) of the operating disbursements made by the Debtor set forth in the Budget for the Testing Period, and (iii) an explanation, in reasonable detail, for any material variances set forth in such Variance Report.

4. The Debtor shall not permit an operating disbursement variance to have a negative variance in excess of 20% on an aggregate basis, tested on a cumulative basis (with negative variance meaning, for the avoidance of doubt, that actual operating disbursements are greater than the projected operating disbursements) (the variance otherwise permitted by this covenant, the "Permitted Variance").

5. ***Limitations on Use of Cash Collateral.*** The Debtor shall not be permitted to make any payments on account of any prepetition debt or obligation before the effective date of a confirmed chapter 11 plan with respect to the Debtor, except: (i) as set forth in this Interim Order; (ii) as provided in any order in connection with any relief requested by the Debtor at the commencement of this Chapter 11 Case, in form and substance reasonably acceptable to the Prepetition Secured Parties; or (iii) any payment made in accordance with the Budget, subject to Permitted Variance. The use of Cash Collateral pursuant to the terms and conditions of this Interim Order and in accordance with the Budget shall not be deemed to be consent by the Prepetition Secured Parties to any other or future use of Cash Collateral or to use any Cash Collateral in any amount or for any purpose in excess of the amount set forth in the Budget, subject to the Permitted Variance.

6. ***Adequate Protection for the Prepetition Secured Parties.*** Subject only to the Carve-Out and the terms of this Interim Order, pursuant to sections 361 and 363 of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Secured Parties in the Prepetition Collateral (including Cash Collateral), in each case, for the potential Diminution in Value of the Prepetition Collateral (including Cash Collateral), the Prepetition Secured Parties are hereby granted the following (the liens, security interests, payments, and other obligations set forth in this paragraph 6, collectively, the "Secured Party Adequate Protection"):

(a) **Replacement Liens**. Replacement liens under sections 361 and 363 on all postpetition property to the same extent and priority as any valid, perfected, unavoidable prepetition liens, solely to the extent of any diminution in value resulting from the Debtor's use of their Collateral. Such replacement liens shall be deemed valid, binding, perfected, and enforceable upon entry of this Order, without the necessity of the execution or filing of security agreements, financing statements, mortgages, notices, or any other documents, or the taking of any further action by any party.

(b) **Superpriority Administrative Claim**. A superpriority administrative expense claim under section 507(b) of the Bankruptcy Code, subordinate only to the Carve Out, solely to the extent that (i) the Prepetition Secured Party is determined to hold valid, perfected, and enforceable prepetition liens and claims, (ii) the Debtor's use of Cash Collateral results in a diminution in the value of such Secured Creditor's interest in the Prepetition Collateral, and (iii) the other forms of adequate protection provided such Secured Creditor are determined to be insufficient to protect against any such diminution in value.

(c) **Information Rights**. The Debtor shall comply with the access and information requirements set forth in paragraph 7 of the Interim Order.

(d) **Maintenance of Collateral**. The Debtor shall continue to maintain and insure the Prepetition Collateral in amounts and for the risks, and by the entities, as required under the MSL.

(e) **Budget**. The Debtor shall use Cash Collateral solely in accordance with a Court-approved 4-week budget (the "Budget"), subject to permitted variances on operational disbursements of up to twenty percent (20%) on an aggregate basis, tested on a cumulative basis.

(f) **CRO Authority Over Cash Disbursements; No Director Payments**. In addition to complying with the Budget and all other requirements of the Interim Order, (a) all expenditures of funds by the Debtor and withdrawals from the Debtor's bank accounts shall require personal authorization by the CRO and (b) no payments shall be made to any director or owner of the Debtor.

