**EXHIBIT A**

**(Proposed Order)**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Pacifica of the Valley Corporation,[1] | Case No. 26-11060 (TMH) |
| Debtor. | |

**ORDER GRANTING DEBTOR'S <u>EMERGENCY</u> MOTION TO (I) SELL HQAF
RECEIVABLES TO L.A. CARE PURSUANT TO SECTION 363, (II) STIPULATE TO THE
VALIDITY AND NON-AVOIDABILITY OF PREPETITION SALES OF HQAF
RECEIVABLES TO L.A. CARE (III) GRANT L.A. CARE A RELEASE OF
ANY ESTATE CLAIMS  (IV) GRANT ADMINISTRATIVE CLAIMS IN
FAVOR OF L.A. CARE, (V) TO THE EXTENT NECESSARY,
<u>MODIFY THE AUTOMATIC STAY AND (VI) GRANT RELATED RELIEF</u>**

Upon the motion (the "<u>Motion</u>")[2] filed by the above-captioned debtor and debtor in possession ( the "<u>Debtor</u>") for entry of an order (this "<u>Order</u>") (i) authorizing the sale of the HQAF Receivables to L.A. Care pursuant to § 363, (ii) approving the Debtor's stipulation as to the validity and non-avoidability of the prepetition sales of HQAF receivables to L.A. Care (iii) granting L.A. Care a release of any estate claims, (iv) granting administrative expense claims in favor of L.A. Care, (v) modifying the automatic stay to the extent necessary, and (vi) granting related relief; and there being due and sufficient notice, in accordance with Bankruptcy Rules 2002 and 4001 and the Local Rules; and upon the record of the hearing; and the Court having considered the Motion, the First Day Declaration, the Chadwick Declaration, and the other evidence and argument of counsel presented at the hearing on the Motion (the "<u>Hearing</u>"); and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

---

[1] The Debtor in this Chapter 11 Case, along with the last four digits of the Debtor's federal tax identification number, is: Pacifica of the Valley Corporation d/b/a Pacifica Hospital of the Valley (7312). The Debtor's mailing address is 9449 San Fernando Road, Sun Valley, CA 91352.

[2] Capitalized terms used and not otherwise defined herein shall have the meanings given to them in the Motion.

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW**:

A.      **Petition Date**.  On July 4, 2026 (the "Petition Date"), the Debtor commenced the Chapter 11 Case by filing a petition for relief under the Bankruptcy Code in the Court.  Since the Petition Date, the Debtor has remained in possession of its assets and is a debtor in possession pursuant to §§ 1107 and 1108.  No trustee or examiner has been appointed in the Chapter 11 Case.

B.      **Jurisdiction and Venue**.  This Court has jurisdiction to hear the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b).  Venue for the Chapter 11 Case and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The Debtor consents to the entry of this Order to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection with the Motion consistent with Article III of the United States Constitution.  The statutory predicates for the relief sought herein are §§ 105, 363, 503 and 507, Bankruptcy Rules 2002 and 6004, and Local Rule 6004-1.

C.      **Notice**.  Notice of the Hearing and the relief requested in the Motion has been provided by the Debtor as set forth in the Motion to the required parties.  The Debtor has made reasonable efforts to afford the best notice possible under the circumstances.  Such notice of the Hearing and the relief requested in the Motion constitutes due, sufficient and appropriate notice and complies with § 102(1), Bankruptcy Rules 2002 and 4001(b), and applicable Local Rules.

D.      **Final Order**. This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rule 6004(h), and any other applicable Bankruptcy Rules or Local Rules, and to any extent necessary under Bankruptcy Rule 9014 and Federal Rule of Civil Procedure 54(b), as made applicable by Bankruptcy Rule 7054,

the Court expressly finds that there is no just reason for delay in the implementation of this Order and expressly directs entry of judgment as set forth herein.

E. **Adoption of the Terms of This Order**. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

F. **Satisfaction of Business Judgment Standard**. The Debtor has demonstrated that, for purposes of approval of the Sale and Post-Petition Purchase Agreement, it has a sound business purpose for the Sale and entering into the Post-Petition Purchase Agreement each of which are in the best interests of the Debtor's stakeholders.

G. **Non-Insider**. L.A. Care is not an "insider" of the Debtor as that term is defined in § 101(31) of the Bankruptcy Code.

H. **Good Faith Purchaser**. L.A. Care is a good-faith purchaser of the HQAF receivables within the meaning of section 363(m) of the Bankruptcy Code. The Post-Petition Purchase Agreement was negotiated, proposed, and entered into by the Debtor and L.A. Care in good faith, at arm's length, and without collusion, fraud, or an intent to take unfair advantage of any other party. Accordingly, L.A. Care is entitled to all of the protections afforded to a good-faith purchaser under § 363(m).

