**EXHIBIT B**

**(Chadwick Declaration)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>Pacifica of the Valley Corporation,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 26-11060 (TMH) |

**DECLARATION OF PETER CHADWICK IN SUPPORT OF DEBTOR'S <u>EMERGENCY</u>**
**MOTION TO (I) SELL HQAF RECEIVABLES TO L.A. CARE PURSUANT TO SECTION 363,**
**(II) STIPULATE TO THE VALIDITY AND NON-AVOIDABILITY OF PREPETITION SALES**
**OF HQAF RECEIVABLES TO L.A. CARE, (III) GRANT L.A. CARE A RELEASE OF**
**ANY ESTATE CLAIMS, (IV) GRANT ADMINISTRATIVE CLAIMS IN**
**FAVOR OF L.A. CARE, (V) TO THE EXTENT NECESSARY**
**<u>MODIFY THE AUTOMATIC STAY, AND (VI) GRANT RELATED RELIEF</u>**

I, Peter Chadwick, hereby state and declare as follows:

1.      I am the Chief Restructuring Officer of Pacifica of the Valley Corporation d/b/a Pacifica Hospital of the Valley, the above-captioned debtor and debtor in possession (the "<u>Debtor</u>") in the above-referenced case (the "<u>Chapter 11 Case</u>").  I have been a Managing Director with Berkeley Research Group, LLC since 2015.  I specialize in corporate restructuring, interim management, financial advisory, and distressed business operations with over three decades of experience advising hospitals and healthcare systems in financial distress, including serving as chief restructuring officer, interim executive, and financial advisor in complex operational and chapter 11 restructurings. My work has focused on stabilizing healthcare operations, implementing cash management controls, preserving continuity of patient care, and developing operational budgets that allow hospitals to continue serving their communities while pursuing restructuring alternatives.

---

[1] The Debtor in this Chapter 11 Case, along with the last four digits of the Debtor's federal tax identification number, is: Pacifica of the Valley Corporation d/b/a Pacifica Hospital of the Valley (7312). The Debtor's mailing address is 9449 San Fernando Road, Sun Valley, CA 91352.

1

2.	I submit this declaration in support of the *Debtor's Emergency Motion to (I) Sell HQAF Receivables to L.A. Care Pursuant to Section 363, (II) Stipulate to the Validity and Non-Avoidability of Prepetition Sales of HQAF Receivables to L.A. Care (III) Grant L.A. Care a Release of Any Estate Claims, (IV) Grant Administrative Claims in Favor of L.A. Care, (V) To The Extent Necessary Modify the Automatic Stay and (VI) Grant Related Relief* (the "Motion").[2]

3.	Except as otherwise indicated, I have personal knowledge of the matters set forth herein based upon my work as CRO, my review of the Debtor's books and records, and discussions with the Debtor's management and advisors. If called upon to testify, I could and would testify competently to the matters stated herein.

4.	Prior to the Petition Date, the Debtor and L.A. Care entered into the Prepetition Agreements by which the Debtor sold to L.A. Care the right to receive designated future HQAF payments in exchange for immediate cash consideration. These types of transactions have become common in the healthcare industry.

5.	The Post-Petition Purchase Agreement is the same as the Prepetition Agreements (except for provisions contemplating entry of a bankruptcy court order acceptable to L.A. Care in its sole discretion, substantially in the form attached as Exhibit C to the Post-Petition Purchase Agreement). By the Post-Petition Purchase Agreement, the Debtor has agreed to sell to L.A. Care its interest in HQAF payments expected to be received for the period spanning January 1, 2025 to December 31, 2025, in an amount equal to $5,000,000, in exchange for a cash payment of $5,000,000 from L.A. Care.  The HQAF funds are expected to become available for distribution in early 2027.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion.

6.      The Post-Petition Purchase Agreement imposes no interest, original issue discount, fees, or other costs on the estate except that, as conditions to entering into the Post-Petition Purchase Agreement, L.A. Care and the Debtor have agreed (i) L.A. Care shall be granted an administrative expense claim for its reasonable and documented fees and expenses incurred in connection with the Sale and negotiation of the Post-Petition Purchase Agreement and (ii) the Debtor shall stipulate, without any right of subsequent challenge by any other party, including the Committee, that the Prepetition Purchase Agreements are valid, non-avoidable true-sale transactions.

7.      The Post-Petition Purchase Agreement will provide the Debtor with essential liquidity at a time when it is in dire need of a cash infusion.  Absent this immediate infusion of cash, the Debtor will suffer immediate and irreparable harm.  These funds are absolutely essential to meet critical immediate-term obligations, such as payroll, monthly rent, and insurance obligations, among other things.  The cash infusion is therefore critical to sustaining the Debtor's operations and ensuring the uninterrupted delivery of patient care.

8.      Furthermore, the Post-Petition Purchase Agreement was negotiated at arm's length and in good faith by the Debtor and L.A. Care (a non-insider) and that such agreement is consistent with the Pre-Petition Purchase Agreements. The terms of the Post-Petition Purchase Agreement are the most favorable terms reasonably available to the Debtor given that the Debtor will, upon court approval, receive a $5 million payment now in exchange for the right to receive an equivalent amount of HQAF funds expected to be released later this year. The Debtor has explored alternative sources of liquidity and there are no readily available sources of liquidity.  Moreover, even if there were such sources, no potential lender would loan funds on such favorable terms.

9.      I understand that (a) the Debtor's stipulation that the Prepetition Purchase Agreements constitute valid, binding, enforceable, and non-avoidable true-sale transactions, together with the Debtor's release of any claims or causes of action against L.A. Care arising from or relating to the Prepetition Purchase Agreements, the purchased HQAF proceeds, or the transactions contemplated thereby; and (b) the Debtor's agreement to grant an administrative expense to L.A. Care for its reasonable and documented fees and expenses incurred in connection with the Post-Petition Purchase Agreement are material terms of the Post-Petition Purchase Agreement and L.A. Care would not have agreed to the Post-Petition Purchase Agreement without inclusion of such terms in such agreement.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Dated: July 29, 2026

*/s/ Peter Chadwick*
Peter Chadwick
Chief Restructuring Officer
Pacifica of the Valley Corporation

4