**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Pacifica of the Valley Corporation,[1] | Case No. 26-11060 (TMH) |
| Debtor. | **Hearing Date: August 7, 2026, at 10:00 a.m. (ET)**<br>**Objection Deadline: July 31, 2026, at 4:00 p.m. (ET)**<br><br>**Re: Docket Nos. 13; 57; 89** |

**AXIOS CAPITAL SOLUTIONS, LLC'S OBJECTION TO DEBTOR'S MOTION FOR
ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO
(A) USE CASH COLLATERAL AND (B) GRANT LIENS AND SUPERPRIORITY
ADMINISTRATIVE EXPENSE CLAIMS; (II) GRANTING ADEQUATE
PROTECTION TO PREPETITION SECURED PARTIES; (III) SCHEDULING A
<u>FINAL HEARING; AND (IV) GRANTING RELATED RELIEF</u>**

Axios Capital Solutions, LLC ("**Axios**"), by and through its undersigned counsel, hereby files this *Objection* (this "**Objection**") to entry of a final order (the "**Final Order**") granting the relief requested in the above-captioned debtor's (the "**Debtor**" or **"Pacifica"**) *Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to (A) Use Cash Collateral and (B) Grant Liens and Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Prepetition Secured Parties; (III) Scheduling a Final Hearing; and (IV) Granting Related Relief* [D.I. 13] (the "**Motion**"), as extended pursuant to the *Notice Regarding Amended Budget and Extension of Interim Order* [Docket No. 89] (the "**Extension Notice**," and the budget attached thereto, the "**Budget**"). In support of this Objection, Axios respectfully states as follows:

---

[1] The Debtor in this Chapter 11 Case, along with the last four digits of the Debtor's federal tax identification number, is: Pacifica of the Valley Corporation d/b/a Pacifica Hospital of the Valley (7312). The Debtor's mailing address is 9449 San Fernando Road, Sun Valley, CA 91352.

1

## PRELIMINARY STATEMENT[2]

1.      Axios recognizes the importance of continuity of care to the patient population the Hospital serves.  Axios does not oppose the Debtor's continued operation of the Hospital, but the present record does not support entry of a *final* order approving the Debtor's use of Cash Collateral. The Debtor has not shown that its proposed adequate protection package protects Axios against ongoing diminution in value, nor has it provided a sufficiently developed budget or exit path to justify final relief.[3]

2.      First, the adequate protection package offered to Axios is illusory and inadequate. Based on the Debtor's own Budget, the estate is burning cash and the collateral base is shrinking. The adequate protection package includes a replacement lien on collateral whose value is being consumed by the very operations the Cash Collateral is used to fund, and a superpriority claim that sits behind an uncapped, pre-Remedies-Notice professional fee carve-out while providing no cash payments, equity cushion analysis, or other concrete showing that Axios's interest in the Prepetition Collateral will not suffer a diminution in value that the package cannot repair.  In particular, when the $5 million that the Debtor seeks to obtain from L.A. Care is excluded (which has not yet been approved and is subject to objections)[4] the Debtor's Budget for the five-week period ending August 8th shows a loss of approximately $1.8 million.  Therefore, the Debtor has

---

[2] Pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), Axios consents to the entry of a final order by the Court in connection with this Objection and the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion.

[3] Axios consented to the Debtor's interim use of Cash Collateral through August 8, 2026 on the terms set forth in the Extension Notice, but did so expressly reserving all rights to contest the adequacy of its adequate protection and to object to any request for final relief. *See* D.I. 36 and 89 ¶ 4.

[4] *See* Debtor's emergency motion seeking Court approval to sell HQAF Receivables to L.A. Care, filed July 29, 2026 [D.I. 97].

not satisfied, and currently cannot satisfy, its burden to demonstrate that the proposed adequate protection package shield Axios from such diminution in the value of its collateral.[5]

3.       Part of the shortcoming in the adequate protection package is that the Debtor's Budget shows that its projected liquidity improvement depends substantially on a single $5,000,000 item being funded by L.A. Care.   Regardless of whether that transaction is characterized according to the Debtor as a true-sale, or a financing, the $5,000,000 receipt scheduled to be received this week is not revenue generated from operations and has implications on the Debtor's ability to utilize funds from future receivables.  The Debtor is financing ongoing operating losses through the L.A. Care advance.  The Budget's apparent liquidity improvement is therefore misleading from Axios's perspective, and overstates the practical protection available to Axios during the proposed final period.  If the Debtor operates at a loss (and does not replace receivables or inventory), the collateral declines and adequate protection should offset that decline. That is not being done here.  Moreover, as of the filing of this Objection, the Court has not yet approved the transaction by which the Debtor seeks to obtain the $5 million from L.A. Care.  A hearing on that motion is scheduled for Monday, August 3rd, and the proposed transaction will be subject to objections.

