# EXHIBIT C

## SALE AND ASSIGNMENT AGREEMENT

**THIS SALE AND ASSIGNMENT AGREEMENT** ("Agreement") is dated as of September 29, 2025 (the "Effective Date"), between First Western Trust Bank, a Colorado state banking corporation and holder of the Term Note (defined below) ("Assignor") and Axios Capital Solutions, LLC, a Delaware limited liability company ("Assignee" and together with Assignor, the "Parties").

### WITNESSETH:

**WHEREAS**, Assignor and Pacifica of the Valley Corporation, a Delaware Corporation ("Borrower") are parties to that certain Main Street Priority Loan Agreement, dated as of December 10, 2020, between Assignor, as lender, and Borrower, pursuant to which Assignor provided Borrower a term loan in the principal amount of $35,000,000.00 (the "Term Loan"), all upon certain terms and conditions (as amended and as the same may from time to time be further amended, restated or otherwise modified, the "Credit Agreement");

**WHEREAS**, Paul R. Tuft, an individual ("Guarantor") entered into that certain Unconditional Guaranty of the Term Loan ("Guaranty");

**WHEREAS**, to evidence Borrower's repayment obligations under the Credit Agreement, Borrower executed a Term Note in favor of Assignor dated December 10, 2020, in the original principal amount of $35,000,000.00 (the "Term Note");

**WHEREAS**, subsequent to the execution of the Credit Agreement, Assignor, as the seller, and MS Facilities 2020 LLC, as successor to MS Facilities LLC, as the buyer ("MS Facilities"), entered into that certain Participation Agreement, dated on or about December 18, 2020 (the "Participation Agreement"), pursuant to which Assignor sold and MS Facilities purchased an undivided participation interest in and to a purchase amount of the Term Loan equal to 95% of the Term Loan made under the Credit Agreement (the "Participation");

**WHEREAS,** Borrower is in default of the Term Loan and Assignor initiated suit against Borrower and Guarantor in the matter captioned First Western Trust Bank, a Colorado Corporation v. Pacifica of the Valley Corporation, a Delaware Corporation, and Paul R. Tuft, an Individual, in the District Court, Denver County, Colorado, Case No. 2025CV31732 (the "Pending Lawsuit").

**WHEREAS**, contemporaneously herewith, Assignor and MS Facilities entered into that certain Participation Sale Agreement, dated as of the Effective Date hereof (the "Participation Sale Agreement") pursuant to which MS Facilities sold and assigned to Assignor, all of MS Facilities' right, title and interest in and to the Participation and its related rights under the Participation Agreement;

**WHEREAS**, the current outstanding principal balance of the Term Note as of the Effective Date hereof is $36,119,591.82;

**WHEREAS**, after consummation of the transactions contemplated by the Participation Sale Agreement, which shall occur contemporaneously herewith, Assignor is now the sole legal and beneficial owner of the Term Loan, Term Note, Guaranty, and Credit Agreement and now desires to assign, transfer, and convey all of its right, title, and interest, legal and beneficial, in and

1

4922-4447-4474.4

to the Term Loan, Term Note, Guaranty, the Credit Agreement, and any related documents (collectively, "Loan Documents") to Assignee ("Assignment"), and Assignee desires to accept such Assignment in exchange for and in consideration of Assignee paying to Assignor the sum of $1,950,000.00 (the "Purchase Price") by wire transfer in immediately available funds pursuant to the instructions set forth on Exhibit A hereto; and

**WHEREAS,** prior to the Effective Date, Assignee has provided evidence to Assignor that Assignee has deposited 10% of the purchase price (the "Deposit") in an account maintained by counsel for Assignee (the foregoing recitals collectively, the "Recitals").

**NOW, THEREFORE, BE IT RESOLVED,** that the Parties, for good and valuable consideration, the adequacy and receipt of which is hereby acknowledged, agree as follows:

**1.      Assignment and Assumption**

1.1.      As consideration for the Purchase Price paid by Assignee to the Assignor on the Effective Date, Assignor hereby assigns, transfers, and conveys to Assignee all of the Assignor's right, title, and interest, legal and beneficial, in and to, and obligations under, the Term Note, Guaranty, Credit Agreement, Security Agreement, Pledge Agreement (the Security Agreement and Pledge Agreement, collectively, the "Collateral Documents"), the other Loan Documents, and all other documents, instruments and agreements delivered in connection therewith, (collectively, the "Assigned Documents") effective as of the Effective Date, without recourse or any warranty, and, except as expressly provided in this Agreement, without representation or warranty by Assignor (such right, title, interest and obligations being assigned and transferred, the "Assigned Interest").

1.2.      Assignee hereby accepts the assignment, transfer, and conveyance of all of the Assigned Interest, effective as of the Effective Date.

