# EXHIBIT D

Vinay Kohli (State Bar No. 268430)
**PROSKAUER ROSE LLP**
2029 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone:      (310) 557-2900
Facsimile:      (310) 557 2193

*Attorneys for Plaintiffs*
Ehab Yacoub, M.D. and
Lorine Mikheail

Electronically FILED by
Superior Court of California,
County of Los Angeles
6/07/2024 3:57 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Hernandez, Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**FOR THE COUNTY OF LOS ANGELES – WEST DISTRICT**

| | |
|---|---|
| EHAB YACOUB, M.D., an individual; and LORINE MIKHEAIL, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> PAUL TUFT, an individual; PRECIOUS MAYES, an individual; GURPREET SINGH, M.D., an individual; TUFT HEALTHCARE INVESTMENTS, LLC, a corporation; PACIFIC GARDEN MEDICAL CENTER LLC, a corporation, <br><br> Defendants. | **Case No. 23SMCV06029** <br><br> **AMENDED COMPLAINT FOR:** <br><br> 1. **FRAUD;** <br><br> 2. **CONSTRUCTIVE FRAUD;** <br><br> 3. **CONCEALMENT;** <br><br> 4. **BREACH OF FIDUCIARY DUTY;** <br><br> 5. **AIDING AND ABETTING; and** <br><br> 6. **VIOLATIONS OF §§ 25401 OF THE CORPORATIONS CODE.** <br><br> **DEMAND FOR JURY TRIAL** |

**AMENDED COMPLAINT**

1.      Plaintiffs EHAB YACOUB, M.D. and LORINE MIKHEAIL (together, the "Plaintiffs"), by and through their attorneys Proskauer Rose LLP, bring this action against PAUL TUFT, PRECIOUS MAYES, GURPREET SINGH, M.D., TUFT HEALTHCARE INVESTMENTS, LLC ("Tuft Investments"), and PACIFIC GARDENS MEDICAL CENTER LLC ("PGMC"), (collectively, the "Defendants").

2.      This lawsuit stems from an intentionally fraudulent scheme to sell membership interests in a group of hospitals located in California and Arizona.

3.      Plaintiffs provided Defendants with a $5 million investment to acquire 5 percent ownership in Praise Health, LLC ("Praise Health"), which is a limited liability company formed under Delaware law.  Plaintiffs were told that that Praise Health was owned and controlled by Defendants Tuft and Mayes.  Plaintiffs and Defendants Tuft and Mayes were "partners."

4.      Defendants Tuft and Mayes stated verbally and in writing that they owned four different hospitals and that their ownership interest would be transferred into Praise Health as part of the $5 million investment made by Plaintiffs.  For Plaintiffs, this would allow them to fulfill a lifelong aspiration of hospital ownership.  Plaintiffs sent $5 million via wire transfer to an entity called Tuft Investments.

5.      It is now apparent that those representations to Plaintiffs were false, and were followed by a series of deceptive acts to hide the truth.  Defendants Tuft and Mayes had no ownership interest—directly or indirectly—in a group of four hospitals.  Upon information and belief, Defendants Tuft and Mayes owned only one, Los Angeles-based hospital, which they were barely able to sustain.  Critically, that lone hospital was not and is not owned by Praise Health.

6.      Over time, Plaintiffs have now uncovered facts which indicated that Defendants Tuft and Mayes committed securities fraud by selling LLC membership interests under false pretenses, and using the proceeds of their transactions for matters unrelated to Praise Health and its "hospitals."

7.      Defendant Singh, on information and belief, actively encouraged and supported Defendants Tuft and Mayes in the fraudulent scheme.  Just recently, Defendant Singh notified Plaintiffs that he is the sole shareholder of PGMC—one of the hospitals Defendants Tuft and

1

**AMENDED COMPLAINT**

Mayes had claimed to own.  Singh stated to Plaintiffs that Defendants Tuft and Mayes actually owed him approximately $8.5 million.  On information and belief, Defendant Singh allowed Defendants Tuft and Mayes to masquerade as owners of PGMC so that Defendants Tuft and Mayes could secure funds from Plaintiffs, provided that he receive a portion of those funds.

