**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Pacifica of the Valley Corporation,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 26-11060 (TMH)<br><br>**Docket Ref Nos. 13 and 57** |

**SECOND INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO (A) USE CASH COLLATERAL AND (B) GRANT LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS; (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES (III) SCHEDULING A FINAL HEARING; AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of Pacifica of the Valley Corporation dba Pacifica Hospital of the Valley ("Pacifica" or the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case"), pursuant to sections 105(a), 361, 362, 363, 503, 506, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 4001-1, 4001-2, and 9013-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Local Rules"), seeking entry of an interim order (this "Second Interim Order") and a Final Order (as defined below), among other things:

(a) authorizing the use of Cash Collateral (as defined below), pursuant to sections 105, 361, 362, 363, 503, and 507 of the Bankruptcy Code on the terms and conditions set forth in this Second Interim Order;

---

[1] The Debtor in this Chapter 11 Case, along with the last four digits of the Debtor's federal tax identification number, is 7312. The Debtor's mailing address is 9449 San Fernando Road, Sun Valley, CA 91352.

[2] Each capitalized term that is not defined herein shall have the meaning ascribed to such terms in the Motion.

(b) granting adequate protection, as and to the extent set forth herein, to the Prepetition Secured Parties (as defined below) to protect against any Diminution in Value (as defined below) of their interests in any Cash Collateral;

(c) scheduling a final hearing (the "Final Hearing") to consider entry of a final order granting the relief requested in the Motion on a final basis (the "Final Order") and approving the form of notice with respect to the Final Hearing;

(d) waiving any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of this Second Interim Order; and

(e) granting related relief;

all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and that the Debtor consents to entry of a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and an interim hearing with respect to the Motion having been held on July 8, 2026 (the "Interim Hearing"); and the parties' stipulation announced on the record at the hearing held on August 3, 2026 (the "August 3 Hearing" and, together with the Interim Hearing, the "Hearings"); and notice of the Motion and Interim Hearing having been given in accordance with Bankruptcy Rules 4001(b) and 9014 and Bankruptcy Local Rule 9013-1 and it appearing that no other or further notice need be provided; and the Court having considered the *Declaration of Precious Mayes in Support of Chapter 11 Petition and First Day Pleadings* (the "First Day Declaration") and the *Declaration of Peter Chadwick In Support of The Debtor's Cash Collateral Motion* (the "Chadwick Declaration"), the Budget (as defined below) filed and served by the Debtor, the evidence submitted or adduced, and the statements of counsel made at the Interim Hearing; and

the Court having considered the interim relief requested in the Motion; and the Court having determined that the relief requested in the Motion on an interim basis is necessary to avoid immediate and irreparable harm to the Debtor and its estate; and that the legal and factual bases set forth in the Motion and at the Hearings establish just cause for the relief granted herein; and all objections, if any, to the relief requested in the Motion on an interim basis having been withdrawn, resolved, or overruled by the Court; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

A. ***Petition Date.*** On July 4, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (this "Court") commencing this Chapter 11 Case.

B. ***Debtor in Possession.*** The Debtor continues to manage and operate its business and properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Case.

C. ***Committee Formation.*** On July 20, 2026, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors in the Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code (the "Official Committee") [Docket No. 78].

D. ***Jurisdiction and Venue.*** This Court has jurisdiction over the Chapter 11 Case, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334.

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for the Chapter 11 Case and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief set forth herein are sections 105(a), 361, 362, 363, 503, 506, 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and Bankruptcy Local Rules 2002-1, 4001-1, 4001-2, and 9013-1.

E. ***Notice.*** Notice of the Motion and the Interim Hearing constitutes due, sufficient, and appropriate notice and complies with Bankruptcy Rules 4001(b) and 9014 and the Bankruptcy Local Rules, and no other or further notice of the Motion with respect to the relief requested at the Interim Hearing or the entry of this Second Interim Order shall be required.

