# Exhibit 1A

## Classes 1, 2, and 3 (Axios Secured Claim, Reliq Claim, and L.A. Care Claim) Ballot

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Pacifica of the Valley Corporation,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 26-11060 (TMH) |

**CLASS [1/2/3] ([AXIOS SECURED CLAIM/RELIQ CLAIM/L.A. CARE CLAIM])**
**BALLOT TO ACCEPT OR REJECT THE CHAPTER 11 PLAN**

On [•], 2026, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order [Docket No. [•]] (the "Conditional Approval and Procedures Order") conditionally approving, for solicitation purposes only, the disclosure statement contained in the *Combined Disclosure Statement and Chapter 11 Plan* (as may be amended, supplemented, or otherwise modified from time to time, the "Combined DS and Plan," and the chapter 11 plan portion thereof, the "Plan") filed by Pacifica of the Valley Corp., the debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor"), which commenced its chapter 11 case on July 4, 2026 (the "Petition Date"). You should have received a copy of the Combined DS and Plan, the Conditional Approval and Procedures Order, the Confirmation Hearing Notice, and a Release Opt-In Election Form in the packet you are receiving with this Ballot (collectively, the "Solicitation Package"). Capitalized terms used but not defined herein have the meanings given to them in the Combined DS and Plan.

This ballot is being provided to you because records indicate that you are the Holder of a Claim in Class [1 (Axios Secured Claim)] [2 (Reliq Claim)] [3 (L.A. Care Claim)] as of November 10, 2026 (the "Voting Record Date"), and, accordingly, you have a right to vote to accept or reject the Plan. This Ballot may not be used for any purpose other than for submitting votes with respect to the Plan and electing whether to opt in to the Third Party Release.

**Your rights are described in the Combined DS and Plan. Please read the Combined DS and Plan and follow the enclosed voting instructions carefully before completing this ballot.**

If you have any questions regarding this ballot (the "Ballot") or the voting procedures, please contact the Claims Agent by telephone at (888) 249-2792 (U.S./Canada) or +1 (310) 751-2607 (International) or by email at PacificaInfo@veritaglobal.com, or contact counsel to the Debtor, Dentons US LLP, 601 S. Figueroa Street, Suite 2500, Los Angeles, California 90017, Attn: Tania M. Moyron (tania.moyron@dentons.com) and Samuel R. Maizel

---

[1] The Debtor in this Chapter 11 Case, along with the last four digits of the Debtor's federal tax identification number, is: Pacifica of the Valley Corporation d/b/a Pacifica Hospital of the Valley (7312). The Debtor's mailing address is 9449 San Fernando Road, Sun Valley, CA 91352.

(samuel.maizel@dentons.com), or Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, Delaware 19899, Attn: Laura Davis Jones (ljones@pszjlaw.com) and Timothy Cairns (tcairns@pszjlaw.com). The Claims Agent is not authorized to, and will not, provide legal advice.

**THIS BALLOT MUST BE ACTUALLY RECEIVED BY 4:00 P.M. (PREVAILING EASTERN TIME) ON DECEMBER 10, 2026 (the "Voting Deadline").**

If the Bankruptcy Court confirms the Plan, it will bind you regardless of whether you have voted.

No person has been authorized to give any information or advice, or to make any representation, other than what is included in the materials delivered with this ballot.

**Item 1. Amount of Class [1/2/3] Claim.**

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder (or authorized signatory for a Holder) of a Claim in the following amount (insert amount in box below).

| |
|---|
| $______________________ |

**Item 2. Vote of Class [1/2/3] Claim.**

The Holder of the Class [1/2/3] Claim set forth in Item 1 votes to (please check one):

| **Accept the Plan** | **Reject the Plan** |
|---|---|
| ☐ | ☐ |

**Subject to the limitations set forth herein, you have the right to opt in to the Third Party Release set forth in Section 17.2(b) of the Plan. You shall not be deemed to have consented to the Third Party Release unless you check the box in Item 3 below.**

**Item 3. Release Opt-In Election.**

| | |
|---|---|
| ☐ | **The undersigned Claimant elects to grant (*i.e.*, OPTS IN to) the Third Party Release provision set forth in Section 17.2(b) of the Plan.** |