(g) **Preservation of Going-Concern Value**. The Debtor further submits that the continued operation of the Hospital as a going concern preserves and enhances the value of the asserted collateral of the Prepetition Secured Parties. By authorizing the Debtor's use of Cash Collateral, the Court will enable the Debtor to continue providing essential healthcare services, maintain its workforce, preserve relationships with vendors and payors, and avoid a precipitous liquidation of the Hospital. Conversely, absent access to Cash Collateral, the Debtor would be forced to cease operations, resulting in an immediate and substantial destruction of going-concern value and a corresponding diminution in the value of any collateral securing the asserted claims of the Prepetition Secured Parties. Accordingly, the proposed use of Cash Collateral, together with the Debtor's proposed Adequate Protection Package, not only protects the Prepetition Secured Parties against any diminution in the value of their asserted interest but is the only viable path forward to providing a return to such Prepetition Secured Parties.

7. ***Access and Information***. Upon reasonable prior written notice (including via acknowledged electronic mail) during normal business hours, the Debtor shall permit the

Prepetition Secured Parties, their Representatives and the Special Monitor (subject to obligations of confidentiality pursuant to a separate confidentiality agreement entered into with the Debtor) to have reasonable access to such information regarding the operations, business affairs, and financial condition of the Debtor and it being understood that nothing in this paragraph 7 shall require the Debtor (or any of its advisors) to take any action that would conflict with any applicable requirements of law or any binding agreement, or that would waive any attorney-client or similar privilege.

8. ***Payment of Professionals; Carve-Out; Funding Thereof.***

(a) *Payments of Professional Fees*. The Debtor shall be permitted to pay (x) statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6), together with the statutory rate of interest, which shall not be limited by any budget ("Statutory Fees") and any fees payable to the Clerk of the Court and (y) prior to the delivery of the Remedies Notice (as defined below) under this Interim Order, professional fees and expenses incurred by attorneys, accountants and other professionals, including ordinary course professionals, retained by the Debtor and any Committee under sections 327 or 1103(a) of the Bankruptcy Code (together, the "Professionals" and each, a "Professional"), including any expenses of the members of such Committee, (the "Professional Fees") solely (i) to the extent allowed by Court order and payable under sections 326, 328, 330 and 331 of the Bankruptcy Code and any interim procedures order and (ii) in amounts not exceeding the amounts set forth in the Budget for each such Professional's Professional Fee. For the avoidance of doubt, if a Professional's Professional Fees for a given period is less than the amount set forth in the Budget for such period, then the excess of amount under the Budget shall carry over to be included in the following period's cap.

(b) *Carve-Out*. Payment of any amounts on account of the Prepetition Secured Obligations, the Prepetition Liens, the Adequate Protection Liens, and the Adequate Protection Superpriority Claims shall be subject and subordinate in all respects to the payment of the following (collectively, the "Carve-Out"): (i) Statutory Fees (without regard to the Remedies Notice); (ii) all reasonable fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the Remedies Notice); (iii) the unpaid and outstanding reasonable fees and expenses actually incurred by Professionals on or after the Petition Date and through the day of delivery of a Remedies Notice under this Interim Order, up to the amounts set forth for each Professional in the Budget for such period, to the extent allowed by Court order and payable under sections 326, 328,

330 and 331 of the Bankruptcy Code and any interim procedures order; and (iv) the unpaid and outstanding reasonable fees and expenses actually incurred by the Professionals from or after the day following the delivery of a Remedies Notice under this Interim Order, to the extent allowed by Court order and payable under sections 326, 328, 330, and 331 of the Bankruptcy Code and any interim procedures order, in an aggregate amount not to exceed $250,000 (the "Post-Termination Carve-Out Cap").

(c) *Funding of Carve-Out Prior to Delivery of Remedies Notice*. Within five (5) business days of entry of this Interim Order, the Debtor shall fund into a segregated reserve or escrow account not subject to the control of the Prepetition Secured Parties (the "Carve-Out Account") an amount equal to the total budgeted Debtor Professionals fees, respectively, for the first two (2) weeks set forth in the Budget and, thereafter, the Debtor is authorized to transfer into the Carve-Out Account on a weekly basis cash in an amount equal to the estimated Professionals fees (excluding any restructuring, sale, success or other transaction fee of any investment bankers or financial advisors) for the next unfunded week set forth in the Budget. Thereafter, the Debtor shall use such funds held in the Carve-Out Account solely to pay Professionals fees as they become allowed and payable pursuant to interim or final orders of the Court; provided that in no way shall the Budget, the Carve-Out, the Carve-Out Account, the Post-Termination Carve-Out Cap, or any other provision of this Interim Order be or shall be deemed to be construed as a cap or limitation on the amount of Professional Fees due and payable by the Debtor or its estate as an administrative expense under the Bankruptcy Code.