I. **No Collusion**. Neither the Debtor nor L.A. Care has engaged in any conduct that would permit the avoidance of the sale of the HQAF receivables under § 363(n). The Purchase Price was not controlled by any agreement among potential bidders, and neither the Post-Petition

3

Purchase Agreement nor the transactions contemplated thereby are the product of collusion or any other agreement or conduct that would restrain competition or improperly control the Purchase Price.

J.      **Highest and Best**.  The consideration provided by L.A. Care for the HQAF receivables pursuant to the Post-Petition Purchase Agreement: (i) is fair and reasonable; (ii) is the highest and best offer for the HQAF receivables; (iii) will provide the best value for all of the Debtor's stakeholders than would be provided by any other alternative; and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act or the Uniform Voidable Transactions Act, as applicable, and all other applicable laws.

K.      **Free and Clear**. The provisions of § 363(f) have been satisfied pursuant to the terms of this Order.

L.      **Immediate Effect**. Exigent circumstances and sound business reasons exist to warrant the immediate consummation of the Sale. The Sale is the product of the Debtor's reasonable business judgment and is necessary to preserve and maximize the value of the Debtor's estate, provide certainty with respect to the disposition of the HQAF receivables, and avoid the risks, costs, and disruption associated with any delay in closing. Any postponement of the Sale could jeopardize the benefits contemplated by the Post-Petition Purchase Agreement, increase administrative expenses, create uncertainty concerning the ownership, collection, and treatment of the HQAF receivables and related proceeds, and materially prejudice the Debtor, its estate, L.A. Care, and other parties in interest. The immediate effectiveness of this Order and prompt consummation of the Sale are therefore necessary and appropriate to protect the value of the Sale, prevent irreparable harm to the Debtor's estate, and effectuate the relief granted herein.

M.    **True Sale**. The Prepetition Purchase Agreements, the Post-Petition Purchase Agreements, and each of the transactions consummated thereunder, constitute valid, binding, enforceable, and nonavoidable true-sale transactions pursuant to which all right, title, and interest in the purchased HQAF receivables and proceeds thereunder were transferred to L.A. Care. The Prepetition Purchase Agreements, the Post-Petition Purchase Agreement and the transactions contemplated thereby do not constitute loans, secured financings, pledges, or other extensions of credit and are not subject to avoidance, recharacterization, subordination, recovery, or disgorgement under the Bankruptcy Code or other applicable law. The economic terms of the Prepetition Purchase Agreement and the Post-Petition Purchase Agreement, support this finding.

a.  Under the Prepetition Purchase Agreements, L.A. Care paid the Debtor dollar-for-dollar consideration for the purchased HQAF proceeds: $6 million under the January Purchase Agreement and $1.5 million under the May Purchase Agreement. The Prepetition Purchase Agreements did not impose interest, an original issue discount, or another financing premium that would suggest they were disguised loans. Instead, the Debtor transferred specifically identified payment rights in exchange for immediate cash consideration equal to the amount of the purchased receivables.

b.  Under the Post-petition Purchase Agreement, L.A. Care will the Debtor dollar-for-dollar consideration for the $5 million in purchased HQAF proceeds. The Post-Petition Purchase Agreements does not impose interest, an original issue discount, or another financing premium that would suggest they were disguised loans. Instead, the Debtor will transfer specifically identified payment rights in exchange for immediate cash consideration equal to the amount of the purchased receivables.

Accordingly, both the form and economic substance of the Prepetition Purchase Agreements and the Post-Petition Purchase Agreement support their treatment as true sales rather than secured financings.

N.    **Condition Precedent to Transaction.** It is a condition precedent to L.A. Care entering into the Sale that the Court (i) find that the Prepetition Purchase Agreements constituted true sales of the HQAF receivables sold thereunder, (ii) approve releases of any claims against L.A. Care related to the Prepetition Purchase Agreements, and (iii) grant L.A. Care a valid and

allowed administrative expense claim against the Debtor's estate under §§ 503(b) and 507(a)(2) for all reasonable and documented fees and expenses incurred by L.A. Care in connection with the negotiation, documentation, approval, implementation, and consummation of the transactions contemplated by the Post-Petition Purchase Agreement and this Order. If these findings and provisions were not included in this Order, L.A. Care would not have entered into the Sale.

NOW, THEREFORE, upon the Motion and the record before this Court with respect to the Motion, including the record made during the hearing on the Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.      The Motion is GRANTED as set forth herein.

2.      All objections to the relief sought in the Motion that have not been previously resolved or withdrawn are hereby overruled on their merits and with prejudice.

3.      The Sale and the Post Petition Purchase Agreement attached hereto as **Exhibit A** are hereby approved in all respects, and the Debtor is authorized to execute, deliver, and perform its obligations under the Post-Petition Purchase Agreement and to consummate the transactions contemplated thereby.

4.      The Sale of the HQAF receivables to L.A. Care pursuant to the Post-Petition Purchase Agreement and each of the transactions contemplated thereunder constitutes a legal, valid, binding, enforceable and non-avoidable true sale and transfer of the HQAF receivables and shall vest L.A. Care with all right, title, and interest in and to the HQAF receivables. The Post-Petition Purchase Agreement and the transactions contemplated thereby do not constitute loans, secured financings, pledges, or other extensions of credit and are not subject to avoidance,

recharacterization, subordination, recovery, or disgorgement under the Bankruptcy Code or other applicable law.