4.       Second, neither the Motion nor the Budget articulates any strategy for maximizing the value of the Debtor's assets beyond week-to-week survival (which currently requires funding above operational revenue to survive).  The Motion's own "Milestones" disclosure states "None," and the Debtor has proposed no marketing process, sale timeline, plan milestones, or other value-maximizing exit.  Continued, indefinite use of Cash Collateral without any mechanism to test the market or otherwise chart a path to a value-maximizing outcome is not an appropriate use of

---

[5] Below, Axios addresses and dispels the Debtor's assertions that Axios may not have validly acquired the Main Street Loan (defined below).

Axios's Cash Collateral on a final basis.  The reality is the Debtor's financial situation is precarious, and the Debtor must quickly determine the exit plan for this Debtor.  The Debtor cannot waste time and allow administrative expenses, such as professionals' fees, to escalate unhampered without a defined path to emergence, to the detriment of its prepetition creditors.  There is risk here that professional fees outsize this case.  The Debtor's cash must be conservatively utilized and the Court should not approve usage of Cash Collateral (including the payment of professional fees) without clear insight into the timing and usage of such funds, coupled with an exit strategy for this case.

5.      Third, the Budget provides visibility only through August 8, 2026, one day beyond the Final Hearing at which the Debtor asks the Court to bless cash collateral use on a *final* basis. A final order, by definition, is not self-limiting in duration the way the Interim Order is.  Axios and the Court have no information whatsoever about the Debtor's receipts, disbursements, or cash position after August 8, 2026, yet the Debtor asks the Court to authorize continued use of Axios's cash collateral indefinitely thereafter.  That request should be denied.  The Debtor needs to provide additional details on the post-August 8th budget in order for a determination to be made that such payments are necessary, appropriate, and in the best interest of the estate and its creditors.

6.      For these reasons, and as further explained below, the Court should deny entry of the Final Order in the form requested.

## FACTUAL BACKGROUND

### A.  Relevant Case History

7.      On July 4, 2026, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") commencing the above-captioned case (the "**Case**").

4

8.      On July 8, 2026, the Court held an interim hearing on, among other motions, the Motion, and on July 9, 2026, the Court entered the *Interim Order (I) Authorizing the Debtor to (A) Use Cash Collateral and (B) Grant Liens and Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Prepetition Secured Parties; (III) Scheduling a Final Hearing; and (IV) Granting Related Relief* [D.I. 57] (the "**Interim Cash Collateral Order**"), pursuant to which the Court, among other things, scheduled the final hearing on the Motion for August 7, 2026 ("**Final Hearing**").

9.      On July 22, 2026, the Debtor filed the Budget, providing for an amended 5-week cash flow forecast, through the week ending August 8, 2026 [D.I. 89-1].

### B.  The Main Street Loan

10.     Pursuant to the *Main Street Priority Loan Agreement* dated as of December 10, 2020 (the "**Main Street Loan**") among the Debtor and First Western Trust Bank ("**FWTB**"), as also evidenced by the *Promissory Note* made and delivered by the Debtor to FWTB dated as of December 10, 2020, in the original amount of $35,000,000, the Debtor is indebted to Axios, as successor in interest to FWTB, in the amount of not less than $50,878,944,[6] exclusive of fees, penalties, costs and other amounts that have accrued and continue to accrue.  Axios holds the original Promissory Note and Allonge assigning all of FWTB's interests thereunder to Axios.