1.3.      Administration of the Term Loan from and after the Effective Date is the exclusive responsibility of Assignee. Assignee shall be solely responsible for obtaining any policies of insurance that Assignee may wish to procure relating to the Term Loan or collateral securing the Term Loan. Assignor shall have no obligation to continue any policy of insurance that it may have, if any. Assignee shall be responsible for any and all amounts payable to any third parties, including receivers, receiver's attorneys, court filing fees and costs irrespective of when incurred. Assignor shall have no duty or responsibility to assist Assignee in any efforts to collect the Term Loan. Assignee will indemnify, defend and hold Assignor and its Released Parties, defined herein, harmless from and against any and all losses, liabilities, damages, costs and obligations, or actions or claims in respect thereof, including attorney fees, which Assignor may suffer or incur arising out of or related to the Term Loan, the Assigned Documents, and the Pending Lawsuit from and after the Effective Date.

**2.      Assignor's Representations**

2.1.      Assignor represents to Assignee as of the Effective Date hereof that:

2.1.1.      Assignor (i) is duly organized and validly existing under the laws of its jurisdiction of organization or incorporation, (ii) is in good standing under

2

such laws and (iii) has full power and authority to execute, deliver and perform its obligations under this Agreement and under the Participation Sale Agreement. No consent of any other person, entity, or governmental authority (including any authority administering or regulating the Main Street Priority Loan Facility in the instant matter) is required before the execution and delivery of this Agreement and the performance of the Assignor's obligations hereunder other than the consent of the Federal Reserve Bank of Boston as the administrator of the Main Street Priority Loan Facility (the "MS Consent"), which has been duly granted.

2.1.2. To Assignor's knowledge, neither the consummation of the transactions contemplated by this Agreement or the Participation Sale Agreement nor Assignor's execution, delivery, and performance of this Agreement or the Participation Sale Agreement have or will result in a breach or violation of any provision of (i) Assignor's organizational documents, (ii) any statute, law, writ, order, rule or regulation of any governmental authority applicable to Assignor, including, without limitation, the Main Street Priority Loan Facility, (iii) any judgment, injunction, decree or determination of any governmental authority applicable to Assignor, or (iv) any contract, indenture, mortgage, loan agreement, note, lease or other agreement, document or instrument by which Assignor may be a party, by which Assignor may be bound or to which any of the assets of Assignor are subject.

2.1.3. The Agreement has been duly and validly authorized, executed and delivered by Assignor and is the legal, valid and binding obligation of Assignor, enforceable against Assignor in accordance with its terms.

2.1.4. The Recitals to this Agreement are true, accurate and correct in all respects. Without limitation, the outstanding principal amount of and accrued interest under the Term Note is accurately stated in the Recitals.

2.1.5. Assignor is the legal and beneficial owner of the Assigned Interest.

2.1.6. Assignor has not pledged, assigned (other than pursuant to this Agreement), or granted any lien or security interest in the Assigned Interest, or promised or agreed to do so, now or in the future, and the Assigned Interest is not subject to any other encumbrance or other adverse claim.

2.1.7. Except for consents and waivers given by lenders (i.e., First Western Trust Bank and Federal Reserve Bank of Boston) generally pursuant to and in accordance with the Credit Agreement and as set forth in the Assigned Documents listed in Exhibit D, Assignor has not given its consent to change, nor has it waived, any term or provision of any Assigned Document including, but not limited to, with respect to the

3

amount or time of any payment of principal or the rate or time of any payment of interest.

2.1.8. The transactions contemplated under the Participation Sale Agreement were consummated concurrently herewith in full in accordance with the terms of the Participation Sale Agreement, and the purchase price and all other consideration owing to MS Facilities under the Participation Sale Agreement will be paid in full concurrently herewith by Assignor upon receipt and distribution of the proceeds of the Purchase Price hereunder. Such transactions terminated all of MS Facilities' participation interests in the Term Loan (other than any express provisions of the Loan Documents which by their terms continue to benefit MS Facilities as a former participant). Assignor has been at all times the sole lender under the Loan Documents and, other than pursuant to the Participation Agreement, entered into no other participations conveying any participation interest or other interests in the Term Loan or Loan Documents with any other person or entity.

2.1.9. The MS Consent is sufficient, upon Assignor's distribution of all proceeds of the Purchase Price due to MS Facilities, for the release of the Assigned Interest from any obligations, commitments and requirements of the Main Street Priority Loan Facility; provided that, for the purposes of the Main Street Priority Loan Facility Borrower Certifications and Covenants, the Term Loan shall be considered "no longer outstanding" as of the Effective Date.