8.    Through this legal action, Plaintiffs seek to hold all parties accountable for their roles in this fraudulent scheme.

<b><u>PARTIES</u></b>

9.    Plaintiff Yacoub is a resident of the County of Los Angeles, California.

10.    Plaintiff Mikheail is a resident of the County of Los Angeles, California.

11.    On information and belief, Defendant Precious Mayes ("Defendant Mayes") is a resident of the County of Los Angeles.

12.    On information and belief, Defendant Paul Tuft ("Defendant Tuft") is a resident of the County of Los Angeles.

13.    On information and belief, Defendant Gurpreet Singh, M.D. ("Defendant Singh") is a resident of the County of Yolo.

14.    On information and belief, Defendant-Tuft Investments is an Arizona-based limited liability investment company.  Upon information and belief, Tuft Investments is wholly owned by Defendant Tuft.

15.    On information and belief, Defendant PGMC is a non-operating California hospital located in Hawaiian Gardens, California.

16.    Southwest Healthcare is a limited liability healthcare company with a registered address in Maricopa, AZ.  Plaintiffs reserve the right to add Southwest Healthcare, LLC as a Defendant to the extent it was used to precipitate the fraud.

17.    Defendants Tuft, Mayes, Singh, Tuft Investments and PGMC, are referred to "Defendants" unless otherwise specified.

18.    At all relevant times, Defendants each acted as the agents, employees and/or representatives of each other, and were acting within the course and scope of their agency and

2<br><b>AMENDED COMPLAINT</b>

employment with the full knowledge, consent, permission, authorization, and ratification, of each other in performing the acts alleged.

19. As members of the conspiracy, each of the Defendants participated in, and acted with or in furtherance of said conspiracy, or aided or assisted in carrying out the purposes of the conspiracy, and have performed acts and made statements in furtherance of the conspiracy and other violations of California law.

20. Each Defendant acted both individually and in alignment with the other Defendants with full knowledge of their respective wrongful conduct. As such, Defendants conspired together, building upon each other's wrongdoing, in order to accomplish the acts outlined in this Complaint.

21. Defendants are individually sued as principals, participants, aiders and abettors, and co-conspirators in the wrongful conduct complained of and the liability of each arises from the fact that each has engaged in all or part of the improper acts, plans, schemes, conspiracies, or transactions.

### JURISDICTION & VENUE

22. The individual defendants are California residents and purport to be owners of California hospitals, and are, therefore, subject to personal jurisdiction in California arising out of their systematic and continuous contacts with this State and their purposeful acts and/or transactions directed toward California.

23. With respect to Defendant Tuft in particular, he met with the Yacoub's on several occasions in Los Angeles County in furtherance of his scheme. He was present for meetings with the Plaintiffs at Pacifica Hospital in late July 2023 and August 2023 in furtherance of the scheme. And, on at least one occasion on approximately December 4, 2023, he scheduled a Southwest Airlines flight in which he and Lorine Mikhail traveled together for a "Praise Health" meeting in Los Angeles.

24. The Los Angeles County Superior Court is the appropriate venue, because a substantial part of the events giving rise to the claim occurred in Los Angeles County, including at hospitals sites in Los Angeles County. Defendants' course of conduct, as alleged herein, was to steal Plaintiffs' money by convincing them to invest in a shell venture, and using the acquired

3

**AMENDED COMPLAINT**

money for undisclosed and otherwise improper purposes.  Defendants never intended to honor their duties of trust and confidence owed to Plaintiffs.

### FACTS COMMON TO ALL CAUSES OF ACTION

**A.**    **The Praise Health "Partnership"**

25.    Plaintiffs are a married couple, including a psychiatrist and an entrepreneur with deep-rooted connections to various Los Angeles ventures.[1]  Dr. Yacoub specializes in various psychiatric disorders, practices in regional centers and private offices in Los Angeles, Northridge and Gardena.  Ms. Mikheail has an extensive medical background as a psychiatric nurse practitioner.