F. ***Need for Use of Cash Collateral.*** The Debtor has an immediate and critical need to use Cash Collateral on an interim basis to avoid irreparable harm and permit the orderly continuation of the operation of its business, protect patient health and well-being, maintain business relationships with customers, vendors, and suppliers, make payroll, pay the costs of administering the Chapter 11 Case, and satisfy other working capital and operational needs (in each case, in accordance with and subject to this Second Interim Order) for the benefit of the estate and the Debtor's creditors and stakeholders, including the Prepetition Secured Parties. The access of the Debtor to sufficient working capital and liquidity through the use of Cash Collateral and other Prepetition Collateral is necessary and vital to the preservation and maintenance of the going concern value of the Debtor and its successful reorganization. The Debtor does not have sufficient sources of working capital and financing to operate its business in the ordinary course of business without the use of Cash Collateral. Absent the ability to use Cash Collateral and the other Prepetition Collateral, the continued operation of the Debtor's business would not be possible, and immediate and irreparable harm to the Debtor and its estate would be inevitable.

G. ***Use of Cash Collateral.*** As adequate protection for the use of Cash Collateral, all Cash Collateral shall be used and/or applied solely for the purposes permitted in the Budget (as defined below), including, without limitation, (i) to pay the costs of administration of the Chapter 11 Case, (ii) for general corporate and working capital purposes, and (iii) to pay adequate protection payments to the extent set forth herein, in each case, in accordance with the terms and conditions of this Second Interim Order.

H. ***Adequate Protection.*** The Prepetition Secured Parties shall receive adequate protection as set forth herein pursuant to sections 361, 362, and 363 of the Bankruptcy Code for the Debtor's use of the Prepetition Collateral, including Cash Collateral, and the imposition of the automatic stay, in the case of the Adequate Protection Liens and Adequate Protection Superpriority Claims (each, as defined below), solely to the extent of any postpetition Diminution in Value (as defined below). As adequate protection against any postpetition aggregate Diminution in Value of the Prepetition Secured Parties' respective liens and security interests in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date resulting from, among other things, (i) the use, sale, or lease by the Debtor of such collateral, (ii) the use of Cash Collateral by the Debtor on a dollar-for-dollar basis, (iii) the imposition of the automatic stay, and (iv) the imposition of the Carve-Out (as defined below) (collectively, and to the fullest extent permitted under the Bankruptcy Code or other applicable law, the "Diminution in Value"), the Prepetition Secured Parties are entitled to adequate protection, pursuant to sections 361, 362, and 363 of the Bankruptcy Code, as set forth in this Second Interim Order.

I. ***Proper Exercise of Business Judgment***. Based on the Motion, the First Day Declaration, and the record presented to the Court at the Interim Hearing, (i) the terms of adequate protection granted to the Prepetition Secured Parties, (ii) the terms on which the Debtor may

continue to use Prepetition Collateral (including Cash Collateral), and (iii) the Cash Collateral arrangements described herein reflect the Debtor's exercise of prudent business judgment. Absent the ability to continue to use Cash Collateral upon the terms set forth herein, the Debtor, its estate, its creditors, and other parties-in-interest will be seriously and irreparably harmed.

J. ***Budget***. The Debtor has prepared the itemized cash flow forecast set forth on **Exhibit 1** attached hereto (the "Budget"). The Budget is an integral part of this Second Interim Order, and the adequate protection being provided to the Prepetition Secured Parties relies, in part, upon the Debtor's willingness and ability to comply, subject to Permitted Variance (as defined below), with the Budget, in determining to allow the Debtor's use of Cash Collateral in accordance with the terms of this Secon Interim Order.

K. ***Good Faith***. The Debtor has acted in good faith and with sound business judgment in connection with this Second Interim Order.

L. ***Need for Immediate Entry of this Second Interim Order.*** The Debtor has requested immediate entry of this Second Interim Order pursuant to Bankruptcy Rule 4001(b)(2). The permission granted herein to use Cash Collateral (and provide adequate protection therefor) is necessary, essential, and appropriate to avoid immediate and irreparable harm to the Debtor and its estate and creditors.