**Item 4. Important Information Regarding Injunction, Release, and Exculpation Under the Plan.**

Sections 17.1, 17.2, and 17.3 of the Plan provide as follows:

**Section 17.1 *Exculpation*.**

**The Exculpated Parties will neither have nor incur any liability to any entity for any action in good faith taken or omitted to be taken between the Petition Date and Effective Date in connection with or related to the Chapter 11 Case, the sale or other disposition of the Debtor's assets or the formulation, preparation, dissemination, implementation, Confirmation, or Consummation of the Plan, the Disclosure Statement, or any agreement created or entered into in connection with the Plan; provided, however, that this limitation will not affect or modify the obligations created under the Plan, or the rights of any Holder of an Allowed Claim to enforce its rights under the Plan, and shall not release any action (or inaction) constituting willful misconduct, fraud, bad faith, or gross negligence (in each case subject to determination by Final Order of the Bankruptcy Court); provided that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under the Plan, and such reasonable reliance shall form a defense to any such claim, Cause of Action, or liability. Without limiting the generality of the foregoing, each Exculpated Party shall be entitled to and granted the protections of section 1125(e) of the Bankruptcy Code.**

**Section 17.2 *Releases*.**

***(a) Debtor Releases*. Notwithstanding anything in the Combined DS and Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after and subject to the occurrence of the Effective Date, the Debtor and the Estate, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any cause of action, by, through, for, or because of the foregoing entities (collectively, the "Debtor/Estate Releasors"), shall release (the "Debtor/Estate Release") each Released Party, and each Released Party is deemed released by the Debtor/Estate Releasors from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtor/Estate Releasors, as applicable, whether known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor/Estate Releasors would have been legally entitled to assert in its own right, or on behalf of the Holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor (including the management, ownership, or operation thereof), the Debtor's liquidation, the Chapter 11 Case, the purchase, sale, transfer of any security, asset, right, or interest of the Debtor and the ownership thereof, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Case, the negotiation, formulation, or preparation of, or solicitation of votes on, the Combined DS and Plan or related agreements, instruments, or other documents, or any other act or omission,**

**transaction, agreement, event, or other occurrence taking place on and before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, actual fraud, bad faith, or gross negligence (in each case subject to determination of such by final order of a court of competent jurisdiction) but in all respects such Released Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan; provided, that the foregoing Debtor/Estate Release shall not operate to waive or release any obligations of any party under the Plan or any other document, instrument, or agreement executed to implement the Plan; and further provided that nothing herein shall act as a discharge of the Debtor.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtor/Estate Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor/Estate Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) in the best interests of the Debtor and all Holders of Claims and Interests; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity for hearing; and (e) a bar to any of the Debtor/Estate Releasors asserting any Claim or Cause of Action released pursuant to the Debtor/Estate Release.**

***(b) Third Party Release*. Notwithstanding anything in the Plan to the contrary, on and after and subject to the occurrence of the Effective Date, each of the Releasing Parties shall release (the "Third Party Release") each Released Party, and each of the Debtor, the Estate, and the Released Parties shall be deemed released from, any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of any of the Debtor or the Estate, as applicable, whether known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor (including the management, ownership, or operation thereof), the Debtor's liquidation, the Chapter 11 Case, the purchase, sale, transfer of any security, asset, right, or interest of the Debtor and the ownership thereof, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Combined DS and Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Case, the negotiation, formulation, or preparation of, or solicitation of votes on, the Combined DS and Plan or related agreements, instruments, or other documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on and before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, actual fraud, bad faith, or gross negligence (in each case subject to determination of such by final order of a court of competent jurisdiction) but in all respects such Released Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Combined DS and Plan. Notwithstanding anything to the contrary in the**

**foregoing, the Third Party Release shall not release any obligations of any party under the Combined DS and Plan or any other document, instrument, or agreement executed to implement the Combined DS and Plan. For the avoidance of doubt, the Third Party Release shall not be effective upon any party that does not execute and return a Release Opt-In Election Form in accordance with the terms of this Combined DS and Plan.**