(d) *Funding of Carve-Out Upon Delivery of Remedies Notice*. Upon delivery of a Remedies Notice, the Debtor shall deposit into the Carve-Out Account an aggregate amount equal to the sum of the Post-Termination Carve-Out Cap plus (solely to the extent not already deposited) all unpaid and outstanding reasonable fees and expenses actually incurred by all of the Professionals prior to the delivery of the Remedies Notice in an amount not to exceed the amounts set forth in the Budget for the payment of such Professionals through the date of delivery of the Remedies Notice. The funds in the Carve-Out Account shall be used solely to pay Professional Fees as and when allowed by order of the Court in accordance with paragraph 8(b) above. To the extent the Court does not approve any of the Professional Fees that were to be paid from funds segregated in the Carve-Out Account, or any amounts in the Carve-Out Account are ultimately not used for such purposes, such unused amounts shall be returned to the Debtor, subject to the rights, liens and claims of the Prepetition Secured Parties under this Interim Order and the Prepetition Loan Documents.

(e) Notwithstanding the provisions of this Interim Order (including this paragraph 8), the Prepetition Secured Parties reserve the right to object to the allowance of any fees and expenses, whether or not such fees and

expenses were incurred in accordance with the Budget. The Prepetition Secured Parties shall not be responsible for the direct payment or reimbursement of any Professional Fees, any Statutory Fees or the fees or expenses of any other party incurred in connection with this Chapter 11 Case or any Successor Case. The appearance of any Professional Fees in the Budget are for purposes of estimated accruals only and (x) shall not be deemed an authorization for the Debtor to pay any Professional Fees absent a Court order authorizing such payment and (y) shall not, in any way, be probative (or otherwise have any impact) with respect to the allowance of the payment of any such Professional Fees or any party's right to object to the payment of such Professional Fees. This Interim Order does not, and shall not be deemed to, itself authorize the payment of any Professional Fees.

9. ***Termination Events***. The Debtor's right to use the Cash Collateral pursuant to this Interim Order shall cease on the Termination Date (as defined herein). As used herein "Termination Events" means any of the events set forth in clauses (a) through (h) below (each such event a "Termination Event," and the date upon which such Termination Event occurs, the "Termination Date"):

(a) the Expiration Date;

(b) the effective date of a chapter 11 plan of the Debtor;

(c) the violation of any term of this Interim Order by the Debtor (other than as described in clause (h) below) that is not cured within five (5) business days of receipt by the Debtor, counsel for any statutory committees appointed in this case, and the U.S. Trustee of notice of such default, violation, or breach (which may be provided to the Debtor, counsel for the Official Committee, and the U.S. Trustee by email);

(d) the filing by the Debtor of a motion to dismiss the Chapter 11 Case, or the entry of any order dismissing this Chapter 11 Case (other than following the effective date of a chapter 11 plan);

(e) the filing by the Debtor of a motion to convert this Chapter 11 Case to a case under chapter 7 or the entry of order converting this Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code;

(f) the entry of an order appointing a chapter 11 trustee or an examiner with enlarged powers relating to the operation of the business of any Debtor (powers beyond those set forth in sections 1106(a)(3) and (a)(4) of the Bankruptcy Code);

(g) the failure by the Debtor to deliver to any of the Notice Parties any of the documents or other information reasonably required to be delivered to such applicable party pursuant to this Interim Order within five (5) business days following a request therefor from any of the Notice Parties pursuant to the terms of this Interim Order; or any such documents or other information shall contain a material misrepresentation; provided that, such misrepresentation remains uncured for at least five (5) business days following written notice thereof from a Notice Party; or

(h) the Debtor's failure to comply with the Budget except with respect to Permitted Variance.