5.      Pursuant to § 363(f), the HQAF receivables shall be transferred to L.A. Care free and clear of all liens, claims, encumbrances, interests, and other liabilities of any kind or nature, whether known or unknown, arising before the closing of the Sale, including any claims based on successor or transferee liability relating to the Debtor or its business, with any such liens, claims, encumbrances, interests, and liabilities attaching to the Sale proceeds with the same validity, priority, and extent as they attached to the HQAF receivables immediately before the closing.

6.      Any holders of asserted lien or encumbrances and other non-Debtor parties who did not object, or who withdrew their objections prior to entry of this Order are deemed to have consented to this Order and the Post-Petition Purchase Agreement pursuant to § 363(f)(2) and are enjoined from taking any action against L.A. Care, its affiliates, or any agent of the foregoing to recover any claim which such person or entity has against the Debtor.

7.      L.A. Care is a good-faith purchaser within the meaning of § 363(m) and is entitled to all protections afforded thereunder. Accordingly, the reversal or modification on appeal of this Order or the authorization of the Sale shall not affect the validity of the Sale to L.A. Care, unless this Order and the Sale are duly stayed pending such appeal.

8.      The Debtor stipulates and agrees that the Prepetition Purchase Agreements, and each of the transactions consummated thereunder, constitute valid, binding, enforceable, and nonavoidable true-sale transactions pursuant to which all right, title, and interest in the purchased HQAF receivables and proceeds thereunder were transferred to L.A. Care. The Prepetition Purchase Agreements and the transactions contemplated thereby do not constitute loans, secured financings, pledges, or other extensions of credit and are not subject to avoidance,

recharacterization, subordination, recovery, or disgorgement under the Bankruptcy Code or other applicable law. The foregoing determinations shall be final and binding upon the Debtor, the Debtor's estate, any subsequently appointed trustee or estate representative, and all other parties in interest, and no such person or entity shall have standing or authority to commence, prosecute, or otherwise assert any claim, cause of action, objection, defense, counterclaim, or challenge.

9.     Effective upon entry of this Order, the Debtor, on behalf of itself and its estate, hereby irrevocably, unconditionally, and forever releases and discharges L.A. Care and its current and former affiliates, officers, directors, employees, agents, representatives, attorneys, successors, and assigns from any and all claims, causes of action, defenses, counterclaims, rights of setoff or recoupment, liabilities, obligations, demands, damages, and remedies of every kind or nature, whether known or unknown, suspected or unsuspected, arising out of or relating to the Prepetition Purchase Agreements, the HQAF proceeds purchased thereunder, or the transactions contemplated thereby.

10.     Pursuant to §§ 503(b) and 507(a)(2), L.A. Care shall have a valid and allowed administrative expense claim against the Debtor's estate for all reasonable and documented fees and expenses incurred by L.A. Care in connection with the negotiation, documentation, approval, implementation, and consummation of the transactions contemplated by the Post-Petition Purchase Agreement and this Order. The Debtor shall pay all such reasonable and documented fees and expenses as and when invoiced by L.A. Care.

11.     The automatic stay of § 362(a) shall not apply to and otherwise shall not prevent the exercise or performance by any party of its rights or obligations under the Purchase Agreements, including, without limitation, to permit L.A. Care to retain HQAF receivables, up to an aggregate amount of $12,500,000.00 when received, without further order of this Court.

12. The terms and provisions of this Order shall be binding in all respects upon all entities, including, but not limited to, the Debtor, L.A. Care, creditors, patients, employees, former employees and shareholders, administrative agencies, governmental departments, secretaries of state, federal, state and local officials and their respective successors or assigns, including, but not limited to, persons asserting any lien or encumbrance against or interest in the Debtor's estate or the HQAF receivables, including any subsequent appointment of a trustee or other fiduciary under any section of the Bankruptcy Code.

13. The provisions of this Order and the Post-Petition Purchase Agreement and any actions taken pursuant hereto or thereto shall (i) survive (A) entry of any order which may be entered confirming or consummating any plan of reorganization or liquidation of the Debtor (B) conversion of the Debtor's Bankruptcy Case from chapter 11 to chapter 7; (C) dismissal of the Debtor's Bankruptcy Case; or (D) appointment of a chapter 11 trustee or examiner and (ii) bind any chapter 11 trustee, chapter 7 trustee, liquidating trustee, litigation trustee or other post-confirmation representative of the Debtor's estate.

*[Remainder of Page Intentionally Left Blank]*

9

14.     The Court shall have jurisdiction with respect to any and all disputes or matters under, or arising out of or in connection with, the Motion or this Order.

15.     The Debtor is authorized to take any and all actions that are necessary to carry out the provisions of this Order.

16.     This Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 6004(g), (h) or otherwise.