11.     Pursuant to the *Pledge and Security Agreement* dated as of December 10, 2020 (the "**Security Agreement**"), between the Debtor, as grantor, and Axios, as successor in interest to FWTB, the Debtor's obligations under the Main Street Loan, Axios holds a valid, fully perfected first priority interest in and to substantially all assets of the Debtor, including the Debtor's rights to payment under the HQAF program.  Axios perfected through filing a UCC-1 financing statement

---

[6] Calculated as of September 30, 2026, assuming no additional capitalization.

with the Delaware Secretary of State, File No. 20254995547. Axios submits that there is no genuine basis to contest the validity, perfection, or enforceability of its lien.

12.    Pursuant to the *Unconditional Guaranty* dated December 10, 2020 (the "**Tuft Guaranty**"), between Paul R. Tuft ("**Mr. Tuft**"), as guarantor, and Axios, as successor in interest to FWTB, the Debtor's obligations under the Main Street Loan are personally, fully, and unconditionally guaranteed by Mr. Tuft, asserted by the Debtor to be the Executive Chairman and sole owner of the Debtor's hospital. Mr. Tuft's obligations under the Tuft Guaranty are secured by the *Securities Pledge Agreement* dated December 10, 2020 (the "**Pledge Agreement**"), pursuant to which Mr. Tuft pledged, assigned and delivered to Axios, as successor in interest to FWTB, and granted to Axios, as successor in interest to FWTB, a security interest in all (100%) of his equity interests in the Debtor (the "**Tuft Stock**"), together with all proceeds and substitutions thereof, all cash, securities and other monies and property paid thereon, all rights to subscribe for securities declared or granted in connection therewith, and all other cash and non-cash proceeds of the foregoing (the "**Pledged Collateral**").[7] Axios's security interest in the Tuft Stock and the Tuft Pledged Collateral is perfected by, among other things, Axios' possession of the stock certificate (Certificate No. 4) evidencing the Tuft Stock.

13.    Following an initial forbearance period after inception of the Main Street Loan, the Debtor defaulted under the Main Street Loan almost immediately when payments became due and has failed to make its monthly payments for years. During that time, the Debtor has amassed tens of millions of dollars in secured and unsecured debts owed to dozens of other creditors.

---

[7] The Pledged Collateral also includes any securities, instruments or distributions of any kind issuable, issued or received by Mr. Tuft upon conversion of, in respect of, or in exchange for any other Tuft Pledged Collateral, including, but not limited to those arising from a stock dividend, stock split, reclassification, reorganization, merger, consolidation, sale of assets or other exchange of securities or any dividends of other distributions of any kind upon or with respect to the Tuft Pledged Collateral.

14.     Thus, as stated in numerous notices of default issued to the Debtor, in 2023, 2024 and 2025, the Debtor is and has been in default of its obligations under the Main Street Loan.  Such defaults have never been cured by the Debtor.

15.     On May 13, 2025, FWTB commenced suit against the Debtor in the District Court of Denver County, Colorado (the "**Colorado Court**"), styled as *First Western Trust Bank v. Pacifica of the Valley Corporation and Paul R. Tuft*, Case No. 2025CV31732 (Division 209) (the "**Colorado Lawsuit**").  By Order of the Colorado Court dated November 5, 2025, granting *First Western Trust Bank's Verified Motion for Substitution of Plaintiff/Creditor Pursuant to C.R.C.P. 25(c)*, Axios was substituted as the plaintiff in the Colorado Lawsuit.  The Colorado Lawsuit was pending when the Debtor filed this chapter 11 case.[8]

16.     Notably, while in the Motion the Debtor purports to question whether Axios validly acquired the loan, that position is easily refuted.  The facts on this point are not complicated or subject to genuine dispute:

- The Debtor's verified filings in this bankruptcy case identify its ownership, capital and organizational structure.  Dr. Yacoub is not among the Debtor's owners nor among the Debtor's officers.  According to the Debtor's filings, Paul Tuft is the sole owner of the Debtor.

- The Debtor's and Mr. Tuft's challenge to Axios' standing as assignee of FWTB in the Colorado Lawsuit relied, directly or indirectly, on their assertion that as of the time of the assignment of the Main Street Loan in September 2025, Dr. Yacoub was an owner and/or had Control[9] over the Debtor sufficient to render him and therefore Axios, ineligible to hold the Main Street Loan under the CARES Act.  This notation is objectively false.