2.2. Except as expressly stated in this Agreement, (A) Assignor makes no representations or warranties, express or implied, with respect to the Assigned Interests and (B) assumes no responsibility with respect to (i) any statements, representations or warranties made in or in connection with any Assigned Document or any other instrument or document furnished pursuant thereto, (ii) the execution, validity, legality, enforceability, sufficiency, genuineness, value, marketability, condition, or profitability of, or the perfection or priority of any lien or security interest created or purported to be created under or in connection with, any Assigned Document or any other instrument or document furnished pursuant thereto or any collateral thereunder, (iii) the performance or observance by Borrower, any of its affiliates or any other person or entity of any of their respective obligations under the Assigned Documents or any other instrument or document furnished pursuant thereto, (iv) the financial condition of Borrower, any of its affiliates or any other person or entity obligated, or purportedly obligated, in respect of any Assigned Document or any other instrument or document furnished pursuant thereto, (v) title or ownership to or of any collateral, or any portion or part thereof, or the validity, perfection or priority of any lien on the collateral or any part thereof, (vi) tax or accounting consequences or valuations, including, without limitation, the tax status of any loan or the Assigned Interest, (vii) governmental laws, governmental approvals and any other restrictions applicable to the Assigned Interest or any part thereof, Borrower or any affiliate thereof; (viii) the financial condition or credit-worthiness of Borrower, or any affiliate thereof; (ix) claims by Borrower or any affiliate thereof against the Assignor under any Assigned Document or otherwise, or claims by third parties against Assignor or Borrower, or any affiliate of either of the foregoing; (x) the compliance by Assignor with any and all applicable federal, state, or local laws, and all rules, regulations or

4

ordinances promulgated pursuant thereto, pertaining to or in any manner related to the Assigned Interest, Borrower, or any affiliate thereof; and (xi) compliance of the Assigned Interest with any state or federal law, or regulations or guidance applicable thereto; including without limitation usury laws, or the applicability or non-applicability of state usury laws and whether the interest rate provided for in the Term Note is higher than allowed under the governing law of the State of Colorado.

2.3.    Assignor acknowledges that: (a) its sale and assignment of the Assigned Interests to Assignee is irrevocable; (b) Assignor shall have no recourse to the Assigned Interests.

2.4.    Assignor has delivered to Assignee a copy of the original Term Note (which has not been amended, restated, supplemented, modified, or replaced), evidencing the Term Loan and will transfer to Assignee any cash collateral held by Assignor pursuant to the instructions set forth on Exhibit C hereto.

**3.    Assignee's Representations**

3.1.    Assignee represents to Assignor as of the date hereof that:

3.1.1.   Assignee (i) is duly organized and validly existing under the laws of its jurisdiction of organization or incorporation, (ii) is in good standing under such laws and (iii) has full power and authority to execute, deliver and perform its obligations under this Agreement.

3.1.2.   Neither the Assignee nor any of its affiliates has any ownership, management, or control over Borrower, Guarantor, or any other Borrower affiliates, and neither the Borrower, Guarantor or any of their affiliates has any ownership, management, or control over Assignee or its affiliates.

3.1.3.   Assignee's execution, delivery, and performance of the Agreement will not result in a breach or violation of any provision of (i) Assignee's organizational documents, (ii) any statute, law, writ, order, rule or regulation of any governmental authority applicable to Assignee, (iii) any judgment, injunction, decree or determination of any governmental authority applicable to Assignee or (iv) any contract, indenture, mortgage, loan agreement, note, lease or other agreement, document or instrument by which Assignee may be a party, by which Assignee may be bound or to which any of the assets of Assignee are subject.

3.1.4.   This Agreement has been duly and validly authorized, executed and delivered by Assignee and is the legal, valid and binding obligation of Assignee, enforceable against Assignee in accordance with its terms.

3.1.5.   Assignee acknowledges that the Purchase Price paid under this Agreement for the purchase and assignment of the Assigned Interests may differ both in kind and amount from any payments received in respect of the Assigned Interests.

5

4922-4447-4474.4

3.1.6.   Assignee (i) is a sophisticated entity with respect to the purchase of the Assigned Interests and the assumption of the Assigned Interests, (ii) is able to bear the economic risk associated with the purchase and assumption of the Assigned Interests, (iii) has adequate information concerning the business and financial condition of Borrower and Guarantors to make an informed decision regarding the purchase and assumption of the Assigned Interests, (iv) has such knowledge and experience, and has made investments of a similar nature, so as to be aware of the risks and uncertainties inherent in the purchase of rights and assumption of liabilities of the type contemplated in this Agreement and (v) has independently and without reliance upon Assignor, and based on such information as Assignee has deemed appropriate, made its own analysis and decision to enter into this Agreement, except that Assignee has relied upon Assignor's express representations in this Agreement. Assignee acknowledges that Assignor has not given Assignee any investment advice, credit information, or opinion on whether the purchase and assumption of the Assigned Interests is prudent.