26.    On July 24, 2023, Defendants Tuft and Mayes invited Plaintiffs to join them as business partners in Praise Health LLC.  They had purportedly formed Praise Health to roll over their "existing interests" in four different hospitals:

(i)    Pacifica Hospital of the Valley ("PHV"), located, upon information and belief, at 9449 San Fernando Road, Los Angeles, Los Angeles County, California 91352.

(ii)    Pacific Gardens Medical Center ("PGMC"), located, upon information and belief, at 21530 South Pioneer Boulevard, Hawaiian Gardens, Los Angeles County, California, 90716.

(iii)    Mad River (Community) Hospital ("MRH," and collectively with PHV, PGMC, and GVMC, the "Hospitals"), located, upon information and belief, at 3798 Janes Road, Arcata, Los Angeles County, California 95521.

(iv)    Green Valley Medical Center ("GVMC"), located, upon information and belief, at 4455 I-19 Frontage Road, Green Valley, Arizona 85614.

27.    Defendants Tuft and Mayes claimed that—through Praise Health—they intended to deliver healthcare based on Biblical teachings to patients at these hospitals.

28.    Between July and November of 2023, Defendants Tuft and Mayes sought out, and met with, Plaintiffs several times in Los Angeles—often over coffee or lunch—to discuss the

---

[1] See, e.g., https://la.urbanize.city/post/mixed-use-project-works-4319-sepulveda-boulevard-culver-city.

4

**AMENDED COMPLAINT**

mission of Praise Health and Plaintiffs' potential investment in the same.  In one particular instance, the parties even traveled together to Los Angeles in furtherance of those discussions.

29.     Initially, Plaintiffs were offered, in exchange for their $5 million dollar investment, warrants for shares of Praise Health, a Praise Health Board seat, and a return on their $5 million dollar investment with four percent interest after five years.  On July 27, 2023, Defendant Tuft inquired of Plaintiff Yacoub via text whether they had "been able to initiate the wire transfer" (Plaintiffs had not yet wired the funds).

30.     On July 28, 2023, Defendant Tuft further pressed Plaintiffs to join Praise Health, declaring via text message that it was "day one of [their] formal partnership."[2]   That same day, he made modifications to the original proposal and circulated to Plaintiffs a revised warrant offering a 5% interest in Praise Health.  He again texted Plaintiff Yacoub that night, stating that Plaintiffs would receive "a flat 5%" in Praise Health.[3]  In later written materials prepared by Defendants, they confirmed Plaintiffs had acquired a 5% ownership interest in Praise Health.  *See e.g.,* Exhibit A (December 2024 E-Mail from Defendant Tuft to Plaintiffs Re: PGMC Proposal) and Exhibit B (December 2024 Handwritten Notes from Defendant Tuft Re: "Ownership and Capital Goals of Praise Health").

31.     Defendant Tuft provided copies of appraisals conducted in 2020 for two Praise Health hospitals, implying that Plaintiffs' 5% ownership in Praise Health would have substantial value.  The appraisal for PHV reflected a $147 million valuation.  The appraisal for PGMC reflected an $84 million valuation.

32.     On July 31, 2023, Plaintiffs questioned Defendant Mayes about the urgent need for a $5 million investment.  Mayes responded that Praise Health was resource-constrained due to a dispute with a co-owner in one of the Praise Health hospitals (PGMC), Defendant Singh.

---

[2] Text Message from Defendant Tuft to Plaintiff Yacoub at 5:54 am (Jul. 28, 2023).  Defendant Tuft repeatedly referred to Plaintiffs as his partners in Praise Health on numerous other occasions, including meetings on August 23, 2023, September 27, 2023, October 5, 2023.

[3] Text Message from Defendant Tuft to Plaintiff Yacoub at 7:41 pm (Jul. 28, 2023)

**AMENDED COMPLAINT**

33.     Plaintiffs then wired $5 million to Defendant Tuft Investments at the request of Defendants Tuft and Mayes, namely in exchange for the 5% stake in Praise Health.