**NOW THEREFORE**, based upon the foregoing findings and conclusions, the Motion, the First Day Declaration, and the record before the Court, and after due consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. ***Motion Granted.*** The use of Cash Collateral is hereby authorized and approved on an interim basis and the Motion is hereby **GRANTED** in accordance with and subject to the terms

and conditions of this Second Interim Order. Any objections or other statements with respect to any of the relief set forth in this Second Interim Order that have not been withdrawn, waived, or settled, and all reservation of rights inconsistent with this Second Interim Order, are hereby denied and overruled.

2. ***Authorization to Use Cash Collateral***. Subject to the provisions of this Second Interim Order (including the Carve-Out), the Debtor is authorized to use Cash Collateral during the period from the Petition Date through and including a Termination Date (as defined below) to operate the Debtor's business in the ordinary course and pay certain costs, fees, and expenses related to the Chapter 11 Case, in accordance with the Budget as provided herein, and as approved by any order of this Court.

3. ***Budget.*** Subject to the provisions of this Second Interim Order (including the Carve-Out), the Debtor is authorized to use Cash Collateral in accordance with the Budget (subject to Permitted Variance) through August 28, 2026 (the "Expiration Date") as may be amended, replaced, extended, supplemented, or otherwise modified in accordance with the terms of this Second Interim Order or the consent of the Prepetition Secured Parties (in their sole discretion). On the Friday of each week, the Debtor shall deliver a reconciliation report (the "Variance Report") to the Prepetition Secured Parties and any statutory committees appointed in this case, in form reasonably satisfactory to the Prepetition Secured Parties, showing variances of budget amounts to actual amounts on a line-item basis for the period for the prior week (the "Testing Period"). The Variance Report will include (i) the variance (as compared to the applicable Budget) of actual cash receipts of the Debtor for the Testing Period (as defined below), (ii) the variance (as compared to the applicable Budget) of the operating disbursements made by the Debtor set forth

in the Budget for the Testing Period, and (iii) an explanation, in reasonable detail, for any material variances set forth in such Variance Report.

4. The Debtor shall not permit an operating disbursement variance to have a negative variance in excess of 20% on an aggregate basis, tested on a cumulative basis (with negative variance meaning, for the avoidance of doubt, that actual operating disbursements are greater than the projected operating disbursements) (the variance otherwise permitted by this covenant, the "Permitted Variance").

5. ***Limitations on Use of Cash Collateral.*** The Debtor shall not be permitted to make any payments on account of any prepetition debt or obligation before the effective date of a confirmed chapter 11 plan with respect to the Debtor, except: (i) as set forth in this Second Interim Order; (ii) as provided in any order in connection with any relief requested by the Debtor at the commencement of this Chapter 11 Case, in form and substance reasonably acceptable to the Prepetition Secured Parties; or (iii) any payment made in accordance with the Budget, subject to Permitted Variance. The use of Cash Collateral pursuant to the terms and conditions of this Second Interim Order and in accordance with the Budget shall not be deemed to be consent by the Prepetition Secured Parties to any other or future use of Cash Collateral or to use any Cash Collateral in any amount or for any purpose in excess of the amount set forth in the Budget, subject to the Permitted Variance.

6. ***Adequate Protection for the Prepetition Secured Parties.*** Subject only to the Carve-Out and the terms of this Second Interim Order, pursuant to sections 361 and 363 of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Secured Parties in the Prepetition Collateral (including Cash Collateral), in each case, for the potential Diminution in Value of the Prepetition Collateral (including Cash Collateral), the Prepetition Secured Parties are

hereby granted the following (the liens, security interests, payments, and other obligations set forth in this paragraph 6, collectively, the "Secured Party Adequate Protection"):

(a) **Replacement Liens**. Replacement liens under sections 361 and 363 on all postpetition property to the same extent and priority as any valid, perfected, unavoidable prepetition liens, solely to the extent of any diminution in value resulting from the Debtor's use of their Collateral. Such replacement liens shall be deemed valid, binding, perfected, and enforceable upon entry of this Second Interim Order, without the necessity of the execution or filing of security agreements, financing statements, mortgages, notices, or any other documents, or the taking of any further action by any party.