**Section 17.3 *Injunction*.**

**In implementation of the Plan, except as otherwise expressly provided in the Confirmation Order or the Plan, and except in connection with the enforcement of the terms of the Plan or any documents provided for or contemplated in the Plan, all entities who have held, hold or may hold Claims against or Interests in the Debtor, the Liquidating Trust, Axios in its capacity as purchaser, or the Estate that arose prior to the Effective Date are permanently enjoined from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtor, the Estate, Axios in its capacity as purchaser, the Liquidating Trust, or any of the Liquidating Trust Assets with respect to any such Claim or Interest; (b) the enforcement, attachment, collection, or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Debtor, the Estate, the Liquidating Trust, or any of the Liquidating Trust Assets with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the Debtor, the Estate, the Liquidating Trust, or any of the Liquidating Trust Assets with respect to any such Claim or Interest; and (d) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Interest. Nothing contained in this Section shall prohibit the Holder of a timely filed Proof of Claim from litigating its right to seek to have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of the Plan, or enjoin or prohibit the interpretation or enforcement by the Claimant of any of the obligations of the Debtor or the Liquidating Trust under the Plan. Notwithstanding any other provision of this Plan, the Debtor shall not receive a discharge pursuant to Bankruptcy Code section 1141(d)(3).**

**Section 2 *Defined Terms*.**

"***Exculpated Parties***" means collectively (a) the Debtor, (b) members of the Restructuring Committee, (c) Peter C. Chadwick in his capacity as Chief Restructuring Officer of the Debtor, (d) members of the Committee (solely in their capacities as Committee members), and (e) Bankruptcy Court-approved Estate and Committee professionals.

"***Related Persons***" means, subject to any exclusions expressly set forth in the Plan, with respect to a specific Person, said Person's successors and assigns, and as applicable, said Person's current and former shareholders, affiliates, subsidiaries, employees, agents, officers, directors, managers, trustees, partners, members, professionals, representatives, advisors, attorneys, financial advisors, accountants, and consultants, solely in their respective capacities as such.

"***Released Parties***" means collectively (a) the Debtor, (b) members of the Restructuring Committee, (c) Peter C. Chadwick in his capacity as Chief Restructuring Officer of the Debtor, (d) members of the Committee (solely in their capacities as Committee members), (e) Axios (in its

capacity as DIP lender and lender under the Prepetition Loan), (f) Bankruptcy Court-approved Estate and Committee professionals; (g) L.A. Care (in its capacity as purchaser under the L.A. Care Purchase Agreements); and (h) the Related Persons of each of the Released Parties in the foregoing clauses (b) – (g).

"***Releasing Parties***" means, individually and collectively: (i) each Holder of a Claim or Interest that opts in to the Third Party Release; (ii) the Committee and each of its members in such capacity; and (iii) with respect to each of the foregoing Entities in clauses (i) and (ii), such Entities' or Persons' successors, assigns, and transferees.

**Item 5. Certifications.**

Upon execution of this Ballot, the undersigned certifies that:

1. as of the Voting Record Date, the undersigned was the beneficial owner (or authorized signatory for a beneficial owner) of a Class [1/2/3] Claim in the amount set forth in Item 1;

2. the Holder is eligible to be treated as the Holder of the Class [1/2/3] Claim set forth in Item 1 for the purposes of voting on the Plan;

3. the Holder has received a copy of the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

4. the Holder has not relied on any statement made or other information received from any person with respect to the Plan other than the information contained in the Solicitation Package or other publicly available materials;

5. the Holder understands and acknowledges that only the latest-dated Ballot cast and actually received by the Voting Deadline with respect to the Class [1/2/3] Claim set forth in Item 1 will be counted, and, if any other Ballot has been previously cast with respect to the Class [1/2/3] Claim set forth in Item 1, such other Ballot shall be deemed revoked;

6. the Holder understands and acknowledges that the Debtor shall verify the amount of the Class [1/2/3] Claim held by the Holder as of the Voting Record Date set forth in Item 1; and

7. the Holder understands and acknowledges that all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the Holder hereunder, shall be binding upon the transferees, successors, assigns, heirs, executors, administrators, and legal representatives of the Holder and shall not be affected by, and shall survive, the death or incapacity of the Holder.