10. ***Remedies Upon Termination Event***. Subject to any applicable grace period, upon the occurrence and during the continuance of a Termination Event, any Prepetition Secured Party may, upon not less than five (5) Business Days' prior written notice (a "Remedies Notice") to (i) counsel to the Debtor, (ii) counsel to any Official Committee, and (iii) the U.S. Trustee, file a motion with the Court (the "Cash Collateral Termination Motion") seeking entry of an order terminating the Debtor's authority to use Cash Collateral.

11. ***Rights Preserved***. Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the rights of the Prepetition Secured Parties to seek any other or supplemental relief in respect of the Debtor; (b) the rights of the Prepetition Secured Parties to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of the Chapter 11 Case, conversion of the Chapter 11 Case to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan; or (c) any other rights, claims, or privileges (whether legal, equitable or otherwise) of the Prepetition Secured Parties. Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtor's or any party in interest's right to

oppose any of the relief requested in accordance with the immediately preceding sentence, except as expressly set forth in this Interim Order.

12. Notwithstanding anything in this Order to the contrary, nothing contained in this Order, nor any payment, use of Cash Collateral, grant of adequate protection, or other relief authorized herein, shall constitute or be deemed to constitute (a) an admission, stipulation, or finding as to the validity, perfection, priority, enforceability, extent, or avoidability of any lien or security interest purportedly held by any Prepetition Secured Party, or the amount or allowability of any claim asserted by any Prepetition Secured Party; (b) a waiver of any claims, defenses, objections, causes of action, offsets, recoupment rights, or avoidance actions that the Debtor, the estate, any successor to the Debtor, or any other party in interest may have against any Prepetition Secured Party; or (c) a finding that any Prepetition Secured Party is entitled to the protections or benefits afforded to holders of allowed secured claims under the Bankruptcy Code, except solely to the extent expressly provided on an interim basis in this Order. All rights of the Debtor, the estate, any successor to the Debtor, and any other party in interest to contest or otherwise challenge the validity, perfection, priority, enforceability, extent, amount, or avoidability of any lien, security interest, or claim asserted by any Prepetition Secured Party are expressly preserved and reserved.

13. ***Modification of Automatic Stay***. The stay of section 362 of the Bankruptcy Code is hereby modified to the extent necessary to accomplish the transactions contemplated by this Interim Order.

14. ***Survival***. The provisions of this Interim Order shall be binding upon any trustee appointed during the Chapter 11 Case or upon a conversion to a case under chapter 7 of the Bankruptcy Code, and any actions taken pursuant hereto shall survive entry of any order which may be entered converting the Chapter 11 Case to a chapter 7 case, dismissing the Chapter 11 Case

under section 1112 of the Bankruptcy Code or otherwise. The terms and provisions of and the priorities in payments, liens, and security interests granted pursuant to, this Interim Order, shall continue notwithstanding any conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or the dismissal of the Chapter 11 Case.

15. ***No Third-Party Rights.*** Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

16. ***Binding Effect.*** From and after entry of this Interim Order by the Court, the provisions of this Interim Order, including all findings and conclusions of law herein, shall be binding upon the Debtor, all creditors of the Debtor, and all parties in interest in the Chapter 11 Case and any Successor Case, including without limitation, the Prepetition Secured Parties, any statutory committee appointed in the Chapter 11 Case, and their respective successors and assigns, including any chapter 11 trustee or chapter 7 trustee hereinafter appointed or elected for the estate of the Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtor or with respect to the property of the estate of the Debtor, and shall inure to the benefit of the Debtor, the Prepetition Secured Parties, and their respective successors and assigns; *provided* that, except to the extent expressly set forth in this Interim Order, the Prepetition Secured Parties shall have no obligation to permit the use of Prepetition Collateral (including Cash Collateral) by any chapter 11 trustee or chapter 7 trustee or similar responsible person appointed for the estate of the Debtor in the Chapter 11 Case or any Successor Case.