- In support of their allegations in the Colorado Lawsuit, the Debtor and Mr. Tuft relied on two documents to try to establish the assignment was void: (1) a complaint filed by Dr. Yacoub in state court in California alleging misrepresentations against

---

[8] Additional information concerning the Colorado Lawsuit are set forth in Axios' Limited Objection to the Motion, on an interim basis, filed on July 8, 2026 (D.I. 36], and is incorporated herein by reference to the extent applicable.

[9] "Control" for purposes of the CARES Act "means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ability to exercise voting power, by contract or otherwise." *Co-Lender Agreement under the Main Street Lending Program Standard Terms and Conditions*, issued on July 31, 2020.

Mr. Tuft and others (none of whom is the Debtor) and seeking money damages including the return of $5,000,000 that Dr. Yacoub sent to Mr. Tuft to purchase an interest in an entity called Praise Health,[10] which Dr. Yacoub never received; and (2) a joint venture agreement between the Debtor and Brain Health USA Van Nuys (BHUVN), a California company owned, directly or indirectly, by Dr. Yacoub, pursuant to which BHUVN provides educational services through the Debtor's residency program.

- While neither document establishes that Dr. Yacoub holds an ownership or Controlling interest in the Debtor, the Debtor and Mr. Tuft raised this issue in the context of Axios' summary judgment motion and the Court in the Colorado Lawsuit determined that the Debtor's and Tuft's challenge was facially sufficient for summary judgment to be denied. Axios submits that should this Court review those same documents coupled with the Debtor's sworn statements in this bankruptcy case, the Court would easily determine that these documents do *not* establish that Dr. Yacoub holds an ownership or Controlling interest in the Debtor – and therefore the challenge to the validity of the assignment fails.

## OBJECTIONS

I.    **Axios Is Not Adequately Protected as Required by Section 363(e)**

17.    Section 363(c)(2) of the Bankruptcy Code prohibits a debtor from using cash collateral "unless – (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). Section 363(e), in turn, requires "adequate protection" of the secured creditor's interest in the cash collateral to the extent that a debtor is permitted to use cash collateral without consent. 11 U.S.C. § 363(e) (requiring a bankruptcy court to "prohibit or condition such use . . . as is necessary to provide adequate protection of such interest"). As the Debtor's own Motion recognizes, adequate protection exists to "shield a secured creditor from diminution in the value of its interest in collateral during the period of a debtor's use," Motion ¶ 24 (*citing In re Carbone Cos.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008)), and "must be determined based upon equitable considerations arising from the particular facts of each

---

[10] The only relationship between Praise Health and the Debtor is that Mr. Tuft also represented to Dr. Yacoub that Mr. Tuft would transfer his ownership of four hospitals, one of which was the Debtor, into Praise Health. This too objectively never occurred. Tuft is still the sole owner of the Debtor.

proceeding," Motion ¶ 23 (*quoting* Collier on Bankruptcy).  The Debtor has the burden of proof on the issue of adequate protection. 11 U.S.C. § 363(p).

18.    The purpose of adequate protection for a creditor is to ensure that the creditor receives the value for which he bargained.  *In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564 (3d Cir. 1994).  New consideration must be given to a secured creditor to offset its diminution of interest as a result of any superpriority lien given to another party. *See Id*.  Reliance on speculative future events as adequate protection is inadequate.  The Debtor has not satisfied its burden here.

19.    The package offered to Axios does not satisfy that standard on a final basis for several reasons.

20.    Replacement liens on eroding collateral are not adequate protection standing alone. A replacement lien provides no protection where the underlying collateral, including cash that is being spent on operations reflecting Net Operating Cash Flow losses in multiple weeks of the Budget, is itself declining in value.  The Debtor's projections show the estate burning cash in multiple weeks.  The appearance of overall liquidity improvement is not real protection for Axios. Specifically, during the 5-week period, the Budget, absent the funding from L.A. Care (which is not certain to occur and is not free of strings),[11] shows the Debtor (while only paying the bare minimum necessary disbursements) would have incurred operating losses in 3 of the 5 weeks, and had total net cash flow losses of approximately $1.8 million, resulting in an ending cash balance falling well below its beginning cash balance of $240,798, to *negative* $1,559,711.  Therefore, based on operations, the Debtor's cash position available to cushion Axios's interest is materially

---

[11] Based on information currently known to Axios, Axios intends to assert a limited objection to the transaction pursuant to which L.A. Care is expected to provide the $5 million to the Debtor.  The current Budget only supports an emergency need for approximately $1.2 million.

worse than the headline ending balance suggests, with no corresponding increase in the adequate protection package to compensate for such loss in value.