3.1.7.   Assignee acknowledges that Assignor has disclosed to Assignee that Borrower failed to satisfy the obligations under the Assigned Documents, and Borrower is in default under the Term Loan and the Assigned Documents, Borrower may have claims, defenses, or counterclaims regarding the performance of its obligations under the Assigned Documents and Assignee's purchase of the Term Loan is subject to any such claims, defenses or counterclaims which may arise and Assignee shall have no recourse against Assignor if such claims, defenses or counterclaims are raised.

3.1.8.   Except as otherwise provided in this Agreement, Assignee has not relied and will not rely on Assignor to furnish or make available any documents or other information regarding the credit, affairs, financial condition or business of Borrower or any Guarantor, or any other matter concerning Borrower or any Guarantor.

3.1.9.   Assignee acknowledges and understands that the Assigned Interest is being transferred "**AS-IS**" and "**WITH ALL FAULTS,**" without any representation or warranty whatsoever as to either condition, fitness for any particular purpose, merchantability or any other warranty, express or implied, and Assignor specifically disclaims any warranty, representation, oral or written, past or present, express or implied, concerning the Assigned Interest, Borrower, or any affiliate thereof, except for the representations and warranties expressly provided in this Agreement.

3.1.10. Assignee shall be bound by the provisions of the Assigned Documents as Lender thereunder (as such term is defined therein) and, to the extent of the Assigned Interest, shall have the obligations of Lender thereunder, from and after the Effective Date.

3.1.11. Neither Assignee, nor to the knowledge of Assignee, any of its subsidiaries, nor any director, officer, employee, controlled affiliate or

representative of Assignee or any of its subsidiaries is, and shall not be at any time, a person with whom Assignor is restricted from doing business under the regulations of the Office of Foreign Asset Control ("OFAC") of the Department of Treasury of the United States of America (including, those persons named on OFAC's Specially Designated and Blocked Persons list) or under any statute, executive order (including, the September 23, 2001 Executive Order Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism), or other governmental action and is not and shall not engage in any dealings or transactions or otherwise be associated with such persons.

3.2.    Except as expressly stated in this Agreement, Assignee makes no representations or warranties, express or implied, with respect to the Assigned Interests.

3.3.    Assignee acknowledges that (a) Assignor's sale of the Assigned Interest to Assignee, and Assignee's assumption of the same, are irrevocable and (b) Assignee shall have no recourse to Assignor (other than any recourse arising from any breach of Assignor's obligations under this Agreement or breach of any representation or warranty made by Assignor hereunder).

## 4.    Conditions Precedent to Effective Date

4.1.    Except as otherwise provided for in this Agreement, the "Effective Date" (sometimes herein referred to as the "Closing") shall be the date that each of the following conditions has been met, which shall not be later than September 30, 2025:

4.1.1.    Participation Sale Agreement. MS Facilities and Assignor shall have executed the Participation Sale Agreement, and all payments required to be made under the Participation Sale Agreement to MS Facilities shall have been paid in full from the distribution of the net proceeds of the Purchase Price hereunder such that the Participation Sale Agreement is effective.

4.1.2.    Payment of Purchase Price. Assignee shall have paid (or in the case of the Deposit, caused its counsel to transfer) both the Deposit and the balance of the Purchase Price, by wire transfer in immediately available funds, to Assignor pursuant to the instructions set forth on Exhibit A hereto.

4.1.3.    MS Consent. Assignee shall be reasonably satisfied that upon consummation of this Agreement, the Assigned Interest shall not be subject to any regulation, commitment, or obligation under the Main Street Priority Loan Facility; provided that, for purposes of the Main Street Priority Loan Facility Borrower Certifications and Covenants, the Term Loan shall be considered "no longer outstanding" as of the Effective Date.

7

4.1.4. <u>Allonge and Assignments</u>. Assignor and Assignee, as applicable, shall have executed an Allonge to Promissory note regarding the Term Note and an Omnibus Assignment including the security instruments regarding the Collateral Documents (all in accordance with the forms attached hereto as <u>Exhibits E, and F</u>).

## 5. Release

5.1. Assignee does hereby fully, forever and unconditionally and irrevocably release, discharge, remise and acquit  Assignor and MS Facilities and their past and present parent, subsidiary, and affiliate corporations or other legal entities, and the respective past and present officers, directors, shareholders, agents, managers, members, partners and employees of each and all of the foregoing entities, and their respective successors, heirs, assigns and any other person or entity now, previously, or hereafter affiliated with the same (the Assignor and MS Facilities, together with each and all said parent, subsidiary and affiliated corporations or other legal entities, officers, directors, shareholders, agents, managers, members, partners and employees, shall be collectively referred to herein below as the "<u>Released Parties</u>" and each such reference shall refer jointly and severally to each and all of the Assignor, MS Facilities and such other persons and entities), of, from and against any and all claims, demands or causes of action of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind, type nature or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, with the limited exception of claims against the Released Parties for fraud or intentional misrepresentation, in each case to which Assignee, MS Facilities, or any of their affiliates, are or at any time in the future become entitled to (collectively, "<u>Released Claims</u>"), arising from or out of, connected with, or relating to the Term Note, the Assigned Documents, or any other document or filing in connection therewith (the foregoing release being herein called Assignee's "<u>General Release</u>").