**B.      Plaintiffs' "Role" in the Praise Health Partnership**

34.     Initially, in the Praise Health Partnership, Plaintiffs were passive investors and were treated as such—they were never notified of any formal actions taken by the company, they were not provided with formal corporate documents, they had no access to bank records and financial information relating to Praise Health and they were shut out of any and all business decision-making.  They were not consulted about how their $5 million dollar investment would be used at all.  Sensing that Plaintiffs were dissatisfied with their role as passive investors, Defendants Tuft and Mayes offered a pathway for Plaintiffs to "upgrade" their status within Praise Health for millions of more dollars.

35.      In late 2023, Defendant Tuft sought from Plaintiffs an additional $3 million investment in exchange for 50% ownership of PGMC, while permitting Plaintiffs to "continue to own [their] 5% interest in Praise Health."  *See* Ex. A.  Defendant Tuft prepared handwritten notes to Plaintiffs stating that the "ownership and capital goals of Praise Health" was to "increase [Plaintiffs'] ownership from 5 to 10%" over the course of a <u>week</u>, and to again increase that ownership interest to "approximately 20%" by the end of the year.  *See* Ex. B.

36.     Plaintiffs eventually became concerned that Defendants Tuft and Mayes viewed their role in the partnership as merely cash cows—a concern that was only exacerbated when Defendant Singh later confirmed to Plaintiffs that he had received only some of the $5 million investment they had communicated was allegedly earmarked for settlement of their dispute.

**C.      Plaintiffs Start Onsite Inspections of "Praise Health" Hospitals**

37.     In August 2023, Plaintiff Mikheail began evaluating the Praise Health hospitals, starting with the poor management at PHV.  As the presumed part-owner in the hospital, she initiated interviews with management.  She was surprised by their immediate resignations.

38.     As a business partner in Praise Health, Plaintiff Mikheail and Plaintiff Yacoub, met with Defendants to discuss findings and suggest improvements.

6

**AMENDED COMPLAINT**

**D.    The "Praise Health" Partnership Starts to Sour**

39.    In early to mid-September 2023, Plaintiffs met with Defendants Tuft and Mayes to finalize any remaining paperwork and discuss the cadence of Praise Health Board meetings. Defendant Tuft introduced a "new deal" involving an additional $5 million investment from them in return for multiple board seats in Praise Health LLC.

40.    Defendant Tuft reassured Plaintiffs of their partnership, and that there was no obligation to invest further. However, Tuft also expressed interest in an additional $1 million investment from Plaintiffs.

41.    On September 16, 2023, Plaintiffs met with Defendant Tuft to express concerns about making further investments in Praise Health due to the conditions at PHV. The next day, Defendant Tuft cancelled a meeting about Praise Health hospital finances.

42.    On September 18, 2023, Defendant Tuft suggested a "cooling off" period "for Plaintiffs to pray and contemplate whether Praise Health was something "God want[ed] [them] to pursue." This led Plaintiffs to apologize and seek a resolution.

**E.    Defendants' "Praise Health" Scheme Unravels**

43.    Between September 26 and 27, 2023, Plaintiffs met with Defendants Tuft and Mayes in Arizona to discuss Praise Health, and red flags started to emerge.

44.    Plaintiffs learned that only two of the four Praise Health hospitals were operational, and several of them were beset by undisclosed financial and legal issues. They also learned that Tufts and Mayes had retained their "ownership" in MRH through Defendant Southwest Healthcare. And then they learned that Southwest Healthcare was still negotiating the terms for purchasing MRH.

45.    On October 5, 2023, Plaintiffs met again with Defendant Tuft in Scottsdale, AZ to discuss the MRH negotiations and its urgent opening. At this meeting, Defendant Tuft confessed that the only hospital they had 100% owned was PHV. He added that ownership of 50% of MRH was 'imminent', and that (subject to ongoing negotiations) he was soon 'planning to purchase' 50% of GVMC. Tuft then had the audacity to request another $5 million from Plaintiffs.

**AMENDED COMPLAINT**

46.     On October 16, 2023, Defendant Tuft indicated that he "almost [had] the capital in place" to allow him to focus on, and advance, Praise Health.  However, his explanations regarding what he and Defendant Mayes did, and did not, own became more unclear.

47.     Tuft proposed a meeting with Defendant Singh on December 6, 2023.  Singh was identified as an owner in one of the Praise Health hospitals, PGMC.