(b) **Superpriority Administrative Claim**. A superpriority administrative expense claim under section 507(b) of the Bankruptcy Code, subordinate only to the Carve Out, solely to the extent that (i) the Prepetition Secured Party is determined to hold valid, perfected, and enforceable prepetition liens and claims, (ii) the Debtor's use of Cash Collateral results in a diminution in the value of such Secured Creditor's interest in the Prepetition Collateral, and (iii) the other forms of adequate protection provided such Secured Creditor are determined to be insufficient to protect against any such diminution in value.

(c) **Information Rights**. The Debtor shall comply with the access and information requirements set forth in paragraph 7 of the Second Interim Order.

(d) **Maintenance of Collateral**. The Debtor shall continue to maintain and insure the Prepetition Collateral in amounts and for the risks, and by the entities, as required under the MSL.

(e) **Budget**. The Debtor shall use Cash Collateral solely in accordance with the budget attached hereto as **Exhibit 1** (the "Budget"), subject to permitted variances on operational disbursements of up to twenty percent (20%) on an aggregate basis, tested on a cumulative basis.

(f) **CRO Authority Over Cash Disbursements; No Director Payments**. In addition to complying with the Budget and all other requirements of the Second Interim Order, (a) all expenditures of funds by the Debtor and withdrawals from the Debtor's bank accounts shall require personal authorization by the CRO and (b) no payments shall be made to any equity holder of the Debtor for any reason or in any capacity.

(g) **Preservation of Going-Concern Value**. The Debtor further submits that the continued operation of the Hospital as a going concern preserves and enhances the value of the asserted collateral of the Prepetition Secured Parties. By authorizing the Debtor's use of Cash Collateral, the Court will enable the Debtor to continue

providing essential healthcare services, maintain its workforce, preserve relationships with vendors and payors, and avoid a precipitous liquidation of the Hospital. Conversely, absent access to Cash Collateral, the Debtor would be forced to cease operations, resulting in an immediate and substantial destruction of going-concern value and a corresponding diminution in the value of any collateral securing the asserted claims of the Prepetition Secured Parties. Accordingly, the proposed use of Cash Collateral, together with the Debtor's proposed Adequate Protection Package, not only protects the Prepetition Secured Parties against any diminution in the value of their asserted interest but is the only viable path forward to providing a return to such Prepetition Secured Parties.

7. ***Access and Information***. Upon reasonable prior written notice (including via acknowledged electronic mail) during normal business hours, the Debtor shall permit the Prepetition Secured Parties, their Representatives and the Special Monitor (subject to obligations of confidentiality pursuant to a separate confidentiality agreement entered into with the Debtor) to have reasonable access to such information regarding the operations, business affairs, and financial condition of the Debtor and it being understood that nothing in this paragraph 7 shall require the Debtor (or any of its advisors) to take any action that would conflict with any applicable requirements of law or any binding agreement, or that would waive any attorney-client or similar privilege.

8. ***Payment of Professionals; Carve-Out; Funding Thereof.***

(a) *Payments of Professional Fees*. The Debtor shall be permitted to pay (x) statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6), together with the statutory rate of interest, which shall not be limited by any budget ("Statutory Fees") and any fees payable to the Clerk of the Court and (y) prior to the delivery of the Remedies Notice (as defined below) under this Second Interim Order, professional fees and expenses incurred by attorneys, accountants and other professionals, including ordinary course professionals, retained by the Debtor and any Committee under sections 327 or 1103(a) of the Bankruptcy Code (together, the "Professionals" and each, a "Professional"), including any expenses of the members of such Committee, (the "Professional Fees") solely (i) to the extent allowed by Court order and payable under sections 326, 328, 330 and 331 of the Bankruptcy Code and any interim procedures order and (ii) in amounts not exceeding the amounts set forth in the Budget for each such Professional's Professional Fee. For the avoidance of doubt, if a

Professional's Professional Fees for a given period is less than the amount set forth in the Budget for such period, then the excess of amount under the Budget shall carry over to be included in the following period's cap.