**Item 6. Holder Information and Signature.**

Name of Holder: ____________________________________________________________

Signature: ______________________________________________________________

Name of Signatory: ______________________________________________________
(if other than Holder)

Title: __________________________________________________________________

**PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN IT PROMPTLY BY MAIL OR OVERNIGHT DELIVERY TO THE ADDRESS BELOW, OR UPLOAD IT VIA THE CLAIMS AGENT'S ONLINE BALLOTING PLATFORM AT THE WEBSITE BELOW. BALLOTS SENT BY FACSIMILE OR EMAIL WILL NOT BE COUNTED.**

Pacifica Claims Processing Center
c/o KCC dba Verita
100 N. Pacific Coast Highway, Suite 100
El Segundo, CA 90245

-Or-

mailto:ImpacMortgageInfo@veritaglobal.comhttps://www.veritaglobal.net/pacificaofthevalley

**BALLOT MUST BE ACTUALLY RECEIVED BY THE VOTING DEADLINE, WHICH IS 4:00 P.M. (PREVAILING EASTERN TIME) ON DECEMBER 10, 2026**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING INSTRUCTIONS, PLEASE CONTACT THE CLAIMS AGENT, DENTONS US LLP, OR PACHULSKI STANG ZIEHL & JONES LLP AS SET FORTH ABOVE**

**VOTING INSTRUCTIONS FOR**
**CLASS [1/2/3] ([AXIOS SECURED CLAIM/RELIQ CLAIM/L.A. CARE CLAIM]) CLAIM**

1. As described in the Combined DS and Plan, the Debtor is soliciting the votes of the Holders of Class [1/2/3] Claims with respect to the Plan. The Combined DS and Plan is included in the Solicitation Package you are receiving with the Ballot. Capitalized terms used but not defined herein shall have the meanings assigned to them in the Combined DS and Plan.

2. The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one impaired class that votes on the Plan, determined without including any acceptance of the Plan by any insider, and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code.

3. To ensure that your vote is counted, you must: (a) complete the Ballot; (b) indicate your decision either to accept or reject the Plan in Item 2 of the Ballot; and (c) sign and return the Ballot so that it is actually received by the Voting Deadline by Kurtzman Carson Consultants LLC, dba Verita Global (the "Claims Agent" or "Voting Agent"), either (i) by mail or overnight delivery to Pacifica Claimsmailto:ImpacMortgageInfo@veritaglobal.com Processing Center c/o KCC dba Verita, 100 N. Pacific Coast Highway, Suite 100, El Segundo, CA 90245; or (ii) by uploading the Ballot on the Claims Agent's online balloting platform at https://www.veritaglobal.net/pacificaofthevalley. Ballots sent by facsimile or email, or sent to the Debtor, the Debtor's agents (other than the Claims Agent), or the Debtor's financial or legal advisors, will not be counted.

4. The time by which a Ballot is actually received by the Voting Agent shall be the time used to determine whether a Ballot has been submitted by the Voting Deadline. The Voting Deadline is December 10, 2026 at 4:00 p.m. (Prevailing Eastern Time).

5. If a Ballot is received after the Voting Deadline, it will not be counted unless the Debtor determine otherwise or as permitted by the Bankruptcy Court. In all cases, Holders should allow sufficient time to assure timely delivery.

6. If multiple Ballots are received from an individual Holder with respect to the same Claim prior to the Voting Deadline, the last Ballot timely received will supersede and revoke any previously received Ballot.

7. The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan and to make certain certifications with respect thereto. Accordingly, at this time, creditors should not surrender certificates or instruments representing or evidencing their Claims, and the Debtor will not accept delivery of any such certificates or instruments surrendered together with a Ballot.

8. The Ballot does not constitute, and shall not be deemed to be: (a) a proof of claim or

interest; or (b) an assertion or admission with respect to any claim or interest.

9. Please be sure to sign or electronically sign (DocuSign or similar) and date your Ballot. If you are completing the Ballot on behalf of an Entity, indicate your relationship with that Entity and the capacity in which you are signing.

10. You must vote your entire Class [1/2/3] Claim either to accept or reject the Plan and may not split your vote. Accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted.

11. Any Ballot that is properly completed, executed, and timely returned to the Voting Agent that fails to indicate acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will not be counted.

12. Subject to the discretion of the Debtor or authority of the Court, the following Ballots will not be counted in determining the acceptance or rejection of the Plan: (a) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder; (b) any Ballot cast by a Person or Entity that does not hold a Claim or Equity Interest in a Class that is entitled to vote on the Plan, (c) any unsigned Ballot; and/or (d) any Ballot submitted by a party not entitled to cast a vote with respect to the Plan.