17. ***Effectiveness***. This Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

18. ***Headings.*** The headings in this Interim Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Interim Order.

19. ***Retention of Jurisdiction.*** The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

20. ***Final Hearing.*** The Final Hearing shall be held on ___, 2026 at ___ pm (prevailing Eastern Time), and any objections to the final relief sought in the Motion shall be filed with the Court no later than ___, 2026.

21. ***Notice of Entry of Interim Order.*** The Debtor shall promptly serve copies of this Interim Order to the parties that have been given notice of the Interim Hearing, to any party that has filed a request for notices with this Court and to any Official Committee (if appointed).

# Exhibit 1

## Budget

Pacifica
4 Week Cash Flow
($ in 000s)

| Week # | 1 | 2 | 3 | 4 | 4 Week |
|---|---|---|---|---|---|
| Week Ending | 7/10/26 | 7/17/26 | 7/24/26 | 7/31/26 | Total |
| Actual / Forecast | Forecast | Forecast | Forecast | Forecast | Forecast |
| **I. Receipts** | | | | | |
| 1.) Government | 802 | 281 | 1,343 | 446 | 2,872 |
| 2.) Non-Government | 221 | 156 | 156 | 156 | 691 |
| 3.) QAF | - | - | - | - | - |
| 4.) DSH | - | - | - | - | - |
| 5.) LACare | 388 | 5,221 | 221 | 221 | 6,052 |
| 6.) Other | 914 | 92 | 292 | 1,430 | 2,729 |
| 7.) **Total Receipts** | **2,326** | **5,751** | **2,013** | **2,254** | **12,343** |
| **II. Operating Disbursements** | | | | | |
| 8.) Payroll | (868) | (1,302) | (868) | (1,302) | (4,341) |
| 9.) Benefits | (168) | (252) | (168) | (252) | (840) |
| 10.) Rent | - | - | - | (662) | (662) |
| 11.) Supplies | (95) | (95) | (95) | (95) | (381) |
| 12.) Pharmaceuticals | (12) | (12) | (12) | (12) | (48) |
| 13.) Purchased Services | (174) | (174) | (174) | (174) | (694) |
| 14.) Repairs and Maintenance | (15) | (15) | (15) | (15) | (61) |
| 15.) Utilities | (117) | - | (8) | - | (125) |
| 16.) Insurance | - | - | (1,076) | - | (1,076) |
| 17.) QAF Fees | - | - | - | - | - |
| 18.) Medical Professional Fees | (82) | (82) | (82) | (82) | (329) |
| 19.) Other | (579) | (151) | (151) | (151) | (1,033) |
| 20.) **Total Operating Disbursements** | **(2,111)** | **(2,084)** | **(2,650)** | **(2,746)** | **(9,590)** |
| 21.) **Net Operating Cash Flow** | **215** | **3,667** | **(637)** | **(491)** | **2,753** |
| **III. Non-Operating Disbursements** | | | | | |
| 22.) Professional Fees | - | - | (368) | (368) | (735) |
| 23.) UST Fees | - | - | - | - | - |
| 24.) CapEx | - | (270) | - | - | (270) |
| 25.) Other Non-Recurring | - | - | - | - | - |
| 26.) **Total Non-Operating Disbursements** | **-** | **(270)** | **(368)** | **(368)** | **(1,005)** |
| 27.) **Net Cash Flow** | **215** | **3,396** | **(1,005)** | **(859)** | **1,748** |
| **VI. Liquidity Summary** | | | | | |
| 28.) Beginning Cash Balance | 241 | 456 | 3,852 | 2,847 | 241 |
| 29.) Net Cash Flow | 215 | 3,396 | (1,005) | (859) | 1,748 |
| 30.) **Ending Cash Balance** | **456** | **3,852** | **2,847** | **1,989** | **1,989** |