21. The proposed adequate protection in the form of a superpriority claim also is inadequate. The superpriority claim is subordinate to an uncapped Carve-Out. It is delusive to think that a superpriority administrative claim under section 507(b) that is expressly subordinate to the Carve-Out, which is uncapped prior to delivery of a Remedies Notice, Interim Order ¶ 8(b)(iii), in a case in which the Debtor is operating at a loss, has practical value and constitutes adequate protection to a secured lender in Axios's position.

22. No equity cushion or other concrete valuation evidence has been offered. The Motion contains no appraisal, liquidation analysis, or going-concern valuation establishing that an equity cushion exists above the (at least) $50 million Main Street Loan balance owed to Axios. Absent such evidence, the Court cannot conclude that Axios's interest is protected merely because operations continue.

23. Despite the bundling of these with other forms of protection, the layering of multiple deficient protections on top of one another does not transform them into adequate protection. Moreover, the Debtor has indicated, as stated in the Motion, that other creditors have asserted secured interests in certain of the Debtor's assets, including the Debtor's personal property. Motion ¶¶ 18-19. Without determining the rights of each purportedly secured party and the value of the secured creditor's interests, a finding that the adequate protection package adequately protects Axios's interests would be speculative.

24. For these reasons, the current record does not support a finding that Axios's interest in the Prepetition Collateral is adequately protected, as section 363(e) requires for continued use, let alone use on a final, indefinite basis.

II.    **The Debtor Has Articulated No Strategy Beyond Week-to-Week Survival, and Continued Use of Cash Collateral Absent a Value-Maximizing Process Is Not Appropriate**

25.    Continued use of a secured creditor's cash collateral is not an end in itself; it is a tool to preserve and, where possible, maximize estate value for the benefit of all stakeholders, including secured creditors. Where a debtor cannot articulate any strategy for how continued cash collateral use translates into a value-maximizing outcome (whether through a chapter 11 plan, a section 363 sale, or otherwise) continued final-basis use of a secured creditor's collateral to fund an undefined, open-ended process is inappropriate. *See cf. United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365 (1988)(noting in context of analyzing protections to secured creditor seeking relief from stay that "there must be a reasonable possibility of a successful reorganization within a reasonable time", and lack of showing of realistic prospect would justify granting relief); *In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 568 (3d Cir. 1994) (refusing to hold that a debtor can pursue an effective reorganization by diminishing the value of its pre-petition creditor's lien interest).

26.    Here, the Milestones disclosure in the Motion states "None". No bid procedures motion, marketing process, investment banker retention, or sale timeline has been filed. Nearly a month after the Petition Date, and with the Debtor now seeking cash collateral authority through and beyond a final hearing, Axios and other parties in interest have no real visibility into whether the Debtor intends to seek to reorganize, sell substantially all of its assets under section 363, or pursue some other path; nor do they know when the Debtor will make that determination.

27.    Every week that passes without a defined strategy is a week in which Axios's collateral is placed at risk with no corresponding mechanism to test the market or otherwise confirm that continued operation, rather than a sale process, is in fact the value-maximizing course. With limited financial resources, the Debtor cannot afford to have professionals' fees continue to

11

increase while the Debtor has no direction for an exit. It's in the best interest of the estate and its stakeholders to ensure that estate value is not eroded during an open-ended period with no defined endpoint or decision-forcing mechanism. Unfettered approval to use cash collateral without transparent parameters on usage and milestones for this case is inappropriate and should not be condoned by the Court.

28.     Axios does not ask the Court to force a sale process on the Debtor at this stage. Axios does ask, however, that as a condition to any final order, the Debtor be required to articulate its strategy, and that the Court impose milestones, including, at minimum, a deadline for the Debtor to determine and disclose whether it intends to pursue a sale, a plan, or another path to emergence, sufficient to ensure that cash collateral use is not simply funding the status quo for the benefit of professionals (with the hope of a miracle to cover the personal tax liability of Mr. Tuft and Ms. Mayes) and at the expense of the estate and its stakeholders.