In consideration of Assignor entering into this Agreement, this General Release of the Released Parties shall be effective as of the Effective Date. In addition, it is Assignee's intention that upon the Effective Date, this General Release of the Released Parties shall include all Released Claims up to the Effective Date. In the event the closing of this Agreement does not occur, for any reason other than the Assignor's breach hereof, the Assignee understands and agrees that the General Release of the Released Parties, as of the date of this Agreement, shall remain in full force and effect.

## 6. Authorization to File Financing Statements.

6.1. Assignor hereby authorizes Assignee, consistent with the Credit Agreement and Section 4.1 of the Security Agreement, to file financing statements and/or amendments thereto with all appropriate jurisdictions to perfect or protect Assignee's interest or rights hereunder and under the Assigned Interests.

8

### 7. Costs and Expenses; Brokers

7.1. The Borrower will be responsible for the Assignor's legal and other costs and expenses incurred in connection with the administration of the Term Loan and collection of funds under and pursuant to the terms of the Credit Agreement.

7.2. Assignor and Assignee warrant and represent to each other that neither has dealt with any broker or salesperson in connection with this transaction except Piper Sandler Loan Strategies, LLC, which represents only Assignor (the "Broker"). If the Closing occurs, Assignor shall be responsible for the payment of a brokerage commission to Broker pursuant to the terms of a separate written agreement between Assignor and Broker. If any other person shall assert a claim to a finder's fee, brokerage commission, or any other compensation on account of alleged employment as a finder or broker or performance of services as a finder or broker in connection with this transaction, the Party under whom the finder or broker is claiming shall indemnify and hold the other Party harmless from and against any such claim and all costs, expenses and liabilities incurred in connection with such claim or any action or proceeding brought on such claim, including, but not limited to, counsel and witness fees and court costs in defending against such claim. This indemnity shall survive the Closing or termination of this Agreement and the escrow.

### 8. Additional Actions at Closing

8.1. Substantially contemporaneous with Closing, the parties shall cooperate to file a request for an order substituting Assignee in place of Assignor as the plaintiff in the Pending Lawsuit.

8.2. Substantially contemporaneous with Closing, Assignor shall notify Borrower and Guarantor in writing of the sale effectuated by the Closing.

8.3. Substantially contemporaneous with Closing, Assignor shall notify the junior creditors, as a result of the sale effectuated by the Closing, of Assignee's succession to Assignor as the senior creditor pursuant to the Lien Subordination Agreement, dated December 17, 2020, between Reliq Pacifica, LLC, Beverly Gemini Investments, LLC, Taking The 5th, LLC, and Fifth/Arizona Investors, LLC, together as junior creditors thereunder, and Assignor as senior creditor thereunder.

### 9. Disclosure

9.1. Assignee agrees that, without the prior consent of the Assignor, the Assignee shall not disclose the contents of this Agreement (including, without limitation, the Purchase Price) to any person or entity, except that Assignee may make any such disclosure (a) to its affiliates and its affiliates' respective directors, officers, counsel, auditors and other professional advisors who have been instructed, and have agreed, to comply with the non-disclosure provisions hereof; (b) as shall be required to implement or enforce this Agreement; (c) in any statement or testimony pursuant to a subpoena or order by any governmental authority or as otherwise may be required by any law, rule or regulation; (d) upon the request or demand of any governmental authority having or asserting jurisdiction over Assignee, or (e) in connection with the exercise of any right or remedy of Assignee against  Borrower, any Guarantor or other obligor of the Term Loan arising under the Loan Documents or applicable law, including in connection with any litigation or bankruptcy proceeding involving Borrower, any Guarantor or other obligor, including

9

any response to any pleadings or other action taken by Borrower, any Guarantor or other obligor, or any creditors of any of the foregoing.

## 10. Parties' Relationships

10.1. The relationship between Assignor and Assignee shall be that of an assignor and assignee and/or seller and buyer. Neither is a trustee or agent for the other, nor does either have any fiduciary obligations to the other. This Agreement shall not be construed to create a partnership or joint venture between the Parties.