48.     At the December 6, 2023 meeting, it became immediately apparent to Plaintiffs that neither Defendant Tuft nor Defendant Mayes owned PGMC, that Defendant Singh had received approximately $1 million dollars around the same time that Plaintiffs had made their $5 million investment in Praise, and that Defendant Singh had not transferred any ownership rights in PGMC to the other Defendants or Praise Health.

49.     Upon information and belief, Defendant Singh knew about Defendants Tuft's and Mayes' misrepresentations to Plaintiffs, but did nothing to stop them because he stood to benefit from the fraudulent scheme.  Indeed, Defendant Singh not only participated in conference calls with Plaintiffs about the money owed to him by Defendants Tuft and Mayes, but also specifically directed Plaintiffs to begin sending further money directly to him (Singh) rather than Defendant Tuft because Singh had not been receiving the full share of Plaintiffs' funds.

**FIRST CAUSE OF ACTION**
**Fraud**
**(Against Defendants Tuft and Mayes)**

50.     Plaintiffs hereby reallege and incorporate herein by reference each and every allegation in the paragraphs above as though fully set forth herein.

51.     To induce Plaintiffs to invest in Praise Health, Defendants Tuft and Mayes engaged in a pattern and practice of knowingly and intentionally making false representations about their ownership of the Praise Health hospitals, asserting substantial or controlling ownership interests in each one.  They made these representations in the written proposal and re-affirmed them verbally and in writing after receiving the initial $5 million investment.

52.     Plaintiffs reasonably relied on Defendants Tuft's and Mayes' false representations regarding their ownership status in Praise Health hospitals when investing.

8
**AMENDED COMPLAINT**

53.     The foregoing statements were false, misleading, and intentionally designed to deceive as part of a pattern or practice conceived and executed by Defendants with the intent to induce Plaintiffs to rely upon them.

54.     Plaintiffs were at all relevant times ignorant of the true facts.  Plaintiffs discovered that Defendants had a proclivity for exaggerating the extent of their ownership interests in the Hospitals.

55.     Plaintiffs would not have invested in Praise Health but for Defendants' false and misleading statements.  Plaintiffs have suffered damages in the amount of at least $5,000,000.

56.     Each of Defendants Tuft's and Mayes' wrongful acts and omissions were knowingly, willfully, intentionally, maliciously, oppressively, and fraudulently undertaken with the express purpose and intention of defrauding Plaintiffs, all to the benefit of Defendants' scheme. Plaintiffs are therefore entitled to punitive and exemplary damages in an amount to be ascertained according to proof.

**SECOND CAUSE OF ACTION**
**Constructive Fraud**
**(Against Defendants Tuft and Mayes)**

57.     Plaintiffs hereby reallege and incorporate herein by reference each and every allegation in the paragraphs above as though fully set forth herein.

58.     Notwithstanding Defendants Tuft's and Mayes' inducement of Plaintiffs to invest in Praise Health, Plaintiffs' investment subsequently resulted in the establishment of a partnership between them.  Defendants Tuft and Mayes therefore owed duties of trust and confidence, among others, to Plaintiffs by virtue of their role as fellow partners and investors, especially with respect to the $5 million investment that was to be used for the benefit of Praise Health.

59.     Despite these owed duties, Defendants Tuft and Mayes wrongfully concealed (i) their lack of actual ownership in all of the Hospitals, and (ii) the purpose for which Defendants would use the $5 million dollar investment.

60.     Given the facts alleged herein, Plaintiffs justifiably relied on Defendants Tuft's and Mayes' false representations regarding their ownership in the Praise Health hospitals.

**AMENDED COMPLAINT**

61. Defendants Tuft and Mayes gained an advantage since Plaintiffs would not have invested in Praise Health but for Defendants' false and misleading statements.

62. As a proximate result of Defendants Tuft's and Mayes' conduct, Plaintiffs have suffered damages in the amount of at least $5 million, with the exact amount to be proved at trial.