(b) *Carve-Out*. Payment of any amounts on account of the Prepetition Secured Obligations, the Prepetition Liens, the Adequate Protection Liens, and the Adequate Protection Superpriority Claims shall be subject and subordinate in all respects to the payment of the following (collectively, the "Carve-Out"): (i) Statutory Fees (without regard to the Remedies Notice); (ii) all reasonable fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the Remedies Notice); (iii) the unpaid and outstanding reasonable fees and expenses actually incurred by Professionals on or after the Petition Date and through the day of delivery of a Remedies Notice under this Second Interim Order, up to the amounts set forth for each Professional in the Budget for such period, to the extent allowed by Court order and payable under sections 326, 328, 330 and 331 of the Bankruptcy Code and any interim procedures order; and (iv) the unpaid and outstanding reasonable fees and expenses actually incurred by the Professionals from or after the day following the delivery of a Remedies Notice under this Second Interim Order, to the extent allowed by Court order and payable under sections 326, 328, 330, and 331 of the Bankruptcy Code and any interim procedures order, in an aggregate amount not to exceed $250,000 (the "Post-Termination Carve-Out Cap").

(c) *Funding of Carve-Out Prior to Delivery of Remedies Notice*. Within five (5) business days of entry of this Second Interim Order, the Debtor shall fund into a segregated reserve or escrow account, established at a banking institution that has executed a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware, and that is not subject to the control of the Prepetition Secured Parties (the "Carve-Out Account") an amount equal to the total budgeted Debtor Professionals fees, respectively, for the first two (2) weeks set forth in the Budget and, thereafter, the Debtor is authorized to transfer into the Carve-Out Account on a weekly basis cash in an amount equal to the estimated Professionals fees (excluding any restructuring, sale, success or other transaction fee of any investment bankers or financial advisors) for the next unfunded week set forth in the Budget. Thereafter, the Debtor shall use such funds held in the Carve-Out Account solely to pay Professionals fees as they become allowed and payable pursuant to interim or final orders of the Court; provided that in no way shall the Budget, the Carve-Out, the Carve-Out Account, the Post-Termination Carve-Out Cap, or any other provision of this Second Interim Order be or shall be deemed to be construed as a cap or limitation on the amount of Professional Fees due and payable by the Debtor or its estate as an administrative expense under the Bankruptcy Code.

(d) *Funding of Carve-Out Upon Delivery of Remedies Notice.* Upon delivery of a Remedies Notice, the Debtor shall deposit into the Carve-Out Account an aggregate amount equal to the sum of the Post-Termination Carve-Out Cap plus (solely to the extent not already deposited) all unpaid and outstanding reasonable fees and expenses actually incurred by all of the Professionals prior to the delivery of the Remedies Notice in an amount not to exceed the amounts set forth in the Budget for the payment of such Professionals through the date of delivery of the Remedies Notice. The funds in the Carve-Out Account shall be used solely to pay Professional Fees as and when allowed by order of the Court in accordance with paragraph 8(b) above. To the extent the Court does not approve any of the Professional Fees that were to be paid from funds segregated in the Carve-Out Account, or any amounts in the Carve-Out Account are ultimately not used for such purposes, such unused amounts shall be returned to the Debtor, subject to the rights, liens and claims of the Prepetition Secured Parties under this Second Interim Order and the Prepetition Loan Documents.

(e) Notwithstanding the provisions of this Second Interim Order (including this paragraph 8), the Prepetition Secured Parties reserve the right to object to the allowance of any fees and expenses, whether or not such fees and expenses were incurred in accordance with the Budget. The Prepetition Secured Parties shall not be responsible for the direct payment or reimbursement of any Professional Fees, any Statutory Fees or the fees or expenses of any other party incurred in connection with this Chapter 11 Case or any Successor Case. The appearance of any Professional Fees in the Budget are for purposes of estimated accruals only and (x) shall not be deemed an authorization for the Debtor to pay any Professional Fees absent a Court order authorizing such payment and (y) shall not, in any way, be probative (or otherwise have any impact) with respect to the allowance of the payment of any such Professional Fees or any party's right to object to the payment of such Professional Fees. This Second Interim Order does not, and shall not be deemed to, itself authorize the payment of any Professional Fees.