29.     Notably, as of the date of this Objection, there has been no hearing on the Debtor's request to obtain the funds from L.A. Care and while Axios agrees that the Debtor needs liquidity, Axios currently intends to object to such relief due to various inappropriate demands made by L.A. Care in exchange for agreeing to provide such funds; accordingly, it is uncertain whether the $5 million reflected on the Budget to be received from L.A. Care will occur.

III.   **The Budget's Truncated Horizon Cannot Support a Final Order of Unknown Duration**

30.     Bankruptcy Rule 4001(b)(1)(B) and Local Rule 4001-2(a)(i)(A) require disclosure of "the amount of cash collateral and purposes for [its] use." The Budget filed by the Debtor provides projected receipts and disbursements only through August 8, 2026, one day beyond the Final Hearing itself. While Axios acknowledges that the Budget was intended to enable the Debtor to obtain interim relief to the Final Hearing date, as of the time of filing this Objection the Debtor

has not provided an extended budget showing the Debtor's cash receipts and usage post August 8th.

31.    A final order authorizing use of cash collateral is not, by its nature, self-terminating the way an interim order tied to an Expiration Date is.  Absent a budget extending meaningfully beyond the Final Hearing, neither Axios nor the Court has any basis to assess: (a) what receipts the Debtor expects to collect after August 8, 2026; (b) what operating and non-operating disbursements the Debtor intends to make; (c) whether Net Cash Flow is projected to be positive or negative in that period; or (d) whether the adequate protection package is sufficient once the only budget of record has expired.

32.    Granting final approval on this record would effectively authorize indefinite, unbudgeted use of Axios's cash collateral beyond August 8, 2026, with no mechanism for the Court, Axios or other stakeholders to evaluate ongoing appropriateness other than the after-the-fact Variance Report process contemplated by Interim Order ¶ 3, which tests actual performance against a budget that will no longer exist.

33.    At minimum, the Court should require the Debtor to file and serve an updated budget covering a commercially reasonable period beyond the Final Hearing, consistent with the rolling, forward-looking budgeting practice reflected in the Debtor's own 5-week budget to date, before any final order is entered, or should condition entry of the Final Order on periodic budget updates and a corresponding right for Axios and other stakeholders to be heard if actual results or updated projections depart materially from what has been disclosed.

34.    Axios reserves its right to challenge any new budget, including whether expenses identified in any new budget are necessary and appropriate, and without such information Axios does not consent to the Debtor's use of cash collateral on a final basis.

**RESERVATION OF RIGHTS**

35.    Axios hereby expressly reserves the right to (a) amend or supplement this Objection, to object to Professional Fees or other amounts sought to be paid pursuant to the Carve-Out, to challenge the validity, extent, or priority of any lien or claim asserted by any other Prepetition Secured Party, to object to any new budget provided by the Debtor and to raise such further objections as may be appropriate based on evidence adduced at or before the Final Hearing and otherwise take any additional or further action with respect to the subject matter hereof, (b) be heard before this Court to raise additional arguments or issues in connection therewith or in connection with the Motion, and (c) take discovery concerning the Motion.  Nothing herein is intended to nor shall be construed as consent by Axios to the use of its Cash Collateral on any basis other than as may be ordered by the Court, or a waiver or limitation of any of Axios' claims, rights or remedies regarding the validity, extent, priority, or perfection of any lien asserted against the Debtor, all of which are fully reserved and preserved.

**RAINES FELDMAN LITTRELL LLP**

Dated: July 31, 2026
       Wilmington, Delaware

/s/ Thomas J. Francella, Jr.
Thomas J. Francella, Jr. (No. 3835)
Matthew P. Milana (No.  6681)
824 North Market Street, Suite 805
Wilmington, DE 19801
Telephone: (302) 772-5803
Email: tfrancella@raineslaw.com
          mmilana@raineslaw.com
and

Hamid R. Rafatjoo, Esquire (*pro hac vice*)
Raines Feldman Littrell LLP
4675 MacArthur Ct., Suite 1550
Newport Beach, CA 92660
hrafatjoo@raineslaw.com

and

Carollynn H.G. Callari, Esquire (*pro hac vice*)
Raines Feldman Littrell LLP
1350 Avenue of the Americas, 22nd Floor
New York, NY 10019
ccallari@raineslaw.com