## 11. Interpretation; Incorporation of Recitals

11.1. This Agreement shall be deemed to have been jointly drafted by the Parties and no provision of it shall be interpreted or construed for or against either Party because such Party actually or purportedly prepared or requested such provision, any other provision or the Agreement as a whole.

11.2. The Recitals to this Agreement form an integral part of this Agreement and are incorporated herein in full.

## 12. Entire Agreement

12.1. This Agreement is the entire agreement between Assignor and Assignee hereto with respect to the matters contemplated herein and shall not be modified or amended except in a writing signed by the Parties.

## 13. Governing Law, Jury Trial, Jurisdiction

13.1. This Agreement shall be governed by and construed under the laws of the State of Colorado without giving effect to any choice or conflict of law provision or rule (whether of the State of Colorado or any other jurisdiction) that would cause the application of laws of any jurisdiction other than those of the State of Colorado.

13.2. THE PARTIES HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT THAT THEY MAY HAVE TO TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION, OR IN ANY LEGAL PROCEEDING, DIRECTLY OR INDIRECTLY BASED UPON OR ARISING OUT OF THIS AGREEMENT (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF THE OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTY HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

13.3. The Parties irrevocably and unconditionally submit to and accept the exclusive jurisdiction of state and federal courts having jurisdiction in the City and County of Denver for any action, suit or proceeding arising out of or based upon this Agreement or any

10

4922-4447-4474.4

matter relating to it and waive any objection that they may have to the laying of venue in any such court or that any such court is an inconvenient forum or does not have personal jurisdiction over them.

**14.    Counterparts**

14.1.   This Agreement, and any of the other agreements, documents and instruments contemplated hereby, may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Delivery of an executed signature page to this Agreement, and any of the other agreements, documents and instruments contemplated hereby, by facsimile or other electronic transmission shall be effective as delivery of a manually signed counterpart hereof or thereof.

**15.**    Notices.  Any notice which a Party is required or may desire to give the other shall be in writing and may be sent by (a) electronic mail, (b) personal delivery, (c) United States registered or certified mail, return receipt requested, postage prepaid, or (d) Federal Express or similar generally recognized overnight carrier regularly providing proof of delivery, addressed as follows (subject to the right of a party to designate a different address for itself by notice similarly given):

To Assignor:    First Western Trust Bank
1900 Sixteenth Street
Denver CO 80202
Attention: Piper Pierce

To Assignee:    Axios Capital Solutions, LLC
c/o Law Office of Michael Eskander, PLC
1921 S. Alma School Rd., #310
Mesa, AZ 85210
Attention: Michael Eskander, Esq.
Email: michael@eskanderlaw.com

With a copy to:   Drew Demers, Esq.
Foster Graham Milstein & Calisher, LLP
360 South Garfield Street, Sixth Floor
Denver, CO 80209
Telephone: 303.333.9810
Email: ddemers@fostergraham.com

and

Michael S. Eskander, Esq.
Law Office of Michael Eskander, PLC
1921 S. Alma School Rd.,#310
Mesa, AZ 85210
Telephone: 480.491.4400
Email: michael@eskanderlaw.com

**16.**    Further Assurances.  Each Party will, whenever and as often as it shall be requested to do so by the others, cause to be executed, acknowledged or delivered any and all such

11

further instruments and documents as may be necessary or proper, in the reasonable opinion of the requesting Party, in order to carry out the intent and purpose of this Agreement.  If after the sale of the Loan either Party fails to perform its obligations which expressly survive the Closing pursuant to this Agreement, then the other Party may exercise any remedies available to it at law or in equity, in any order it deems appropriate in its sole and absolute discretion, including but not limited to seeking specific performance or actual damages.

17.    No Third Party Beneficiaries.  This Agreement shall be binding upon and shall inure to the benefit of the Parties and their successors and assigns.  However, nothing in this Agreement, expressed or implied, is intended to confer any rights or remedies upon any other person, except for MS Facilities.  Notwithstanding the foregoing, this Agreement shall be binding upon and shall inure to the benefit of the Parties and their successors and assigns.

18.    Notice to Borrower.  No later than ten (10) business days after the Closing, Assignee shall execute and deliver a notice to Borrower and Guarantor, informing Borrower that the Assigned Loan has been sold to Buyer and that Buyer has succeeded to all of Assignor's rights and obligations of the Assigned Interests under the Assigned Documents.

19.    Closing.  For purposes of this Agreement, the closing of this transaction ("Close" or "Closing") shall be on the Effective Date, which shall be the date Assignor and Assignee have executed this Agreement and the contemporaneous delivery of Assigned Documents.