63. Furthermore, each of Defendants Tuft's and Mayes' wrongful acts and omissions were knowingly, willfully, intentionally, maliciously, oppressively, and fraudulently undertaken with the express purpose and intention of defrauding Plaintiffs, all to the benefit of Defendants' scheme.  Plaintiffs are therefore entitled to punitive and exemplary damages in an amount to be ascertained according to proof.

**THIRD CAUSE OF ACTION**
**Concealment**
**(Against Defendants Tuft and Mayes)**

64. Plaintiffs hereby reallege and incorporate herein by reference each and every allegation in the paragraphs above as fully set forth herein.

65. From the time Defendants Tuft and Mayes presented Plaintiffs with the Praise Health Proposal, they concealed material information from Plaintiffs which induced them to invest $5 million into the Praise Health venture and enter into a partnership with Defendants Tuft and Mayes.

66. Specifically, Defendants Tuft and Mayes wrongfully concealed (i) their lack of actual ownership in all of the Hospitals, (ii) the poor conditions of certain of the Hospitals, and (iii) the intended uses of the $5 million investment.

67. Defendants Tuft and Mayes had a duty to disclose that they did not own all of the Hospitals represented in the Praise Health proposal, and the actual intended uses of the $5 million investment into Praise Health, LLC.

68. But Defendants Tuft and Mayes intended only to squeeze Plaintiffs for as much funding as possible in furtherance of their scheme.

69. Defendants Tuft and Mayes have concealed—and will continue to conceal—their true intentions from Plaintiffs for their personal benefit.

10
**AMENDED COMPLAINT**

70.     Had Plaintiffs known of Defendants Tuft's and Mayes' true intention, they would not have invested in Praise Health nor entered into a partnership with them.

71.     As a proximate result of Defendants Tuft's and Mayes' conduct, Plaintiffs have suffered damages in the amount of at least $5 million, with the exact amount to be proved at trial.

72.     Furthermore, each of Defendants Tuft's and Mayes' wrongful acts and omissions were knowingly, willfully, intentionally, maliciously, oppressively, and fraudulently undertaken with the express purpose and intention of defrauding Plaintiffs, all to the benefit of Defendants' scheme.  Plaintiffs are therefore entitled to punitive and exemplary damages in an amount to be ascertained according to proof.

**FOURTH CAUSE OF ACTION**
**Breaches of Fiduciary Duty**
**(Against Defendants Tuft and Mayes)**

73.     Plaintiffs hereby reallege and incorporate herein by reference each and every allegation in the paragraphs above as fully set forth herein.

74.     Defendants held themselves out as "partners" of the Plaintiffs in Praise Health and, as partners who also occupied the role of majority shareholders in LLC, they therefore owed fiduciary duties to Plaintiffs.  Their fiduciary duties included, but were not limited to, refraining from engaging in self-dealing behavior, and to not use Praise Health funds for the benefit of non-Praise Health business ventures.

75.     Defendants knowingly acted against Plaintiffs' interests by making false representations and engaging in deceptive acts to induce Plaintiffs to invest $5 million in Praise Health, concealing their true intent to use the funds for the benefit of themselves and their other business dealings.

76.     As a direct and proximate result of Defendants' breaches of fiduciary duty, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial to exceed $5 million.

77.     Furthermore, each of Defendants Tuft's and Mayes' wrongful acts and omissions were knowingly, willfully, intentionally, maliciously, oppressively, and fraudulently undertaken with the express purpose and intention of defrauding Plaintiffs, all to the benefit of Defendants'

11

scheme.  Plaintiffs are therefore entitled to punitive and exemplary damages in an amount to be ascertained according to proof.

### FIFTH CAUSE OF ACTION
#### Aiding and Abetting:
#### Fraud, Constructive Fraud, Concealment and/or Breach of Fiduciary Duty
#### (Against Defendants Singh, Tuft Investments, and PGMC,)

78.    Plaintiffs hereby reallege and incorporate herein by reference each and every allegation in the paragraphs above as though fully set forth herein.