(f) Notwithstanding anything to the contrary in this Section 8 or the Budget, nothing in this Second Interim Order shall authorize the payment of any Professional Fees or the funding of the Carve-Out without further order of the Court.

9. ***Termination Events***. The Debtor's right to use the Cash Collateral pursuant to this Second Interim Order shall cease on the Termination Date (as defined herein). As used herein "Termination Events" means any of the events set forth in clauses (a) through (h) below (each such

event a "Termination Event," and the date upon which such Termination Event occurs, the "Termination Date"):

(a) the Expiration Date;

(b) the effective date of a chapter 11 plan of the Debtor;

(c) the violation of any term of this Second Interim Order by the Debtor (other than as described in clause (h) below) that is not cured within five (5) business days of receipt by the Debtor, counsel for any statutory committees appointed in this case, and the U.S. Trustee of notice of such default, violation, or breach (which may be provided to the Debtor, counsel for the Official Committee, and the U.S. Trustee by email);

(d) the filing by the Debtor of a motion to dismiss the Chapter 11 Case, or the entry of any order dismissing this Chapter 11 Case (other than following the effective date of a chapter 11 plan);

(e) the filing by the Debtor of a motion to convert this Chapter 11 Case to a case under chapter 7 or the entry of order converting this Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code;

(f) the entry of an order appointing a chapter 11 trustee or an examiner with enlarged powers relating to the operation of the business of any Debtor (powers beyond those set forth in sections 1106(a)(3) and (a)(4) of the Bankruptcy Code);

(g) the failure by the Debtor to deliver to any of the Notice Parties any of the documents or other information reasonably required to be delivered to such applicable party pursuant to this Second Interim Order within five (5) business days following a request therefor from any of the Notice Parties pursuant to the terms of this Second Interim Order; or any such documents or other information shall contain a material misrepresentation; provided that, such misrepresentation remains uncured for at least five (5) business days following written notice thereof from a Notice Party; or

(h) the Debtor's failure to comply with the Budget except with respect to Permitted Variance.

10. ***Remedies Upon Termination Event***. Subject to any applicable grace period, upon the occurrence and during the continuance of a Termination Event, any Prepetition Secured Party may, upon not less than five (5) Business Days' prior written notice (a "Remedies Notice") to (i) counsel to the Debtor, (ii) counsel to any Official Committee, and (iii) the U.S. Trustee, file a

motion with the Court (the "Cash Collateral Termination Motion") seeking entry of an order terminating the Debtor's authority to use Cash Collateral.

11. ***Rights Preserved***. Notwithstanding anything herein to the contrary, the entry of this Second Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the rights of the Prepetition Secured Parties to seek any other or supplemental relief in respect of the Debtor; (b) the rights of the Prepetition Secured Parties to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of the Chapter 11 Case, conversion of the Chapter 11 Case to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan; or (c) any other rights, claims, or privileges (whether legal, equitable or otherwise) of the Prepetition Secured Parties. Notwithstanding anything herein to the contrary, the entry of this Second Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtor's or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence, except as expressly set forth in this Second Interim Order.

12. Notwithstanding anything in this Order to the contrary, nothing contained in this Second Interim Order, nor any payment, use of Cash Collateral, grant of adequate protection, or other relief authorized herein, shall constitute or be deemed to constitute (a) an admission, stipulation, or finding as to the validity, perfection, priority, enforceability, extent, or avoidability of any lien or security interest purportedly held by any Prepetition Secured Party, or the amount or allowability of any claim asserted by any Prepetition Secured Party; (b) a waiver of any claims, defenses, objections, causes of action, offsets, recoupment rights, or avoidance actions that the Debtor, the estate, any successor to the Debtor, or any other party in interest may have against any

Prepetition Secured Party; or (c) a finding that any Prepetition Secured Party is entitled to the protections or benefits afforded to holders of allowed secured claims under the Bankruptcy Code, except solely to the extent expressly provided on an interim basis in this Second Interim Order. All rights of the Debtor, the estate, any successor to the Debtor, and any other party in interest to contest or otherwise challenge the validity, perfection, priority, enforceability, extent, amount, or avoidability of any lien, security interest, or claim asserted by any Prepetition Secured Party are expressly preserved and reserved.