20.    **Attorneys' Fees**

20.1.   In the event of any litigation involving the Parties to this Agreement to enforce any provision of this Agreement, to enforce any remedy available upon default under this Agreement, or seeking a declaration of the rights of either Party under this Agreement, the prevailing Party shall be entitled to recover from the other reasonable attorneys' fees and costs, including reasonable costs of investigation, preparation and professional or expert consultation incurred by reason of such litigation.  All other attorneys' fees and costs relating to this Agreement and the transactions contemplated hereby shall be borne by the Party incurring the same.

**[Signature Page to Follow]**

4922-4447-4474.4

IN WITNESS WHEREOF, the Parties hereto set their hands effective as of the Effective Date.


ASSIGNOR

**FIRST WESTERN TRUST BANK**
a Colorado state banking corporation

By: _____
Name: Piper Pierce
Its: Authorized Agent

ASSIGNEE

**AXIOS CAPITAL SOLUTIONS, LLC**
a Delaware limited liability company


By: _____
Name: Sophia Kozman
Its: Sole Member

Signature Page to
Sale and Assignment Agreement

IN WITNESS WHEREOF, the Parties hereto set their hands effective as of the Effective Date.

ASSIGNOR                                          ASSIGNEE

**FIRST WESTERN TRUST BANK**              **AXIOS CAPITAL SOLUTIONS, LLC**
a Colorado state banking corporation        a Delaware limited liability company

By:_____              By: *Sophia Kozman*_____
Name: Piper Pierce                                Name: Sophia Kozman
Its: Authorized Agent                             Its: Sole Member

4922-4447-4474.4

EXHIBIT A

Purchase Price Wire Instructions



**WIRE INSTRUCTIONS FOR LENDING CLIENT OF FIRST WESTERN TRUST**

First Western Trust
1900 16th St. Suite 500
Denver, CO 80202
Phone: 303.531.8100

| | |
|---|---|
| ABA Number: | 102007011 |
| Client Name: | First Western Trust |
| Account Number: | ██████0 |
| For Further Credit: | Pacifica of the Valley Corporation |
| | Account Number ████████4 |
| | Attn: ██i ████y |

Exhibit A to
Sale and Assignment Agreement

4922-4447-4474.4

# EXHIBIT B

[Reserved]

Exhibit B to
Sale and Assignment Agreement

## EXHIBIT C

## Cash Collateral Instructions

| Deposit/Transfer Instructions | Amount |
|---|---|
| None/not applicable | None/not applicable |

Exhibit C to
Sale and Assignment Agreement

4922-4447-4474.4

## EXHIBIT D

### Assigned Documents

1)      Main Street Priority Loan Agreement, dated December 10, 2020, between First Western Trust Bank, a Colorado corporation ("Assignor") and Pacifica of the Valley Corporation, a Delaware corporation ("Borrower")

2)      Promissory Note made by Borrower and payable to Assignor, dated December 10, 2020, in the original principal amount of Thirty-Five Million and No/100 Dollars ($35,000,000.00)

3)      UCC Financing Statement, filed December 18, 2020, with the Delaware Department of State identifying Borrower as debtor and Assignor as secured party, Initial Filing No. 2020 8975379

4)      Pledge and Security Agreement, dated December 10, 2020, between Borrower, as grantor, and Assignor

5)      Securities Pledge Agreement, dated December 10, 2020, between Paul R. Tuft, an Individual, as grantor, and Assignor (copy of share certificate attached, original to follow)

6)      Lien Subordination Agreement, dated December 17, 2020, between Reliq Pacifica, LLC, Beverly Gemini Investments, LLC, Taking The 5th, LLC, and Fifth/Arizona Investors, LLC, together as junior creditor, and Assignor

7)      Unconditional Guaranty, dated December 10, 2020, between Paul R. Tuft, an individual, as guarantor, and Assignor

4922-4447-4474.4

**EXHIBIT E**

<u>Allonge</u>

4922-4447-4474.4

**ALLONGE**

FOR VALUE RECEIVED, FIRST WESTERN TRUST BANK, a Colorado state banking corporation (the "Assignor") as of the date hereof, hereby endorswes, assigns, conveys and transfers unto AXIOS CAPITAL SOLUTIONS, LLC, a Delaware limited liabilty company (the "Assignee"), as defined in the Sale and Assignment Agreement between Assignor and Assignee, the within Note and any and all of the Assignor's right, title and interest in and to the Note and the right to collect all sums due thereunder. All terms used and not defined in this Allonge have the meaning given to them in the Note.

IN WITNESS WHEREOF, the undersigned has delivered this Allonge as of September 29, 2025.