79.    Defendant Singh knew Tuft and Mayes were partners with Plaintiffs and that Tuft and Mayes planned to divert a portion of their investment in Praise Health to him.  Defendant Singh gave substantial assistance and encouragement to each other Defendant in perpetrating fraud and breaches of fiduciary duties against Plaintiffs.  On information and belief, Defendant Singh allowed Defendants Tuft and Mayes to mislead Plaintiffs for his own personal gain and benefit— Tuft and Mayes owed money to Singh and Singh needed Plaintiffs' funds to make himself whole at the expense of Plaintiffs.  By virtue of Defendant Singh's role in the entity, Defendant PGMC created the impression that Defendants Tuft and Mayes co-owned PGMC so that Plaintiffs would make the Praise Health investment.

80.    Defendant Tuft Investments served as the actual corporate vehicle used to facilitate the wiring of Plaintiffs' funds after Defendant Tuft (and Mayes) made the misrepresentations that induced Plaintiffs' $5 million investment.

81.    Southwest Healthcare and its owner—through Tufts and Mays—also knew that neither Southwest, nor Tufts, nor Mays owned MRH but its shareholders allowed misrepresentations regarding their ownership of MRH through Southwest to be made.

82.    As a direct and proximate result of the aiding and abetting by Defendants Singh, Tuft Investments, PGMC and Southwest Healthcare, Plaintiffs suffered, and continued to suffer, damages in an amount to be proven at trial, expected to exceed $5 million.

12

**AMENDED COMPLAINT**

## SIXTH CAUSE OF ACTION
### Securities Fraud – Violation of California Corporations Code §§ 25401
### (Against Defendants Tuft and Mayes)

83.     Plaintiffs hereby reallege and incorporate herein by reference each and every allegation in the paragraphs above as though fully set forth herein.

84.     Under California Corporations Code section 25401, "[i]t is unlawful for any person to offer or sell a security in this state, or to buy or offer to buy a security in this state, by means of any written or oral communication that includes an untrue statement of a material fact or omits to state a material fact necessary to make the statements made, in the light of the circumstances under which the statements were made, not misleading."

85.     Defendants' transaction in this lawsuit involved a sale of securities—specifically, it involved the transfer of LLC membership interests which are presumed to be securities under California law.

86.     Under California's anti-fraud and anti-waiver "blue sky" laws, this use of misleading statements in connection with the sale of a security constitutes securities fraud and is actionable under the California Corporations Code.

87.     For the purpose of inducing the sale of LLC membership interest, Defendants made statements of material fact that were false and misleading and/or omitted material facts necessary in order to make the statements not misleading.  Defendants knew or had reasonable ground to believe such statements were false and misleading.

88.     As a direct and proximate result of the foregoing conduct, Plaintiffs have sustained damage and pray for the relief hereinafter specified.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request relief be provided as follows:

### For All Causes of Action

1.  For general and special damages in an amount according to proof at trial, and which are expected to exceed $5 million.

2.  For pre- and post-judgment interest on any monetary relief;

3.  For exemplary and punitive damages;

13

**AMENDED COMPLAINT**

4. For all costs related this action, including attorneys' fees and costs; and

5. For injunctive relief;

6. For such other and further relief as the Court deems just and proper

**For the Second, Fourth and Fifth Causes of Action**

7. Damages in excess of $5 million;

8. For disgorgement, restitution, and imposition of a constructive trust on the funds that Defendants received from Plaintiffs and which they invested;

9. For a constructive trust imposed upon any items or assets into which Plaintiff's funds were invested;

10. For such other and further relief as the Court deems just and proper.

**For the Sixth Cause of Action**

11. For all remedies available under California Corporations Code section 25501;

12. For reasonable attorneys' fees to the purchaser of the securities;

13. For such other and further relief as the Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: June 7, 2023                    PROSKAUER ROSE LLP


By: _____
     Vinay Kohli

     *Attorney for Plaintiffs*

14

**AMENDED COMPLAINT**

# EXHIBIT A

## Paul Tuft

**To:** Paul Tuft
**Subject:** Proposal to Lorine and Ehab re PGMC

I will transfer all of my ownership interest in PGMC (50%) to you in warrants or stock on or before 12/7 in exchange for $3 million. We will obtain the keys and stock for PGMC on that day and will begin the reopening process on 12/11.