13. ***Modification of Automatic Stay***. The stay of section 362 of the Bankruptcy Code is hereby modified to the extent necessary to accomplish the transactions contemplated by this Second Interim Order.

14. ***Survival***. The provisions of this Second Interim Order shall be binding upon any trustee appointed during the Chapter 11 Case or upon a conversion to a case under chapter 7 of the Bankruptcy Code, and any actions taken pursuant hereto shall survive entry of any order which may be entered converting the Chapter 11 Case to a chapter 7 case, dismissing the Chapter 11 Case under section 1112 of the Bankruptcy Code or otherwise. The terms and provisions of and the priorities in payments, liens, and security interests granted pursuant to, this Second Interim Order, shall continue notwithstanding any conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or the dismissal of the Chapter 11 Case.

15. ***No Third-Party Rights.*** Except as explicitly provided for herein, this Second Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

16. ***Binding Effect.*** From and after entry of this Second Interim Order by the Court, the provisions of this Second Interim Order, including all findings and conclusions of law herein,

shall be binding upon the Debtor, all creditors of the Debtor, and all parties in interest in the Chapter 11 Case and any Successor Case, including without limitation, the Prepetition Secured Parties, any statutory committee appointed in the Chapter 11 Case, and their respective successors and assigns, including any chapter 11 trustee or chapter 7 trustee hereinafter appointed or elected for the estate of the Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtor or with respect to the property of the estate of the Debtor, and shall inure to the benefit of the Debtor, the Prepetition Secured Parties, and their respective successors and assigns; *provided* that, except to the extent expressly set forth in this Second Interim Order, the Prepetition Secured Parties shall have no obligation to permit the use of Prepetition Collateral (including Cash Collateral) by any chapter 11 trustee or chapter 7 trustee or similar responsible person appointed for the estate of the Debtor in the Chapter 11 Case or any Successor Case.

17. ***Effectiveness***. This Second Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Second Interim Order.

18. ***Headings.*** The headings in this Second Interim Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Second Interim Order.

19. ***Retention of Jurisdiction.*** The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Second Interim Order.

20. ***Final Hearing.*** The Final Hearing shall be **held on August 27, 2026 at 2:00 p.m. (prevailing Eastern Time)**, and any objections to the final relief sought in the Motion shall be filed with the Court **on or before 4:00 p.m. (prevailing Eastern Time) on August 20, 2026** and

served on: (a) the Debtor; (b) proposed counsel to the Debtor, (i) Dentons US LLP, 601 S. Figueroa Street, #2500, Los Angeles, CA 90017, Attn: Tania M. Moyron (tania.moyron@dentons.com) and Samuel R. Maizel (samuel.maizel@dentons.com) and (ii) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, Delaware 19899, Attn: Laura Davis Jones (ljones@pszjlaw.com) and Timothy Cairns (tcairns@pszjlaw.com); (c) counsel to the official committee of unsecured creditors, if one is appointed; and (d) the United States Trustee for the District of Delaware, Attn: Hannah McCollum (hannah.mccollum@usdoj.gov). In the event no objections to entry of the final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

21. ***Notice of Entry of Second Interim Order.*** The Debtor shall promptly serve copies of this Second Interim Order to the parties that have been given notice of the Interim Hearing, to any party that has filed a request for notices with this Court and to any Official Committee (if appointed).

Thomas M. Horan

**Dated: August 11th, 2026**
**Wilmington, Delaware**

**THOMAS M. HORAN**
**UNITED STATES BANKRUPTCY JUDGE**