**ASSIGNOR:**

First Western Trust Bank,
a Colorado corporation

By: _____*EXHIBIT ONLY*_____
Name: Piper Pierce
Its: Authorized Agent

4899-6500-4394.1

**EXHIBIT F**

<u>Omnibus Assignment</u>

4922-4447-4474.4

## OMNIBUS ASSIGNMENT

Effective as of September 29, 2025 (the "Closing Date"), First Western Trust Bank, a Colorado corporation, as to the Loan Documents identified on Exhibit "A" attached hereto, ("Assignor") does hereby absolutely sell, transfer, assign, set over and convey to Axios Capital Solutions, LLC, a Delaware limited liability company ("Assignee") without recourse, without warranty, and as-is except as set forth in the Purchase Agreement (defined below), all right, title and interest of Assignor in and to the Loan Documents identified on Exhibit "A" in exchange for full payment under the Purchase Agreement, including:

1.      The Loan Documents identified and defined on Exhibit "A", evidenced and secured by, among other things, certain collateral instruments identified therein; and

2.      All claims, collateral, insurance policies, title insurance policies, certificates of deposit, letters of credit, escrow accounts, performance bonds, demands, causes of action and any other collateral arising out of and/or delivered with respect to the Loan Documents (in each case, to the extent of Assignor's right, title and interest therein and to the extent assignable).

Concurrently herewith, Assignor agrees to deliver those certain assignment documents necessary to assign and transfer the Loan Documents in addition to this Omnibus Assignment.

The transfer of the Loan Documents by Assignor to Assignee is intended by the parties hereto to be an absolute sale, conveyance and transfer of ownership of the Loan and Loan Documents, rather than the mere granting of a security interest or a pledge of the loans to secure a borrowing.  Assignor hereby agrees with Assignee that upon Assignee's acquisition of the Loan Documents, the Loan (including, without limitation, all amounts payable to the lender under the Loan) shall be the sole and exclusive property of Assignee.

This Omnibus Assignment is binding on, and shall inure to the benefit of the parties hereto, their successors and permitted assigns.  This Omnibus Assignment shall be governed by, and construed in accordance with, the laws of the State of Colorado, without giving effect to the conflict of laws provisions of said state.  This Omnibus Assignment may be signed in any number of counterparts by the parties hereto, all of which taken together shall constitute one and the same instrument.

Notwithstanding any provision herein: (a) Assignor is not required to assign any right, title or interest which is not assignable; and (b), this Assignment shall not be valid or effective unless and until the Sale and Assignment Agreement between Assignor and Assignee dated the date hereof (the "Purchase Agreement") has closed and Assignor has received full payment under the Purchase Agreement. This Assignment is governed by and subject to the Purchase Agreement.  To the extent of any conflict between this Assignment and the Purchase Agreement, the terms and conditions of the Purchase Agreement shall control. No representations, warranties, or covenants on the part of Assignor contained herein shall exceed, extend, add to, or exemplify any representations, warranties, or covenants on the part of Assignor set forth in the Purchase Agreement.

4927-2426-6346.1

IN WITNESS WHEREOF, Assignor and Assignee have caused their names to be signed hereto by their respective officer or authorized representative thereunto duly authorized as of the date first above written.

ASSIGNOR:

First Western Trust Bank,
a Colorado corporation

By: _*EXHIBIT ONLY*_____
Name:  Piper Pierce
Its: Authorized Agent

4927-2426-6346.1

IN WITNESS WHEREOF, Assignor and Assignee have caused their names to be signed hereto by their respective officer or authorized representative thereunto duly authorized as of the date first above written.


ASSIGNEE:

Axios Capital Solutions, LLC
a Delaware limited liability company

By:   _*EXHIBIT ONLY*_____
Name: Sophia Kozman
Its:    Sole Member

4927-2426-6346.1

**EXHIBIT "A"**
**LOAN DOCUMENTS**

The following shall collectively be the "Loan Documents":

1)      Main Street Priority Loan Agreement, dated December 10, 2020, between First Western Trust Bank, a Colorado corporation ("Seller") and Pacifica of the Valley Corporation, a Delaware corporation ("Borrower")

2)      Promissory Note made by Borrower and payable to Seller, dated December 10, 2020, in the original principal amount of Thirty-Five Million and No/100 Dollars ($35,000,000.00)

3)      UCC Financing Statement, filed December 18, 2020, with the Delaware Department of State identifying Borrower as debtor and Seller as secured party, Initial Filing No. 2020 8975379

4)      Pledge and Security Agreement, dated December 10, 2020, between Borrower, as grantor, and Seller

5)      Securities Pledge Agreement, dated December 10, 2020, between Paul R. Tuft, an Individual, as grantor, and Seller

6)      Lien Subordination Agreement, dated December 17, 2020, between Reliq Pacifica, LLC, Beverly Gemini Investments, LLC, Taking The 5th, LLC, and Fifth/Arizona Investors, LLC, together as junior creditor, and Seller

7)      Unconditional Guaranty, dated December 10, 2020, between Paul R. Tuft, an individual, as guarantor, and Seller

4927-2426-6346.1