On or before January 15, 2025 I will have the right to buy back the 50% interest at a price equal to the greater of $6 million or FMV.

The proceeds of the 3 million will be used, among other items, to pay accrued property taxes and rents, bond insurance deposits and closing costs related to PGMC.

You will continue to own your 5% interest in Praise Health.

You will control 50% of the Board of PGMC.

You can put $1 million of your stock to me on 4/15/24, an additional $1million on 6/15/24 and an additional $1million on 8/15/24.

1

# EXHIBIT B

(4)

## Ownership and Capital Goals of Praise Health

1. By Next Week, Lorine and Ehab increase ownership from 5 to 10%

2. By end of year Lorine and Ehab increase ownership to approximately 20%

3. Implement a plan to bring children of Ehab & Lorine in to ownership and management of Praise Health

4. Attract additional Capital into Praise Health

5. Over next 5 years significantly reduce Equity interest of Tuft in Praise

6. Implement a tithing program for Praise Health.

7. Decide most appropriate bed component of Pacifica

③

# Immediate Projects of Praise Health

1) Get it branded / Jesus Based
2) Offices
3) CFO
4) Refinance Pacifica
5) Finish Acquisition + open PGMC
6) Acquire Mad River
7) Open more MHC's
8. Residency Program
9. With Sons establish relationship with Mayo for mental health
10. Raise More capital
11. Work with each facility to establish Priorities + goals,
12) Staff PGMC
13) Physician Enhancement

②

# Organization of Praise Health

## Board



Chairman of BOARD

option 2
COO

Vice Chairman

PRESIDENT

Vice-chair woman

PCMC

Pacifico

Mental Health Clinics

MaD River

GHMC

①

# Restructuring of Pacifica Hospital

```
        ┌─────────────────┐
        │  PRAISE HEALTH  │
        └────────┬────────┘
                 │
        ┌────────┴────────┐
        │ Pacifica Hospital│
        └────────┬────────┘
                 │
        ┌────────┴────────┐
        │  CEO - Michael  │
        └─────────────────┘
```

CFO - Fred

option 1

Chief Restructuring Officer For Technology & Revenue Cycle - Lorine

Major goal is implementation of Lorine's Presentation

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I declare that:  I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is: Proskauer Rose LLP, 2029 Century Park East, Suite 2400, Los Angeles, California 90067-3206.

On June 7, 2024, I served the foregoing document described as:
>        **AMENDED COMPLAINT FOR:**
>        1.  **FRAUD;**
>        2.  **CONSTRUCTIVE FRAUD;**
>        3.  **CONCEALMENT;**
>        4.  **BREACH OF FIDUCIARY DUTY;**
>        5.  **AIDING AND ABETTING; and**
>        6.  **VIOLATIONS OF §§ 25401 OF THE CORPORATIONS CODE.**
>        **DEMAND FOR JURY TRIAL**

on the interested parties in this action:

☒      by placing ☐ the original ☒ true copies thereof enclosed in sealed envelopes addressed as follows:

Avi Wagner, Esq.                          Barry Kaye, Esq.
THE WAGNER FIRM                          LAW OFFICES OF BARRY D. KAYE
1925 Century Park E Ste 2100             269 South Beverly Drive, #1018
Los Angeles, CA 90067                    Beverly Hills, CA 90212
T: 310-491-7949                          T: 310-777-0344
Email: avi@thewagnerfirm.com             Email: barry@kayelawgroup.com

*Attorneys For Paul Tuft and*            *Attorneys for Defendants Precious Mayes,*
*Tuft Healthcare Investments, LLC*       *Gupreet Singh, M.D., and Pacific Garden*
                                         *Medical Center, LLC*

☒   (By Electronic Mail)  By transmitting a true and correct copy thereof via electronic mail to the email address(es) listed above.

☐   (By Mail)  By placing a true and correct copy thereof enclosed in sealed envelope(s) addressed as listed above.  I am "readily familiar" with the Firm's practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒   (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on June 7, 2024 at Los Angeles, California.

| Jessica Imme | |
| --- | --- |
| Type or Print Name | Signature |

PROOF OF SERVICE